**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DAVID WILLIAMSON,
CHASE HANSEL,
KEITH BECHER,
RONALD GORDON,
JEFFERY KOEBERL,
CENTRAL FLORIDA
FREETHOUGHT COMMUNITY,
SPACE COAST FREETHOUGHT
ASSOCIATION, and
HUMANST COMMUNITY
OF THE SPACE COAST,

                        Case No. 6:15-CV-01098-ORL-28 DAB

            Plaintiffs,

vs.

BREVARD COUNTY,

            Defendant.

_____/


**DEFENDANT BREVARD COUNTY'S ANSWER TO PLAINTIFF'S FIRST AMENDED**
**COMPLAINT WITH DEMAND FOR JURY TRIAL**

       Defendant, BREVARD COUNTY, by and through its undersigned counsel, answers the

specifically enumerated paragraphs in Plaintiffs' Complaint as follows:

**Introduction**

1.     Admit first sentence.  Deny remainder.

2.     Admit some jurisdictions allowed non-theist opening invocations. Admit the
Commission chambers are a limited public forum authorizing traditional pre-meeting
invocations by the faith-based community. Deny remainder as to the inference that

1

the Plaintiffs have no opportunity to provide an invocation during a County Commission meeting when, in fact, they do have such an opportunity.

3.    Admit first sentence.  Without knowledge as to remainder.

4.    Without knowledge as to the opinions expressed in the first two sentences. Denied that people who do not believe in God are a disfavored minority.

5.    Admit nature of relief sought, deny remainder.

### Jurisdiction and Venue

6.    Admitted for jurisdictional purposes only.

7.    Admitted for jurisdictional purposes only.

8.    Admitted for venue purposes only.

### Parties

#### *Plaintiffs*

##### *David Williamson*

9.    Without knowledge, therefore, denied.

10.   Without knowledge, therefore, denied.

11.   Without knowledge, therefore, denied.

12.   Without knowledge, therefore, denied.

13.   Without knowledge, therefore, denied.

14.   Admitted.

15.   Admit Humanism encompasses a variety of nontheistic views (atheism, agnosticism, rationalism, naturalism, secularism, and so forth) with an element of a comprehensive worldview and set of ethical values — values that are grounded in the philosophy of the Enlightenment, informed by scientific knowledge, and driven by a desire to meet

the needs of people in the here and now. Without knowledge as to the remainder of the allegations in ¶15 and, therefore, denied.

16.     Without knowledge, therefore, denied.

17.     Without knowledge, therefore, denied.

18.     Without knowledge, therefore, denied.

19.     Without knowledge, therefore, denied.

20.     Without knowledge as to Plaintiff's attendance or presence at the invocation; admit Sheriff's chaplain provided a Christian invocation at July 7, 2015 meeting where audience was invited by the Board Chairman to stand during invocation and therefore deny that the Board member instructed the audience to stand.

21.     Admit first sentence. Admit Williamson would like to educate officials and attendees, about Humanist values; deny the inference that the population of nontheists is denied the opportunity to provide an invocation; deny remainder.

22.     Without knowledge as to Plaintiff Williamson's views, and all allegations are therefore, denied.

23.     Denied.

*Chase Hansel*

24.     Without knowledge, therefore, denied.

25.     Without knowledge, therefore, denied.

26.     Admitted.

27.     Without knowledge, therefore, denied.

28.     Without knowledge, therefore, denied.

29.    Admit Dawkins argues that a supernatural creator almost certainly does not exist, and that science and philosophy can help people understand the world and guide society better than traditional theistic religion can; admit that *Letter to a Christian Nation* by Sam Harris takes issue with various fundamentalist religious beliefs, explains how they harm society, and argues that society should instead be guided by science and utilitarianism; without knowledge as to remaining allegations and therefore deny the same.

30.    Admit Hansel admires Sam Harris, Richard Dawkins and remaining persons set forth in ¶30; without knowledge as to nature of those persons beliefs and, therefore, denied.

31.    Without knowledge, therefore, denied.

32.    Without knowledge, therefore, denied.

33.    Without knowledge, and therefore, denied.  Specifically deny that atheism or Secular Humanism are religions.

34.    Without knowledge, and therefore, denied.

35.    Admit first sentence.  Without knowledge as to the remainder.

36.    Without knowledge as to Plaintiff Hansel's views, therefore all allegations are denied.

37.    Denied.

*Keith Becher*

38.    Without knowledge, therefore, denied.

39.    Without knowledge, therefore, denied.

40.    Without knowledge, therefore, denied.

41.    Without knowledge, therefore, denied.

42.    Without knowledge, therefore, denied.

43.   Without knowledge, therefore, denied.

44.   Without knowledge, therefore, denied.

45.   Admit Plaintiff Becher admires the work writings and statements of Richard Dawkins, Sam Harris, Lawrence Kraus, and anti-theist Christopher Hitchens, as well as the other persons referenced in ¶45.  Without knowledge as to beliefs of those remaining persons and, therefore, denied.

46.   Without knowledge, therefore, denied.

47.   Without knowledge, therefore, denied.

48.   Without knowledge, therefore, denied.

49.   Without knowledge, therefore, denied.

50.    Admit that Plaintiff Becher would like to deliver an opening invocation.  Without knowledge of remainder, therefore, denied.

51.   Without knowledge as to Plaintiff Becher's views, therefore, denied.

52.   Without knowledge as to Plaintiff Becher's views, therefore, denied.

53.   Denied.

*Ronald Gordon*

54.   Without knowledge, therefore, denied.

55.   Without knowledge, therefore, denied.

56.   Without knowledge, therefore, denied.

57.   Without knowledge, therefore, denied.

58.   Without knowledge of allegations in first sentence, therefore, denied.  Admit Gordon considers the works of Sam Harris, including *Letter to a Christian Nation*, and Richard Dawkins particularly important.

59.     Admit Plaintiff Gordon admires and studies the works, writings and statements of Sam Harris, Richard Dawkins, Christopher Hitchens and Daniel Dennet.

60.     Without knowledge, therefore, denied.

61.     Without knowledge as to remainder.

62.     Admit first sentence, without knowledge as to remainder.

63.     Without knowledge as to Plaintiff Gordon's views, therefore, denied. Otherwise denied.

64.     Denied.

*Jeffery Koeberl*

65.     Without knowledge, therefore, denied.

66.     Without knowledge, therefore, denied.

67.     Without knowledge, therefore, denied.

68.     Without knowledge, therefore, denied.

69.     Without knowledge, therefore, denied.

70.     Without knowledge, therefore, denied.

71.     Admit Plaintiff Koeberl has read and studied a number of texts describing Humanist and atheistic beliefs and considers the following such texts to be particularly seminal or important: *The Age of Reason* by Thomas Paine (a text that challenges institutionalized religion and the legitimacy of the Bible); *The God Delusion* by Richard Dawkins; *The Skeptic's Annotated Bible* by Steve Wells (a text that criticizes the Bible, especially literal interpretations thereof); *God is Not Great* by Christopher Hitchens; *Attack of the Theocrats!* by Sean Faircloth (a text that discusses how

6

religious bias in law harms Americans and that offers a vision for returning America to its secular roots); and the remaining works and authors set forth in paragraph 71.

72.   Without knowledge, therefore, denied.

73.   Without knowledge, therefore, denied.

74.   Without knowledge, therefore, denied.

75.   Admit first sentence, without knowledge as to remainder.

76.   Without knowledge as to Plaintiff Koeberl's views, therefore, denied. Otherwise denied.

77.   Denied.

*Central Florida Freethought Community*

78.   Without knowledge, therefore, denied.

79.   Without knowledge, therefore, denied.

80.   Without knowledge, therefore, denied.

81.   Without knowledge, therefore, denied.

82.   Without knowledge, therefore, denied.

83.    Admit CFFC would like its leaders and members to have opportunities to give opening invocations at Board meetings on a recurring basis, so that it can educate elected officials and all in attendance about Humanistic values and normalize the participation of non-theists in local governmental meetings.  Without knowledge as to second sentence and therefore denied.

84.   Denied.

85.   Denied.

*Space Coast Freethought Association*

86.    Without knowledge, therefore, denied.

87.    Without knowledge, therefore, denied.

88.    Without knowledge, therefore, denied.

89.    Without knowledge, therefore, denied.

90.    Without knowledge, therefore, denied.

91.    Without knowledge, therefore, denied.

92.    Without knowledge, therefore, denied.

93.    Admit first sentence, without knowledge as to second sentence and, therefore denied.

94.    Denied

95.    Denied.

*Humanist Community of the Space Coast*

96.    Without knowledge, therefore, denied.

97.    Admit Becher is President of HCSC and that Williamson and Hansel are members. Without knowledge as to remaining allegations in ¶97 and, therefore, denied.

98.    Without knowledge, therefore, denied.

99.    Without knowledge, therefore, denied.

100.    Without knowledge, therefore, denied.

101.    Admit first sentence.  Without knowledge as to remainder.

102.    Denied.

103.    Denied.

*Defendant Brevard County*

104.    Admitted that Defendant, Brevard County ("County"), is a political subdivision of the State of Florida.

105.    Admitted.

106.    Admitted.

107.    Admitted.

108.    Admitted.

109.    Admitted.

110.    Admitted.

111.    Admitted.

112.    Admitted.

## General Allegations

*Invocations Before the Board*

*Board Meetings*

113.    Admitted.

114.    Admitted.

115.    Admitted.

116.    Admitted that meetings of the Board are opened with an invocation prior to the Board's consideration of its secular business agenda. Otherwise denied.

117.    Admitted.

118.    Admitted.

119.    Without knowledge, therefore, denied.

120.    Admitted.

121.    Admitted.

122.    Admitted.

123.    Admitted.

124.    Admitted.

125.    Admitted.

126.    Admitted.

127.    Admitted.

128.    Admitted.

129.    Admitted.

130.    Denied

131.    Admitted that attendance at Board meetings varies.  Otherwise, denied.

132.    Without knowledge, therefore, denied.

133.    Admitted that the Board considers and votes on issues that affect any number of people, including all 551,000 citizens in the county.  Otherwise, denied.

134.    Admitted that the Board has heard and is authorized to hear issues relating to zoning, tax abatements, easements, and restaurants.  Otherwise, denied.

135.    Admitted that any member of the public who has signed up to do so is allowed to speak on an agenda item before the Board votes on regular agenda items.  Otherwise, denied.

136.    Admitted.

137.    Admitted that the Board has honored children present in the audience in the past. Otherwise denied.

138.    Admitted.

139. Admitted that children are occasionally present in the Board room during pre-meeting invocations.  Otherwise, denied.

140. Admitted that children are occasionally present at Board meetings. Otherwise, denied.

141. Admitted that children were present at the Board meetings on February 3, 2015, March 17, 2015, and July 7, 2015.

142. Admitted that children are occasionally sitting in the audience during pre-meeting invocations in the past. Otherwise, denied.

143. Admitted.

144. Admitted that County employees have sat in the audience during pre-meeting invocations in the past.

*Identities of Invocation Speakers and Nature of Invocations*

145. Without knowledge, therefore, denied.

146. Without knowledge, therefore, denied.

147. Without knowledge, therefore, denied.

148. Without knowledge, therefore, denied.

149. Without knowledge, therefore, denied.

150. Without knowledge, therefore, denied.

151. Admitted that the invocations on December 7, 2010, March 1, 2012, and October 21, 2014 were given by Jewish rabbis. Otherwise, denied.

152. Denied.

153. Denied as inconsistent with ¶¶ 164 and 165 in which Plaintiffs identify an invocation that contained a quotes from Robert F. Kennedy and Teddy Roosevelt, respectively, which they consider content reflecting their alleged religion.

154.    Without knowledge, therefore, denied.

155.    Denied.

156.    Without knowledge, therefore, denied.

157.    Without knowledge, therefore, denied.

158.    Admitted.

159.    Without knowledge, therefore, denied.

160.    Admitted.

161.    Admitted.

162.    Admitted.

163.    Admitted.

164.    Without knowledge, therefore denied.

165.    Admitted.

166.    Admitted.

167.    Admitted.

168.    Denied.

169.    Admitted.

170.    Admitted.

171.    Admitted.

172.    Denied.

173.    Without knowledge, therefore, denied.

174.    Denied.

175.    Denied.

176.   Admitted that, on rare occasion, a Commissioner has given the invocation in the past. Otherwise, denied.

*Invocation Procedures*

177.   Admitted.

178.   Admitted.

179.   Admitted.

180.   Admit that a Commissioner may invite the audience to stand but on some occasions the person delivering the invocation will do so.

181.   Admitted that Commissioners can see audience members in the back of the Board room.  Otherwise, denied.

182.   Admitted.

**The Board's Denials of Requests by Nontheists to Give Invocations**

*Plaintiff Central Florida Freethought Community's Requests*

183.   Without knowledge, therefore, denied.

184.   Without knowledge, therefore, denied.

185.   Without knowledge, therefore, denied.

186.   Admitted that Plaintiff Williamson sent a letter to the Board on May 9, 2014. Otherwise Denied.

187.   Without knowledge, therefore denied.

188.   Admitted that Plaintiff Williamson sent a letter to the Board on July 22, 2014. Otherwise denied.

189.   Admitted that the Board held a meeting on August 19, 2014 and the letter was addressed.

190.   Without knowledge, therefore, denied.

191.   Admitted.

192.   Admitted.

193.   Admitted.

194.   Admitted.

195.   Admitted.

196.   Admitted.

197.   Admitted insofar as the quoted sections are from the August 19 letter. Otherwise denied.

198.   Admitted.

199.   Admitted.

200.   Admitted.

201.   Denied.

*Plaintiff Ronald Gordon's Requests*

202.   Admitted that Plaintiff Gordon sent an e-mail to District 3 Commissioner Infantini on August 18, 2014 containing the quoted sentence. Otherwise without knowledge and denied.

203.   Admitted.

204.   Admitted.

205.   Without knowledge, therefore, denied.

206.   Without knowledge, therefore, denied.

207.   Without knowledge, therefore, denied.

208.   Without knowledge, therefore, denied.

14

*Requests from Others*

209.   Admitted.

210.   Admitted.

211.   Admitted.

212.   Without knowledge, therefore, denied.

213.   Without knowledge, therefore, denied.

214.   Admitted.

215.   Without knowledge, therefore, denied.

216.   Admitted that the Board received a letter from the Anti-Defamation league on August
       25, 2014. Otherwise, denied.

217.   Admitted.

218.   Admitted.

219.   Admitted that the quoted paragraphs are from the letter dated November 6, 2014.
       Otherwise denied.

*Plaintiffs' Counsel's Requests*

220.   Admitted that the AUSCS sent a letter to the Board on January 26, 2015 requesting
       that Williamson, Hansel, and Rev. Fuller be added to the roster of invocation-givers.
       Otherwise, denied.

221.   Admitted.

222.   Admitted.

223.   Admitted that the County Attorney sent a letter to Plaintiff's counsel on May 28,
       2015 stating he would bring the May 26 letter before the Board at its next meeting on
       July 7. Otherwise, denied.

224.    Admitted.

225.    Admitted.

226.    Admitted.

227.    Admitted.

228.    Admitted.

229.    Admitted.

230.    Admitted.

231.    Admitted.

232.    Admitted.

233.    Without knowledge, therefore, denied.

234.    Without knowledge, therefore, denied.

235.    Without knowledge, therefore denied.

236.    Denied.

237.    Without knowledge, therefore, denied.

238.    Without knowledge, therefore, denied.

239.    Without knowledge, therefore, denied.

240.    Without knowledge, therefore, denied.

241.    Without knowledge, therefore, denied.

242.    Without knowledge, therefore, denied.

243.    Without knowledge, therefore, denied.

244.    Without knowledge, therefore, denied.

*Impact of the County's Discriminatory Policy*

*Nontheists in America*

245.    Without knowledge, therefore denied.

246.    Without knowledge, therefore denied.

247.    Without knowledge, therefore denied.

248.    Without knowledge, therefore denied.

249.    Without knowledge, therefore denied.

250.    Without knowledge, therefore denied.

251.    Without knowledge, therefore denied.

252.    Without knowledge, therefore denied.

253.    Denied.

254.    Without knowledge, therefore denied.

255.    Without knowledge, therefore denied.

256.    Admitted as to first and third sentences.  Otherwise, denied.

257.    Without knowledge, therefore, denied.

258.    Without knowledge, therefore, denied.

259.    Without knowledge, therefore, denied.

260.    Without knowledge, therefore, denied.

261.    Without knowledge, therefore denied.

262.    Without knowledge, therefore denied.

263.    Without knowledge, therefore, denied.

264.    Without knowledge, therefore, denied.

265.    Without knowledge, therefore, denied.

266.    Without knowledge, therefore, denied.

267.    Without knowledge, therefore, denied.

268.    Without knowledge, therefore, denied.

269.    Without knowledge, therefore, denied.

270.    Without knowledge, therefore, denied.

271.    Without knowledge, therefore, denied.

272.    Without knowledge, therefore, denied.

273.    Without knowledge, therefore, denied.

274.    Without knowledge, therefore, denied.

275.    Without knowledge, therefore denied.

276.    Without knowledge, therefore, denied.

277.    Without knowledge, therefore, denied.

278.    Without knowledge, therefore denied.

279.    Without knowledge, therefore denied.

280.    Without knowledge, therefore denied.

281.    Without knowledge, therefore denied.

282.    Denied.

283.    Denied.

284.    Denied.

285.    Denied.

286.    Denied.

287.    Denied.

288.    Denied.

289.    Without knowledge, therefore denied.

290.    Without knowledge, therefore, denied.

291.    Without knowledge, therefore, denied.

292.    Without knowledge, therefore, denied.

293.    Without knowledge, therefore, denied.

294.    Without knowledge, therefore, denied.

295.    Without knowledge, therefore, denied.

## Claims for Relief

### First Claim for Relief:
### Violation of the Establishment clause of the First Amendment to the U.S. Constitution

296.    The answers to paragraphs 1 to 295 are incorporated herein.

297.    Admitted.

298.    Denied.

299.    Denied.

300.    Denied.

301.    Denied.

302.    Denied.

### Second Claim for Relief:
### Violation of the Free Exercise Clause of the First Amendment to the U.S. Constitution

303.    The answers to paragraphs 1 to 302 are incorporated herein.

304.    Admitted.

305.    Admitted that the Free Exercise Clause prohibits Congress from making any law restricting the free exercise of religion.

306.    Admitted that invocations may not be used to advance, proselytize, or disparage any religion. Admitted that the government may not censor religious speech. Otherwise, denied.

307.    Denied.

### Third Claim for Relief:
### Violation of the Free Speech Clause of the First Amendment to the U.S. Constitution

308.    The answers to Paragraphs 1-307 are incorporated by reference herein.

309.    Admitted.

310.    Admitted.

311.    Denied.

312.    Denied.

313.    Admitted that the Free Speech Clause prohibits the government from abridging most speech.

314.    Denied.

### Fourth Claim for Relief
### Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution

315.    The answers to Paragraphs 1-314 are incorporated by reference herein.

316.    Admitted.

317.    Denied.

318.    Admitted.

319.    Denied.

320.    Denied.

***Fifth Claim for Relief:***
***Violation of Article I, Section 2 of the Florida Constitution***

321.    The answers to Paragraphs 1-320 are incorporated by reference herein.

322.    Admitted.

323.    Denied.

***Sixth Claim for Relief:***
***Violation of Article I, Section 3 of the Florida Constitution***

324.    The answers to Paragraphs 1-323 are incorporated by reference herein.

325.    Admitted.

326.    Denied.

327.    Denied.

**Prayer for Relief**

328.    The answers to Paragraphs 1-327 are incorporated by reference herein.

329.    Denied.

330.    Denied.

331.    Denied.

332.    Denied.

333.    Denied.

***Injunction***

334.    Denied.

335.    Denied.

336.    Denied.

*Declaratory Judgment*

337.    Admitted as to the existence of an actual controversy under U.S. and Florida Constitutions. Otherwise denied.

338.    Denied.

*Damages*

339.    Denied.

340.    Denied.

341.    Denied.

342.    Deny Plaintiffs are entitled to attorney's fees or costs.

343.    Without knowledge.

## AFFIRMATIVE DEFENSES

### First Defense

The first claim for relief in the complaint fails to state a claim upon which relief can be granted under Establishment, Free Exercise, Free Speech, and Equal Protection Clauses of the U.S. or Florida Constitutions and Sections 2 and 3 of Article I of the Florida Constitution because *Town of Greece v. Galloway,* 134 S. Ct. 1811 (2014) does not guarantee the Plaintiffs an opportunity to present an invocation at the opening of a meeting and does not dictate when during the meeting Plaintiffs must be allowed to present an invocation. Moreover, on the face of the complaint, Brevard County's invocation policy adopted in Resolution 2015-101 (attached to the Amended Complaint as Exhibit 10 and to the Defendant's original answer as Exhibit B) does not exclude any of the Plaintiffs, whether individual or corporate, from presenting invocations and fully conforms to the principles established by the United States Supreme Court in *Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014).

22

**Second Defense**

By way of avoidance, the County alleges that under the County pre-meeting prayer policy set forth in Resolution 2015-101 does not violate the Free Exercise Clause of the United States or Florida Constitutions because:

1.      Resolution 2015-101 does <u>not</u> exclude any of the Plaintiffs from presenting an invocation.

2.      Any number of secularist non-theists are expressly permitted to present invocations and any other statements of supplication, education, requests for redress, instruction or reflection that a secular non-theist may wish to present to the County Commission during either of *two* Public Comment sections on the Commissions secular business agenda, the first of which occurs immediately after the consent agenda which is frequently approved with a single motion and little discussion.  A typical regular County Commission agenda is the agenda from the July 7, 2015 meeting at which Resolution 2015-101 was approved.  A copy of that agenda is attached hereto as Exhibit A.

3.      Therefore, the County policy allowing for pre-meeting faith-based invocations does not stifle or bar Plaintiffs secular invocations during County Commission meetings.

**Third Defense**

By way of avoidance, the Defendant alleges that the County pre-meeting prayer policy set forth in Resolution 2015-101 does not violate either the Free Speech, Establishment or Free Exercise Clauses of the United States or Florida Constitutions because, as a matter of law, Defendant County's invocation policy complies with the principles set forth in the U.S. Supreme Court's ruling in *Town of Greece v. Galloway* based on the following facts:

1.   The policy conforms to Brevard County's longstanding tradition  of pre-meeting sectarian pre-meeting prayer presented by the faith-based community;

2.   *Town of Greece* does not require the Defendant to supplant or displace faith-based sectarian pre-meeting invocations as long as the Plaintiffs are not denied the opportunity to present an invocation.

3.   The policy allows any of the Plaintiffs to present an invocation during two separate public comment sections on the Commission's agenda, and is therefore neutral.

4.   The county policy does not require secular nontheists, including the Plaintiffs, to adopt or profess religious beliefs to which they do not subscribe as a condition of participation in the governmental function of solemnizing governmental meetings, nor does the policy prohibit secular nontheists, including the Plaintiffs, from giving invocations that reflect or reference their beliefs at governmental meetings.

5.   Commissioners do not treat persons, including the Plaintiffs, differently depending on their participation or non-participation in the pre-meeting invocation.

6.   Participation or non-participation in the pre-meeting invocation does not stand out as disrespectful or even noteworthy at County Commission meetings.

7.   No person is compelled to stay in the Commission Chambers during the pre-meeting invocation or during Public Comments.  In fact, a television in the hallway outside the Commission Chambers broadcasts the meeting, allowing any person the opportunity to know when the pre-meeting invocation or Public Comment portions of the agenda are finished.

**Fourth Defense**

Plaintiffs do not have standing to state a claim for violation of the Free Exercise or Establishment clause of either the U.S. or Florida Constitutions for any alleged harm to children who may be or have been present in the Board room during the pre-meeting invocation.

**Fifth Defense**

By way of avoidance the Defendant alleges that the County policy set forth in Resolution 2015-101 does not violate either Free Speech, Establishment or Free Exercise Clauses of the First Amendment to the United States or Florida Constitutions because the County Commission chambers are a limited public forum for the purpose of sectarian pre-meeting prayer over which the County Commission can establish reasonable time, place and manner restrictions in that:

1. Resolution 2015-101 specifically recites:

   1. For at least the past forty-four years, the Brevard County Board of County Commissioners has observed the tradition of calling for a ceremonial invocation in the form of a short prayer delivered prior to the commencement of the Board's business agenda at regular meetings of the Board. (See Board Minutes attached as Exhibit A)

   2. The invocation is not part of the Board's business agenda, an agenda that invariably involves entirely secular business presented to and acted upon by the Board.

2. Clerics representing religious institutions from the Brevard County faith-community comprise the overwhelming majority of persons presenting pre-meeting invocations at regular County Commission meetings.

3. During the pre-meeting invocation preceding the County Commission secular business meeting, the County Commission chambers are a limited public forum reserved for faith-based sectarian invocations and short informational presentations about the sectarian organization provided, in the overwhelming number of instances, by Clerics from traditional faith-based institutions representing the minority 34.9% of the County Commission's constituents identified

as being affiliated with and regular attendees at religious institution in the County.  (Complaint Exhibit 10, p.3, ¶9;  Answer Exhibit B,¶9)

4.      As a matter of law, the County has the legal authority to establish such a reasonable restriction and limitation on speech in a limited public forum setting**.**

5.      Resolution 2015-101 also specifically designates the Commission chambers as a limited public forum during the Public Comment  portion of the agenda, the first time after the secular Consent Agenda and the second time at the end of the secular business meeting.  The Resolution expressly permits Plaintiffs to present their secular invocations during those two Public Comment periods occurring during the secular business agenda.

6.      Because the Commission Chambers is a limited public forum during the pre-meeting invocation by the faith-based community in recognition of faith-based institutions representing  the minority 34.9% of the Commission's constituents who have been identified as being affiliated with and regular attendees at sectarian services provided at a religious institutions in the County, the County Commission, as a matter of law, has the authority to establish the reasonable requirement that invocations provided by secularists espousing secular tenets and principles be presented under the secular portion of the County Commission's secular business meeting.

7.      As a matter of law, Defendant County is not required to supplant faith-based invocations during the limited public forum reserved for the faith-based community in contradiction of the County Commission's legally established restrictions on the time, place, and manner of speech that is allowed in that limited public forum.

8.      The time, place, and manner restrictions set forth in Resolution 2015-101 are narrowly tailored to allow neutrality about who presents invocations, by recognizing a

26

longstanding tradition of sectarian pre-meeting prayer, while avoiding a showing of hostility toward the faith-based community through displacement or supplanting sectarian prayer and avoiding the appearance of endorsing Secular Humanism since the County Commission employs several of the core principles of Secular Humanism while conducting and acting upon its secular business agenda.

**Sixth Defense**

The County pre-meeting prayer policy set forth in Resolution 2015-101 complies with the three part test established in *Lemon v. Kurtz* and in no way constitutes endorsement of either sectarian religion or secular non-religion in that:

1.      There are several valid and compelling secular purposes for the enactment of the policy including:

      a.   To avoid showing hostility toward the faith-based community in violation of the First Amendment to the United States Constitution; and

      b.   To avoid endorsing the principles of Secular Humanism or Humanism, to the extent Secular Humanism or Humanism may be a religion, in violation of the First Amendment to the United States Constitution.

2.      The primary effect of the policy neither advances nor inhibits religion or non-religion, including Secular Humanism or Humanism, to the extent they are either religions or non-religion, since the faith-based community is offered the opportunity to give a pre-meeting prayer and secularist Plaintiffs are afforded two opportunities to present an invocation and to inform the County Commission about their organizations and their views.

3.      The policy does not foster excessive entanglement with religion because:

a.  the recognized tradition of delivering such pre-meeting prayers has not given rise to a scintilla of evidence that such prayer influences actions of the County Commission;

b.  the time it takes to deliver the pre-meeting prayer at the beginning of the meeting is exceedingly short relative to the length of the secular business meetings of the County Commission which are only held twice each month; and

c.  the balance and neutrality afforded by offering both the faith-based and Humanist communities in a limited public forum provide to each for memorializing the solemnity of the proceedings at Commission meetings.

### Seventh Defense

By way of avoidance, the County alleges that there is no violation of the Establishment Clause of the U.S. or Florida Constitutions by inviting those present in the Commission Chambers to stand for the pre-meeting invocation and such an invitation does not constitute coercion under, nor in any way violate, the Establishment Clause of the United States according to the principles set forth in *Town of Galloway v. Greece* because:

a.  members of the public are not dissuaded from leaving the meeting room during the prayer, arriving late, or even making a later protest to the pre-meeting invocation;

b.  constituents are free to enter and leave the Commission Chambers at any time;

c.  a television in the lobby outside the Commission Chambers allows people to monitor the progress of the County Commission meeting without being present;

d.  the absence of nonbelievers who choose to exit the room during an invocation they find distasteful does not stand out as disrespectful or even noteworthy;

28

e.  any person who remains and acquiesces to listening to a prayer is not viewed or understood as being in agreement with the words or ideas expressed;

f.  the individual secularist nontheist plaintiffs are mature adults, who are clearly not readily susceptible to religious indoctrination or peer pressure arising out of a short prayer; and

g.  any children brought into the Commission Chambers are either brought by parents or by persons who have a quasi-parental relationship and responsibility for the children present and the County Commission has no authority whatsoever over those children.

**Eighth Defense**

By way of avoidance, the Defendant has not violated the free speech clause of the United States or Florida Constitutions because:

a.  As a matter of law, governmental bodies are prohibited from regulating or censoring the content of pre-meeting invocations;

b.  The County's pre-meeting invocation policy does not condition participation in governmental activities on a person's beliefs or affiliations;

**Ninth Defense**

Brevard County avoids the Plaintiffs' fourth claim for relief based upon equal protection claims with the defense that BCC Resolution No. 2015-101 is Constitutional under *Town of Greece v. Galloway* because neither Humanism nor Secular Humanism is a religion for Establishment clause purposes or for the purpose of presenting an invocation in the Commission Chambers when those chambers serve as a limited public forum restricted to the presentation of an invocation by clerics from the faith-based community representing a 34.9% minority of County Commission constituents identified as being affiliated with a faith-based religion.

29

Plaintiffs claim status as secular humanists, humanists and atheists who espouse strictly secular ethics, moral principles, tenets and values while disavowing faith in the existence of any supernatural being, spirit, entity or force.   Therefore, Plaintiffs have no constitutional right to participate in a limited public forum that is restricted to the presentation of invocations by members of the faith-based community representing the minority of County Commission constituents identified as religious adherents where, in fact, a limited public forum is also afforded to the secular Plaintiffs for the same purpose during the secular business meeting.

### Tenth Defense

By way of avoidance of all claims, Brevard County asserts that its pre-meeting invocation policy is constitutional because, on its face, the policy demonstrates the compelling county interest of seeking to avoid unconstitutionally communicating a message of hostility toward the County's minority population of faith-based religious adherents by capitulating to the Plaintiffs demands that they be allowed to present a secular invocation in a limited forum restricted to presentation of invocations by representatives of the County's 34.9% minority population affiliated with faith-based religious institutions in the County.   The Plaintiffs' requesting the right to deliver pre-meeting invocations have, either as individuals or through organizations with which they are affiliated as named in the complaint, have expressed blatant hostility toward faith-based religion and religious institutions by:

1.      hosting websites and social media sites featuring statements, pictures and imagery that denigrates, demeans, disparages, ridicules and portrays belief in God, religions and people of faith as ignorant, stupid,  parochial, undereducated, intolerant, irrational and superstitious;

2.      engaging in the blatant and premeditated strategies designed to intimidate elected officials through coercion, pressure or embarrassment into jettisoning the completely constitutional practice of allowing traditional pre-meeting invocations before government meetings;

3.      admitting their admiration for nontheists and anti-theists who express hostility toward religion and the Bible in their written and verbal presentations;

4.      through their membership in organizations who blatantly express hostility toward religion; and

5.      through their adherence to Secular Humanist and/or Humanist principles inferentially hostile toward religion including:

a.      deploring efforts to denigrate human intelligence, to seek to explain the world in supernatural terms, and to look outside nature for salvation;

b.      optimism rather than pessimism, hope rather than despair, learning in the place of dogma, truth instead of ignorance, joy rather than guilt or sin, tolerance in the place of fear, love instead of hatred, compassion over selfishness, beauty instead of ugliness, and reason rather than blind faith or irrationality.

c.      affirmation of humanism as a realistic alternative to theologies of despair and ideologies of violence (https://www.secularhumanism.org/index.php/12)

The County's pre-meeting invocation policy continuing the tradition of faith-based invocations in a limited public forum held before the commencement of regular secular business meetings while allowing secular nontheistic invocations during the County Commission's secular business meeting is narrowly tailored to avoid communicating a message of hostility

toward faith-based religions in violation of the Establishment Clause while allowing secularist nontheists to provide invocations during the secular business meeting.

**Eleventh Defense**

By way of avoidance, Brevard County asserts that its pre-meeting invocation policy is constitutional because, on its face, by refusing to supplant or displace faith-based pre-meeting invocations with invocations provided by atheists, secular humanists or humanists the policy demonstrates a compelling County interest in that:

1.   The policy avoids communicating a message that the County Commission endorses the precepts and tenets of secular humanism, humanism or atheism, to the extent that secular humanism, humanism and/or atheism are a "religion" or its equivalent as encompassed by the Establishment Clause of the United States or Florida Constitutions because such a message of endorsement would be communicated by a displacement or supplanting of faith-based pre-meeting invocations with secular invocations performed by the secular humanist/humanist/atheist Plaintiffs in that:

   a.   several precepts of Secular Humanism that are common to the espoused beliefs of all Plaintiffs in this case are commonly utilized by the County Commission when considering and voting upon secular business matters that come before them during the secular business meeting held after the invocation has been given. Those precepts include:

   1.   commitment to the application of reason and science to the solving of human problems;

   2.   belief that scientific discovery and technology can contribute to the betterment of human life;

3. belief in an open and pluralistic society and that democracy is the best guarantee of protecting human rights from authoritarian elites and repressive majorities;

4. commitment to the principle of the separation of church and state;

5. cultivate the arts of negotiation and compromise as a means of resolving differences and achieving mutual understanding;

6. concern with securing justice and fairness in society and with eliminating discrimination and intolerance;

7. attempting to strive to work together for the common good of humanity;

8. the cultivation of moral excellence;

9. respect for the right to privacy;

10. belief in the common moral decencies: altruism, integrity, honesty, truthfulness, responsibility;

11. excitement by discoveries still to be made in the cosmos;

12. skepticism about untested claims to knowledge, and openness to novel ideas and seek new departures in thinking.

(https://www.secularhumanism.org/index.php/12)

b. When given the opportunity to present pre-meeting invocations, Plaintiffs and, or representatives of the corporate Plaintiffs, have engaged in a distinct pattern of espousing and proselytizing their shared principles of Secular Humanism, Humanism and atheism, in an effort to educate elected officials.  In fact, in ¶21 of the complaint, Plaintiff Williamson admits this is one of the purposes for his invocation.

c.  Such supplanting of faith-based invocations with secular invocations followed by application of the principles of Secular Humanism or Humanism during the secular business meeting would deliver the message that the County Commission is advancing Secular Humanism/Humanism while diminishing the faith-based religious institutions serving the 34.9% minority of the county population identified as religious adherents because the very principles being proselytized by the secular Plaintiffs are then actually utilized by the County Commission during the decision-making process in its secular business meetings.

Therefore, the Board policy constitutionally relegates such secular non-theistic speech to the secular portion of the County Commission meeting.

### Twelfth Defense

The case is not ripe for review because none of the Plaintiffs have been denied the opportunity to present a secular invocation during the secular business meeting in accordance with the written policy adopted by the County Commission set forth in Resolution 2015-101.

### Thirteenth Defense

Neither the individual nor corporate Plaintiffs have been denied an opportunity to present an invocation in accordance with the Board's written policy and, therefore, none of the Plaintiffs has, therefore, suffered any injury; and, as a result, all Plaintiff's lack standing to pursue any of the claims for relief set forth in the complaint.

### Fourteenth Defense

Brevard County avoids the fifth claim for relief in the complaint claiming a violation of Article 1, section 2 of the Constitution of the State of Florida by re-alleging the allegations of the First through Thirteenth Defenses above, which are incorporated by reference in full herein.

**Fifteenth Defense**

Brevard County avoids the fifth claim for relief in the complaint claiming a violation of Article 1, section 3 of the Constitution of the State of Florida, by incorporating the allegations in the First through Fifteenth Defenses by reference herein, in full. In addition, Brevard would allege that the pre-meeting prayer tradition complained of does not involve taking any county revenue directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution in violation of Article 1, section 3 of the Florida Constitution.

<u>**DEMAND FOR TRIAL BY JURY ON THE ISSUE OF DAMAGES**</u>

Defendant Brevard County, hereby demands trial by jury on the sole issue of damages, should the Court determine the County is liable on any claim for which damages may be awardable.

<u>**DEMAND FOR COSTS**</u>

Defendants pray for the recovery of its costs in this action from Plaintiffs.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on July 29, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and served on all parties using the CM/ECF system.

> *s/Scott L. Knox*
> Scott L. Knox, Trial Counsel
> Florida Bar No. 211291
> OFFICE OF THE COUNTY ATTORNEY
> 2725 Judge Fran Jamieson Way
> Viera, FL 32940
> Phone: 321.633.2090
> Facsimile: 321.633.2096
> Scott.knox@brevardcounty.us

35