# Exhibit 34

Minutes of January 29, 2015 board workshop meeting of Brevard County Board of County Commissioners, obtained from Brevard County's website (selected pages).

MINUTES OF THE MEETING OF THE BOARD OF COUNTY COMMISSIONERS
BREVARD COUNTY, FLORIDA

9:00 AM

The Board of County Commissioners of Brevard County, Florida, met in regular session on January 29, 2015 at 9:00 AM in the Government Center Commission Room, Building C, 2725 Judge Fran Jamieson Way, Viera, Florida.

## CALL TO ORDER

9:00 AM Meeting called to order on January 29, 2015 at Florida Room, Florida Room, Viera, FL.

| Attendee Name | Title | Status | Arrived |
|---|---|---|---|
| Robin Fisher | Chairman/Commissioner District 1 | Present | |
| Jim Barfield | Vice Chairman/Commissioner District 2 | Present | |
| Trudie Infantini | Commissioner District 3 | Present | |
| Curt Smith | Commissioner District 4 | Present | |
| Andy Anderson | Commissioner District 5 | Present | |

## ITEM I.A., CENTRAL SERVICES BUDGET PRESENTATION

Teresa Camarata, Central Services Director, stated Central Services provides excellent customer service to County departments and agencies, ensuring the best value and most efficient performance of Asset Management, Facilities Management, Fleet Services, and Purchasing Services.  She added, it keeps track of all the assets that are purchased with County money; they purchase the assets; provide fuel for the vehicles; keep the lights on and the roofs from leaking; and provide everything that the other departments and agencies need to do their jobs to serve the citizens of Brevard.  She continued to say there are four areas to oversee, which are Asset Management, Facilities Management, Fleet Services, and Purchasing Services; and additionally the Clerk to the Special Magistrate, who provides administrative support for the Code Enforcement and Contractor Licensing hearings.  She stated Asset Management is responsible for the accountability and to safeguard capital assets under the jurisdiction of the Board of County Commissioners; they collect unused surplus property collection, redistribution, and disposal; annual physical inventories and validation of capital equipment; and construction and infrastructure recording and reconciliation.  She went on to say Facilities Management is responsible for approximately 1.6 million square feet of buildings; there is a construction team, that includes two general contractors who oversee all of the renovations and new construction; and there is a building assessment team that provides staff with a report card of the condition of the billed assets on a scale of one to 10.  She explained Fleet Services is a staff of ten, seven technicians who maintain and serve approximately 800 passengers and 500 to 600 motorized pieces of equipment; they maintain the fuel sites at nine locations Countywide; and provide maintenance and repair to 188 emergency generators.  She went on to say Purchasing Services is responsible for all of the competitive acquisition of commodities and services; they average up to $200 million in purchases a year, approximately $57 million were by formal solicitations in 2014, which means those are the projects that require advertising, bidding, negotiating, and Board approval; and because of the good work they do, they avoided $16 million in additional expenses to the County.  She stated the Central Services Budget is $31,983,050; that includes $6.3 million for internal service charges; $16.7 million in Capital Balance Forward; $8.7 million General Fund transfers; and there is the $599,000 correctional impact fee transfer, which is specifically for improvement for the jail that are related to the growth at the jail.  She went on to explain Asset Management has seven employees; Fleet Management has 10 employees; Purchasing Services has nine employees; and Facilities Management 47 employees, for a total of 73 employees.  She stated General Transfer for a

# Exhibit 35

Minutes of February 3, 2015 meeting of Brevard County Board of County Commissioners, obtained from Brevard County's website (selected pages).

MINUTES OF THE MEETING OF THE BOARD OF COUNTY COMMISSIONERS
BREVARD COUNTY, FLORIDA

9:00 AM

The Board of County Commissioners of Brevard County, Florida, met in regular session on February 3, 2015 at  in the Government Center Commission Room, Building C, 2725 Judge Fran Jamieson Way, Viera, Florida.

## CALL TO ORDER

| Attendee Name | Title | Status | Arrived |
|---|---|---|---|
| Robin Fisher | Chairman/Commissioner District 1 | Present | |
| Jim Barfield | Vice Chairman/Commissioner District 2 | Present | |
| Trudie Infantini | Commissioner District 3 | Present | |
| Curt Smith | Commissioner District 4 | Present | |
| Andy Anderson | Commissioner District 5 | Present | |

## INVOCATION

The invocation was provided by Pastor Matt Stallbaum, East Coast Christian Center, Merritt Island.

## PLEDGE OF ALLEGIANCE

Commissioner Smith led the assembly in the Pledge of Allegiance.

## APPROVAL OF MINUTES

The Board approved the December 9, 2014 and January 6, 2015 Regular meeting minutes.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Andy Anderson, Commissioner District 5 |
| **SECONDER:** | Curt Smith, Commissioner District 4 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.A., RESOLUTION, RE:   RECOGNIZING FEBRUARY 2015 AS BLACK HISTORY MONTH IN BREVARD COUNTY

Commissioner Fisher read aloud, and the Board adopted, Resolution No. 15-008, recognizing February 2015 as Black History month in Brevard County.

Willy Smith, Central Brevard Branch of the NAACP, stated this is a historic day, and it is a stepping stone to helping to bridge disparities that exists in the communities.

William Garry, North Brevard Branch of the NAACP, stated he is privileged and proud to be present this morning to accept this Resolution on behalf of all branches and all citizens of Brevard County as they celebrate the contributions of African Americans in the great United States.

February 3, 2015

James Minus, President of South Brevard Branch of the NAACP, expressed his appreciation to the Board for the Resolution; and he stated he appreciates the Board celebrating the spirit of this season.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Trudie Infantini, Commissioner District 3 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM I.B., RESOLUTION, RE:  RECOGNIZING THE CENTRAL FLORIDA MOMMY'S CLUB**

Commissioner Anderson read aloud, and the Board adopted, Resolution No. 15-009, recognizing the Central Florida Mommy's Club.

Vanessa Scott expressed appreciation to the Board for the Resolution.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM I.C., RESOLUTION, RE:   RECOGNIZING THE BREVARD COUNTY SCHOOL CROSSING GUARDS**

Commissioner Smith read aloud, and the Board adopted, Resolution 15-010, recognizing the Brevard County School Crossing Guards.

A representative of the School Crossing Guards expressed her appreciation to the Board for letting her serve the children of Brevard County; and she stated it is a wonderful job.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Curt Smith, Commissioner District 4 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM I.D., RESOLUTION, RE:  SUPPORTING THE REQUEST OF THE CITY OF WEST MELBOURNE FOR A STATE LEGISLATIVE APPROPRIATION TO FUND A PORTION OF WEST MELBOURNE COMMUNITY PARK IMPROVEMENTS - FIELD OF DREAMS PARK**

The Board adopted Resolution No. 15-011, supporting the request of the City of West Melbourne for a State Legislative Appropriation to fund a portion of West Melbourne community improvements - Field of Dreams.

February 3, 2015

## ITEM II.D.2., APPOINTMENTS/REAPPOINTMENTS, RE:  CITIZEN ADVISORY BOARDS

The Board appointed/reappointed **Jim Clevenger** to the Contractors' Licensing Board, with term expiring December 31, 2015; **Bill Klein** to the Community Action Board, with term expiring December 31, 2015; **Rick Bauer** to the EEL Program Recreation and Education Advisory Committee, with term expiring December 31, 2015; and **Monique Miller** to the Zoning Board of Adjustment, with term expiring December 31, 2015.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM III., PUBLIC COMMENTS

Pamela LaSalle stated she is an animal welfare advocate; and she is interested in the quality of their lives.  She pointed out there is a movement to keep animals alive; she does not like their slogan they live by; the guidelines presented to her by animal care centers states that animals can only be surrendered Monday through Friday from 11:00 a.m. until 12:00 p.m., and an appointment has to be made to do that; and that is also for the owner to request to euthanize the animal, which they are charged $50.  She stated they should not be able to charge for that; and she does not want people who have an animal who is suffering to keep it because they cannot afford the $50.  She added, the Board does control the Ordinances.  She went on to say along the lines of animal welfare, she does not think the feral cat Policy in the County is the correct one to take; it is very inhumane; and it is unsafe for the animals and to humans due to the many diseases the colonies cause.  She stated the Feral Cat Ordinance was not given a fair chance last time; she is not sure it was ever finished when it came up a few years ago; she thinks it was sent back to the Animal Advisory Board (AAB), which has been dissolved; and she asked the Board to consider changing the Feral Cat Ordinance.

## ITEM IV.A., RESOLUTION, RE:  PETITION TO VACATE PART OF A PUBLIC UTILITY AND DRAINAGE EASEMENT - WEST AVENUE AND ARON STREET - PORT ST. JOHN UNIT ONE - KEERTHI KRISHNA, LLC

Chairman Fisher called for a public hearing to consider a resolution vacating part of a Public Utility and Drainage Easement in Port St. John Unit One.

There being no comments or objections, the Board adopted Resolution No. 15-015, vacating part of a Public Utility and Drainage Easement on West Avenue and Aron Street, Port St. John Unit One, as petitioned by Keerthi Krishna, LLC.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Trudie Infantini, Commissioner District 3 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

# Exhibit 36

Minutes of March 17, 2015 meeting of Brevard County Board of County Commissioners, obtained from Brevard County's website (selected pages).

## MINUTES OF THE MEETING OF THE BOARD OF COUNTY COMMISSIONERS
## BREVARD COUNTY, FLORIDA

### 9:00 AM

The Board of County Commissioners of Brevard County, Florida, met in regular session on March 17, 2015 at  in the Government Center Commission Room, Building C, 2725 Judge Fran Jamieson Way, Viera, Florida.

### Call to Order

| Attendee Name | Title | Status | Arrived |
|---|---|---|---|
| Robin Fisher | Chairman/Commissioner District 1 | Present | |
| Jim Barfield | Vice Chairman/Commissioner District 2 | Present | |
| Trudie Infantini | Commissioner District 3 | Present | |
| Curt Smith | Commissioner District 4 | Present | |
| Andy Anderson | Commissioner District 5 | Present | |

### INVOCATION

Pastor Shaun Ferguson, Faith Temple Christian Center, Rockledge, led the assembly in the invocation.

### PLEDGE OF ALLEGIANCE

Commissioner Curt Smith led the assembly in the Pledge of Allegiance.

### APPROVAL OF MINUTES

The Board approved the February 5, 2015 Special meeting minutes, and the February 17, 2015 and March 3, 2015 Regular meeting minutes.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Trudie Infantini, Commissioner District 3 |
| **SECONDER:** | Jim Barfield, Vice Chairman/Commissioner District 2 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

### ITEM I.A.,  RESOLUTION, RE:  RECOGNIZING EAST COAST HUMAN TRAFFICKING TASK FORCE IN BREVARD COUNTY

Commissioner Fisher read aloud, and the Board adopted, Resolution No. 15-023, recognizing the East Coast Human Trafficking Task Force in Brevard County.

Dr. Anthony Davis stated human trafficking is an epidemic in our State and County; he and his staff are committed to do what they can to ensure that they can eradicate the human trafficking from the area; and it is the second largest trade in the nation, $32 billion a year.  He added, one is remiss if he or she does not think that it is coming into Brevard County from SR 528 and I-95. He thanked the Board for the recognition.

March 17, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.B., RESOLUTION, RE:  PROCLAIMING MAY 2015 AS MOTORCYCLE SAFETY AND AWARENESS MONTH

Commissioner Anderson read aloud, and the Board adopted, Resolution No. 15-024, proclaiming May 2015 as Motorcycle Safety and Awareness Month.

Rik Venerable, President of ABATE of Florida, Inc., stated he works hard everyday trying to educate the general public drivers and motorcyclist on safety; and he stated his appreciation for the Resolution.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Trudie Infantini, Commissioner District 3 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.C., RESOLUTION, RE:  PROCLAIMING MARCH 22 - 28, 2015, AS BOYS AND GIRLS CLUB WEEK IN BREVARD COUNTY

Commissioner Barfield read aloud, and the Board adopted, Resolution No. 15-025, proclaiming March 22 - 28, 2015 as Boys and Girls Club Week in Brevard County.

Tamara, Boys and Girls Club, stated her thanks for recognizing the club and what it does for the community.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.D., RESOLUTION, RE:  PROCLAIMING APRIL 2015 AS CHILD ABUSE PREVENTION MONTH IN BREVARD COUNTY

Commissioner Infantini read aloud, and the Board adopted, Resolution No. 15-026, proclaiming April 2015 as Child Abuse Prevention Month in Brevard County.

Phebe Powell, Department of Children and Families, thanked the Commissioners for recognizing Child Abuse Prevention Month in April; and  through the month of April the Child Abuse Prevention Task Force will be doing community walks, resource bags for doctors, and

March 17, 2015

just getting the word out to children and families about what they can do to strengthen their family.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.E.,   RESOLUTION, RE:   PROCLAIMING MARCH 2015 AS IRISH-AMERICAN HERITAGE MONTH

Commissioner Infantini read aloud, and the Board adopted Resolution No. 15-027, proclaiming March 2015 as Irish-American Heritage Month in Brevard County.

Patrick Ripton and Ed Reilly stated their thanks to the Commissioners for the Resolution; and they thanked Commissioner Infantini for being in the parade.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.F.,   RESOLUTION, RE: PRESENTATION BY SPACE COAST PARATROOPERS ASSOCIATION, RE:  PLAQUE FOR PUBLIC SERVICE FOR COMMISSIONER ANDERSON

Commissioner Anderson acknowledged Matthew Susin's recognition of David Isnardi for his public service with Space Coast Paratroopers Association, in giving homes to returning Veterans with missing limbs; and in July David will travel to Washington D.C. to receive the Jefferson Award for Public Service for his public service.

## ITEM I.G.,   RESOLUTION, RE:  RECOGNIZING KARL EICHHORN FOR HIS COMMITMENT AND VOLUNTEER SERVICE TO THE COUNTY

Commissioner Barfield read aloud, and the Board adopted Resolution No. 15-028, recognizing Karl Eichhorn for his commitment and volunteer service to Brevard County; and to honor and appreciate Karl on his Honor Flight trip to Washington DC.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

March 17, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

### ITEM II.C.3.,  ACKNOWLEDGE RECEIPT, RE:  2014 CERTIFIED AUDIT REPORT ENDING SEPTEMBER 30, 2014, FOR THE TOWN OF PALM SHORES

The Board acknowledged receipt of the 2014 certified audit report ending September 30, 2014, for the Town of Palm Shores.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

### ITEM II.D.2.,  APPROVAL, RE:  PRECINCT LEGAL DESCRIPTIONS - ALTERED AND ADDED

The Board approved the revised precinct legal descriptions for the changes to existing precincts due to annexations by the Cities of Melbourne, Cocoa, Titusville, and West Melbourne.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

### ITEM II.D.4.,  APPOINTMENTS/REAPPOINTMENTS, RE:  CITIZEN ADVISORY BOARDS

The Board appoint/reappointed **Preston Hopkins** to the Community Action Board, with term expiring December 31, 2015; **Molly Thomas** to the Historical Commission, with term expiring December 31, 2015; and **Daniel Mackney** to the Public Golf Advisory Board, with term expiring December 31, 2015.

### ITEM II.D.5., APPROVAL, RE:  BILLFOLDER

The Board approved the Billfolder, as submitted

March 17, 2015

| RESULT: | **ADOPTED [UNANIMOUS]** |
|---|---|
| **MOVER:** | Andy Anderson, Commissioner District 5 |
| **SECONDER:** | Curt Smith, Commissioner District 4 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM II.A.3., BINDING DEVELOPMENT PLAN, RE:  SPACE COAST CREDIT UNION AND SAN MARCO CENTER, LLC

The Board executed Binding Development Plan Agreement with Space Coast Credit Union and San Marco Center, LLC, for Part of the Northeast 1/4 of the Northeast 1/4 of Section 15, Township 26 South, Range 36 East, Brevard County, Florida. Said Agreement was recorded in ORBK 7326 PGs 1611 through 1620.

| RESULT: | **ADOPTED [UNANIMOUS]** |
|---|---|
| **MOVER:** | Trudie Infantini, Commissioner District 3 |
| **SECONDER:** | Andy Anderson, Commissioner District 5 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM II.D.1.,  CONFIRMATION, RE:  MARK SCHOLLMEYER AS FIRE CHIEF

Stockton Whitten, County Manager, stated it is his recommendation that the Board approve Chief Mark Schollmeyer as the Brevard County Fire Chief; Chief Schollmeyer is here with his family, wife, and two children; and he has the support of the organization, as one can see a lot of them are in the building.  He added, Chief Schollmeyer has done an excellent job since his interim appointment, and he thinks he will do an excellent job in the future.

Chief Schollmeyer stated his thanks to the County Manager, Stockton Whitten, Human Resources Director Frank Abbate, and the Board of County Commissioners for the opportunity to serve the citizens of Brevard County in the capacity on Interim Fire Chief for the past six months, and for the Board's approval today as the County's permanent Fire Chief today.  He added, he would also like to thank the men and women standing in the Commission Room, their own wavering support and words of encouragement have made a huge impact; and lastly he thanked his family, in particular his wife Jessica, and his children.  He continued to say he has been afforded the opportunity to lead one of the best fire departments in Florida, and lead some of the finest fire fighters in Brevard County; as a joyous day as it is, and with as much support as he has, there are some nay sayer's and some negativity; the good news is he does not focus on negativity or dwell in the past; and what he will focus on are the men and women here today who want to be in a better place, who want to work in a better environment, and who want to be treated with respect.  He stated he is a homegrown product of Brevard County Fire Rescue; he is not an outside looking for a hobby or a second income; he has a bigger stake in the organization than most can imagine; and he looks for in make the department more sustainable, more efficient and headed in a more positive direction.

The Board confirmed the appointment of Mark Schollmeyer as Fire Chief.

# Exhibit 37

Minutes of March 31, 2015 meeting of Brevard County Board of County Commissioners, obtained from Brevard County's website.

## MINUTES OF THE MEETING OF THE BOARD OF COUNTY COMMISSIONERS
## BREVARD COUNTY, FLORIDA

### 9:00 AM

The Board of County Commissioners of Brevard County, Florida, met in regular session on March 31, 2015 at  in the Government Center Commission Room, Building C, 2725 Judge Fran Jamieson Way, Viera, Florida.

## CALL TO ORDER

9:00 AM Meeting called to order on March 31, 2015 at Board Room, Board Room, Viera, FL.

| Attendee Name | Title | Status | Arrived |
|---|---|---|---|
| Robin Fisher | Chairman/Commissioner District 1 | Present | |
| Jim Barfield | Vice Chairman/Commissioner District 2 | Present | |
| Trudie Infantini | Commissioner District 3 | Present | |
| Curt Smith | Commissioner District 4 | Present | |
| Andy Anderson | Commissioner District 5 | Present | |

## INVOCATION

The innovation was given by Pastor Daniel Barton, Bowe Gardens Baptist Church, Melbourne.

## PLEDGE OF ALLEGIANCE

Commissioner Anderson led the assembly in the Pledge of Allegiance.

## APPROVAL OF MINUTES

The Board approved the January 22, 2015 Regular Meeting Minutes, and the January 29, 2015 and February 12, 2015 Special Meeting Minutes.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Andy Anderson, Commissioner District 5 |
| **SECONDER:** | Curt Smith, Commissioner District 4 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.A.,  VOLUNTEER RECOGNITION INITIATIVE, RE:  VOLUNTEER STARS LIGHT UP BREVARD

The Board acknowledged presentation by Allison Matteson, Brevard County B.R.A.V.E. Coordinator, who described *Volunteer Stars Light Up Brevard* initiative; and recognized Betty Campbell who volunteers in the Natural Resources Management Office.

## ITEM I.B.,    RESOLUTION, RE:   RECOGNIZING LYNN HOLLENBECK UPON HIS RETIREMENT AFTER 35 YEARS WITH THE COUNTY

March 31, 2015

Commissioner Fisher read aloud, and the Board adopted, Resolution No. 15-031, recognizing Lynn Hollenbeck upon his retirement after 35 years with the County.

Lynn Hollenbeck expressed his appreciation to the Board for the Resolution.  He stated it has been a long and winding road, but it has been a good trip; he had unique experiences in his position because he associated with everyone; and he wished everyone good luck.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.C.,  RESOLUTION, RE:  PROCLAIMING APRIL 2015 AS WATER PROFESSIONALS MONTH IN BREVARD COUNTY

Commissioner Barfield read aloud, and the Board adopted, Resolution No. 15-032, proclaiming the Month of April 2015 as Water Professionals Month in Brevard County.

Randall Maxwell, Secretary of Region III of the Federal Water Pollution Control Act (FWPCA), expressed his appreciation for the Resolution.  He stated although the water and wastewater operators are not as visible as the fire and police force, they are equally as important; these individuals labor to keep fresh water in the distribution system available for residents in industrial areas as well as keep the pumps operating and the pipes flowing for the wastewater and stormwater that flows to the treatment plants for recovery; and it seems like the only time people think about these individuals is when the water is not flowing.  He went on to express his appreciation to the Interim Director Jim Helmer, Utility Services, in recognizing the large system the County has; he has been instrumental in ensuring the training is available for those individuals who wanted it; and he is keenly aware of a well-trained workforce and what they mean to operating the extensive system.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.D.,  RESOLUTION, RE:  RECOGNIZING THE 40TH ANNIVERSARY OF THE COMMUNITY DEVELOPMENT BLOCK GRANT PROGRAM

Commissioner Barfield read aloud, and the Board adopted, Resolution No. 15-033, recognizing the 40th Anniversary of the Community Development Block Grant Program.

A representative of the Community Development Block Grant Program (CDBG) stated it is an honor and privilege to be a member of the CDBG; and she expressed her appreciation to the Board for recognizing them for 40 years of service.

March 31, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| SECONDER: | Trudie Infantini, Commissioner District 3 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM I.E., RESOLUTION, RE:  CONGRATULATING THE VIERA HIGH SCHOOL GIRLS SOCCER TEAM ON THEIR FHSAA CLASS 4A STATE CHAMPIONSHIP**

Commissioner Smith read aloud, and the Board adopted, Resolution No. 15-034, congratulating the Viera High School Girls Soccer Team on their FHSAA Class 4A State Championship.

Hope Leonard, Team Captain of the Viera High School Girls Soccer Team, stated this entire experience has been a golden moment in all of their lives; and it taught them so many life lessons.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Curt Smith, Commissioner District 4 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM I.F.,  RESOLUTION, RE:  CONGRATULATING THE VIERA HIGH SCHOOL GIRLS GOLF TEAM ON THEIR FHSAA CLASS 3A STATE CHAMPIONSHIP**

Commissioner Smith read aloud, and the Board adopted, Resolution No. 15-035, congratulating the Viera High School Girls Golf Team on their FHSAA Class 3A State Championship.

Katie Arnott, Viera High School Girls Golf Team, stated they worked really hard, especially the last few years as they came in second place last year.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Curt Smith, Commissioner District 4 |
| SECONDER: | Trudie Infantini, Commissioner District 3 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM I.G.,  RESOLUTION, RE:  DECLARING THE WEEK OF APRIL 12 - 18, 2015, AS NATIONAL PUBLIC SAFETY TELECOMMUNICATIONS WEEK**

Commissioner Barfield read aloud, and the Board adopted, Resolution No. 15-036, declaring the Week of April 12-18, 2015, as National Public Safety Telecommunications Week.

Debbie Sands, Brevard County's 9-1-1 Systems Manager, expressed her appreciation for the Resolution.

March 31, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
| --- | --- |
| MOVER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| SECONDER: | Trudie Infantini, Commissioner District 3 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.H.,  RESOLUTION, RE:  PROCLAIMING APRIL 18, 2015, AS DAY OF SERVICE

Commissioner Smith read aloud, and the Board adopted, Resolution No. 15-037, proclaiming Saturday, April 28, 2015, as the Helping Hands and Linking Arms Day of Service.

A representative thanked the Board for approving the Resolution; she introduced Colleen Paris, Community Outreach, and Joe and Dawn Daunte; she stated they have many projects; and she stated they have partnered with AT&T Pioneers.

| RESULT: | ADOPTED [UNANIMOUS] |
| --- | --- |
| MOVER: | Curt Smith, Commissioner District 4 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.I.,  RESOLUTION, RE:  RECOGNIZING CHRISTOPHER COMOLETTI ON HIS BOY SCOUT COMMUNITY SERVICE PROJECT

Commissioner Barfield read aloud, and the Board adopted, Resolution No. 15-038, recognizing Christopher Comoletti for conducting the Go Native Brevard 500 Community Service Project.

Christopher Comoletti expressed his appreciation to the Board for the Resolution.

| RESULT: | ADOPTED [UNANIMOUS] |
| --- | --- |
| MOVER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM II.A.1.,  ACCESS LICENSE AGREEMENT WITH DIVINE MERCY COMMUNICATION, INC. (DMC), RE:  ALLOW DMC TO ACCESS THEIR PROPERTY BY CROSSING COUNTY PROPERTY

The Board executed the Property Access License Agreement, subject to the County Attorney and Risk Management final approval, to use an existing County canal crossing to access Divine Mercy Communications, Inc. property for the construction, operation, and maintenance of their radio communication towers.

March 31, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---------|---------------------|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.A.2.,  WAIVER TO ALLOW SUBDIVISON SIGNS TO EXCEED THE FOUR (4) FOOT HEIGHT RESTRICTION, RE:  PUBLIC RIGHT-OF-WAY MEDIAN OF LAKE ANDREW DRIVE AND MARQUETTE DRIVE**

The Board approved the waiver to Section 62-2889(b) allowing the Strom Park Subdivision signs to exceed the four foot height requirement; and authorized the Chairman to execute the Signage, Hardscape, Landscape, and Improvement Agreement.

| RESULT: | ADOPTED [UNANIMOUS] |
|---------|---------------------|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.A.3.,  BINDING DEVELOPMENT PLAN, RE:  DEE SMITH**

The Board executed Binding Development Plan Agreement with Delores J. Smith for property located on the south side of LaGrange Road in Titusville.

| RESULT: | ADOPTED [UNANIMOUS] |
|---------|---------------------|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.A.4.,   RESOLUTION AND OFF STATE HIGHWAY SYSTEM TRANSPORTATION REGIONAL INCENTIVE PROGRAM AGREEMENT AMENDMENT NUMBER 1, WITH FLORIDA DEPARTMENT OF TRANSPORTATION (FDOT), RE:  CONSTRUCTION OF THE SOUTHERN SEGMENT OF ST. JOHNS HERITAGE PARKWAY**

The Board adopted Resolution No. 15-039, and executed the Off State Highway System Transportation Regional Incentive Program (TRIP) Agreement Amendment Number 1 with FDOT to perform the required Construction Engineering Inspection (CEI) services for the Southern Segment of St. Johns Heritage Parkway.

March 31, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.A.5., TASK ORDER NO. SJHP-016 FOR PROFESSIONAL ENGINEERING SERVICES WITH DRMP, INC. RE: FINALIZE CONSTRUCTION PLANS FOR THE NORTHERN SEGMENT OF THE ST. JOHNS HERITAGE PARKWAY**

The Board executed Task Order No. SJHP-016 with DRMP, Inc., in the amount of $451,575, for professional engineering services to finalize construction plans for the North Segment of the St. Johns Heritage Parkway.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.C.2., APPROVAL, RE: SALE OF SURPLUS REAL PROPERTY BY PRIVATE SALE TO ADJACENT PROPERTY OWNERS**

The Board approved the private sale of two surplus parcels of property pursuant to Florida Statute 125.35(2); and authorized the County Manager, or his designee, to negotiate the terms of the private sale per Section 2-243(b), Code of Ordinances of Brevard County.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.D.2., ACCEPTANCE, RE: ACCOUNTS PAYABLE CYCLE AUDIT REPORT AND THE PUBLIC WORKS/ROAD AND BRIDGE MAINTENANCE PROGRAM/WORK ORDER MANAGEMENT SYSTEM AUDIT REPORT**

The Board accepted the Audit Committee's Accounts Payable Cycle Audit Report and the Public Works/Road and Bridge Maintenance Program/Work Order Management System Audit Report.

March 31, 2015

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Trudie Infantini, Commissioner District 3 |
| **SECONDER:** | Curt Smith, Commissioner District 4 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.D.5., APPOINTMENTS/REAPPOINTMENTS, RE: CITIZEN ADVISORY BOARDS**

The Board acknowledged the appointment/reappointment of **Cheryl Denan** to the Transportation Planning Organization Citizens Advisory Board, with term expiring December 31, 2015.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Trudie Infantini, Commissioner District 3 |
| **SECONDER:** | Curt Smith, Commissioner District 4 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.D.4., APPROVAL OF POLICY BCC-8, RE: EDUCATIONAL ASSISTANCE PROGRAM AND LICENSING FEE REIMBURSEMENT PROGRAM**

Commissioner Infantini stated this involves the reimbursement of educational expenses; currently it all goes into one pool in the Human Resources Department; and then it is allocated Countywide to whoever applies first and is eligible. She went on to say the item up for discussion is should it be moved to department by department and have each individual department find the funding to reimburse for educational expenses; while at first glance that sounds like a neat idea, some departments are smaller than others and may have a better ability to pad their budget so they can fit those costs in; and she would rather leave it up to Human Resources and everyone is eligible.

Stockton Whitten, County Manager, stated for clarification, staff has not for quite some time allocated the reimbursement pool; what has been funded by individual departments for the last four or five years; but he is assuming he will put this on his things to look for in terms of the 2015/2016 budget year. He reiterated currently it is not funded through a pool under Human Resources; and it is funded through the individual departments.

Commissioner Infantini inquired if it is already being done that way what the Agenda Item is for.

Mr. Whitten replied this is the continuation of the Policy; the Board has as a requirement of its Policies that staff review these on a periodic basis; and this is just that periodic review of the Policy.

Commissioner Infantini stated the Fire Department personnel are all going back to get their degrees; and she does not see that same level of activity within any of the other departments.

The Board approved the continuation of Policy BCC-08, Educational Assistance Program and Licensing Fee Reimbursement Program.

March 31, 2015

| RESULT: | ADOPTED [4 TO 1] |
|---|---|
| MOVER: | Curt Smith, Commissioner District 4 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Robin Fisher, Jim Barfield, Curt Smith, Andy Anderson |
| NAYS: | Trudie Infantini |

## ITEM III., PUBLIC COMMENTS

Sharon Davis stated they were informed about the name change on Pluckebaum Road; she was out of town; and they told her it would be on the Agenda today.  She stated everyone who lives on that road has been to the meeting here and in the City of Rockledge, and is opposed to the name change because of the trouble it causes. She went on to say she knows the Pluckebaum's; they have been in the area forever; they have family roots in Rockledge from back in the 1930's; and Dr. Newman, across the street, gave her a letter where he was not even notified of the name change.  She read aloud a letter from the Newman Equine Clinic, which is opposed to the name change.  She noted she also has a business; she has been there since 1985; it is a huge hardship; and everything a person has must be changed.

Commissioner Infantini inquired if Ms. Davis was informed as to why her road was chosen as opposed to any other road.  Ms. Davis responded the City of Rockledge said they did it because there were 7,500 cars a day that go down Pluckebaum Road, which she finds very hard to believe, because it is open pasture land.  Ms. Davis pointed out it has been named Pluckebaum Road for at least 60 years.  Commissioner Infantini stated hopefully Ms. Davis will get the Board to change its mind.

Tom Harmony stated he has two properties on Pluckebaum Road, and he has been there since 1991; they also run a boarding stable; and he echoed the comments made by Ms. Davis.  He went on to say there is really a lot of history gone by changing the name of the road from a unique name to one that is not quite as unique, and as far as he knows it does not represent the same sort of history.  He pointed out it is a hardship to change all of people's paperwork for their businesses and that sort of thing.  He asked the Board to reconsider its position.

Commissioner Anderson stated as a point of order for the Board, under its Parliamentary Procedures, since it has already been approved, there would have to be a motion to reconsider by a Commissioner who approved it and seconded it.

Johnny Bailey, Jr. Stated he has lived on Pluckebaum Road for 21 years; it goes back to 1939 when they named the road after the Pluckebaum family; his name was George J. Pluckebaum; and he had a son named Jerome J. Pluckebaum and a daughter named Mary Elizabeth Pluckebaum who lives in Fort Lauderdale.  He advised the Board Ms. Pluckebaum is 80 years old and her husband is 90 years old; it was named after her grandfather; and he thinks it is wrong for someone to change the name.

Charles Tovey stated he is afraid he will get shot for nothing; he is in pain; and he asked the Board to excuse his disposition.  He went on to say it is difficult to be amenable.  He advised the Board there is flagpoles that are dangerous to the pedestrians as well as the highway; and he found one in the Lagoon he cleaned.  He stated he has eyewitnesses to backup what he says. He stated the police will not do anything about people vandalizing his property; he feels he is being stalked by government employees; they come onto his property without a warrant; and

they took that flag.  He explained he has plans with NASA for the Orbiter.   He is living like a disabled Gilligan.  He advised they break the laws to enforce the laws.  He stated he is harmless and he does not carry a gun.

## ITEM IV.A.,  ORDINANCE, RE:  ADOPTION OF COMPREHENSIVE PLAN PACKAGE 2015-1 PLAN AMENDMENTS

Chairman Fisher called for a public hearing to consider an ordinance for adoption of the Comprehensive Plan Package 2015-1 Plan Amendments.

Robin Sobrino, Planning and Development Director, stated staff has an adoption package for the Board today; this is the first amendment cycle of the year; and there are two items in the adoption package.  She went on to say the first one is a text change to the Transportation Element; it is requesting approval of an additional drive cut to the Pineda Extension; the second item is on North Merritt Island in the name of the Ogles; and they are requesting a change to the Future Land Use Map to go from Residential one unit per two and one-half acres to Residential 1.

Kim Rezanka, Dean Mead, stated she represents the Ogles.  She explained to the Board this is the second time she has been before the Board on this matter; as the Board may recall, this is two parcels in North Merritt Island at the northeast corner of Church and Tropical Trail; it totals 20.63 acres;  the Ogles purchased this as a retirement investment; and they retained the rezoning in 2006 from AU to RR-1.  She pointed out they already had the Future Land Use designation of Residential 2; in 2009, based upon a Small Area Study from 2007, it was changed from Residential 2 to Residential 1; the Ogles were unaware this had happened; and the Small Area Study missed this property.  She noted it had a Binding Development Plan for 14 units to the acre.  She stated essentially what they are asking is that the Binding Development Plan be allowed to exist, because they cannot build on it; and they are approved for eight units; and the zoning is inconsistent with the Comprehensive Plan.

There being no further comments, the Board adopted Resolution No. 15-04, amending Article III. Chapter 62, of the Code of ordinances of Brevard County; entitled "The Comprehensive Plan", setting forth Plan Amendment 2015-1.1; amending Section 62-501, entitled "Contents of the Plan"; specifically amending Section 62-501, Part IX, entitled Transportation Element; providing for internal consistency with these amendments; providing legal status; providing a severability clause; and providing an effective date.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Andy Anderson, Commissioner District 5 |
| **SECONDER:** | Jim Barfield, Vice Chairman/Commissioner District 2 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM IV.A., (CONTINUED)

There being no further comments, the Board adopted Ordinance No. 15-05, amending Article III. Chapter 62, of The Code of Ordinances of Brevard County; entitled "The Comprehensive Plan", setting forth Plan Amendment 2015-1.2; amending Section 62-501, entitled "Contents of the Plan"; specifically amending Section 62-501, Part XI, entitled Future Land Use Element and Future Land Use Map Series; providing for internal consistency with these amendments; providing legal status; providing a severability clause; and providing an effective date.

March 31, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---------|---------------------|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM IV.B.,  ORDINANCE, RE:   REVISING CHAPTER 62 LAND DEVELOPMENT CODE SECTION 62-2891 AND CHAPTER 22-48 OF THE BREVARD COUNTY CODE OF ORDINANCES**

Chairman Fisher called for a public hearing to consider an ordinance to revise Chapter 62 Land Development Code Section 62-2891 and Chapter 22-48 of the Brevard County Code of Ordinances.

There being no further comments, the Board adopted Ordinance No. 15-06, amending the Code of Ordinances of Brevard County, Florida, Chapter 62, Land Development Regulations Section 62-2891, Lot Drainage, to provide subdivision design standards for lot drainage grading and lot drainage plan requirements; Chapter 22, Building and Building regulations, Section 22-48 requiring floor elevation to be above grade of adjacent thoroughfare, site drainage plans, surveys, and elevations; the intent of these Code section amendments is to provide for improved lot drainage standards and consistency between County and Florid Building Code Regulations; providing for resolution of conflicting provisions, providing for severability; providing for area encompassed; providing for codification, and providing for an effective date.

| RESULT: | ADOPTED [UNANIMOUS] |
|---------|---------------------|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM VI.A.1.,  PRELIMINARY PLAT AND FINAL ENGINEERING APPROVAL, RE:  VIERA III APARTMENTS - THE VIERA COMPANY**

Robin Sobrino, Planning and Development Director, stated this is a preliminary plat and final engineering approval for an apartment complex, north of Arivas Village.

The Board granted preliminary plat and final engineering approval for the Viera III Apartments, subject to minor engineering changes as applicable, and compliance with the approved site plan, also known as the Viera III Apartments, and all other necessary jurisdictional permits.

| RESULT: | ADOPTED [UNANIMOUS] |
|---------|---------------------|
| MOVER: | Curt Smith, Commissioner District 4 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

March 31, 2015

**ITEM VI.D.1.,  EMINENT DOMAIN ACTION FOR BARNES BOULEVARD, RE:  BREVARD COUNTY V. FLORIDA COMMUNITY BANK PARCEL 101 FORMERLY PREMIER**

John Denninghoff, Public Works Director, stated this Item is requesting Board approval to acquire a piece of property as part of a settlement for an eminent domain case, which would support the Barnes Boulevard Widening Project; what staff is doing is settling with the property owners to purchase the entire parcel, which will leave the County with the property, after completing all of the improvements, there would be sufficient property to sell after the project is completed; and by doing, staff believes costs will be avoided which would have been incurred if the County had only acquired the strip of property along Barnes Boulevard.

The Board approved settlement in the amount of $352,500 for all issues relating to Parcel 101 condemned as part of the Barnes Boulevard widening project; and authorized staff to waive objections to easements which do not interfere with the County's use of the parcel.

| RESULT: | **ADOPTED [UNANIMOUS]** |
|---|---|
| **MOVER:** | Curt Smith, Commissioner District 4 |
| **SECONDER:** | Andy Anderson, Commissioner District 5 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM VI.E.1., HOMELAND SECURITY SUB-GRANT AGREEMENT WITH FLORIDA DIVISION OF EMERGENCY MANAGEMENT, DEPARTMENT OF COMMUNITY AFFAIRS, RE: PROVIDE PLANNING, TRAINING AND EXERCISES FOR LOCAL AND REGIONAL EFFORTS IN RELATION TO PREPAREDNESS AND RESPONSE TO AN INCIDENT OR DISASTER**

The Board accepted the Sub-Grant Agreement; authorized the County Manager, or designee, to sign any documents associated with the grant; and authorized any necessary budget actions, and to make any necessary selections as required to execute the grant.

| RESULT: | **ADOPTED [UNANIMOUS]** |
|---|---|
| **MOVER:** | Andy Anderson, Commissioner District 5 |
| **SECONDER:** | Jim Barfield, Vice Chairman/Commissioner District 2 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM VI.E.2.,  AUTHORIZATION, RE:  COUNTY STAFF AND FINANCING TEAM TO ISSUE A REQUEST FOR PROPOSALS (RFP) TO IDENTIFY A FINANCIAL INSTITUTION WILLING TO PROVIDE A LOAN TO REFUND THE OUTSTANDING CONSTITUTIONAL FUEL TAX REVENUE REFUNDING BONDS, SERIES 2005 FOR DEBT SERVICE SAVINGS**

The Board authorized County staff and the County's financing team (Public Financial Management - Financial Advisor, and Nabors, Giblin & Nickerson - Bond Counsel) to undertake an RFP to identify a financial institution that is willing to provide a loan to refund outstanding Constitutional Fuel Tax Revenue Refunding Bonds, Series 2005, for debt service savings; and following completion of the RFP, the results, along with the Bond Resolution, will be brought back to the Board for consideration at a future meeting.

March 31, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM VI.F.1., FY 2015/2016 FEDERAL ELECTION ACTIVITIES GRANT FUNDING CERTIFICATE, RE:  MATCHING FUNDS

The Board executed Certificate Regarding Matching Funds in the amount of $14,345.96, that will be used for the 2016 Presidential Preference and Primary Elections budgeted in 2015-2016.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM VI.F.2.,  CITIZEN REQUEST BY WILLIE SMITH, RE:  DISPLAYING CONFEDERATE HISTORY IN CENTRAL BREVARD LIBRARY, COCOA

Willie Smith, President of Central Brevard County Branch NAACP, stated he has been an educator for almost 40 years in the community.  He went on to say there is a conflict concerning a Confederate exhibit in the Cocoa Library; individuals in the community have come to this branch complaining about the issue that they find the exhibit to be offensive; it is the objective of the NAACP to represent the community and to help resolve any issues that may exist; and that is his purpose of being at the meeting today.  He pointed out the branch does not oppose freedom of speech or freedom of expression, but it does object when it is done in a manner that is offensive to members of the community; and he has viewed images of the display as an American, citizen, and human being, and he found it somewhat offensive to look at.  He advised the Board as an educator he is fully aware of freedom of expression, but when it is done in a way that is obviously going to cause embarrassment and distaste to other individuals, then one needs to reconsider.  He stated they have no problems with the display, the problem is how it is displayed; and it should have one approach on one side and another approach on the other, so when individuals come into a public facility, he or she can see both sides of the coin.  He stated it is his understanding that this issue was brought to the public library, letters were sent to the Board, and he is one of those individuals who want to nip it in the bud.  He stated the problem he has is some individuals believe this is not a problem; and there must be a problem if people are complaining.  He noted he wants to sit down, come to a resolution, and to move on.  He advised the Board his mother said if it looked like a rat, smelled like a rat, it was probably a rat.

Mitch Morgan, Confederate Sons Association Camp, stated they are responsible for putting up the display in the Cocoa Library.  He went on to say his group is generally well thought of in the community, they add a lot to the community, they do living histories at Sam's House and the Pritchard House, and many other things; they have never had a problem in over 12 years of being in existence; he heard about this complaint by a reporter calling his home; and he was very surprised.  He inquired why this is all of a sudden a major issue when it has been going on for 10 years, and the display is the same each year; what is offensive in the display; and why did Mr. Smith not call one of them first.  He stated there is nothing in the display besides

uniforms, materials, a few books, and a picture of the Confederate Flag, which is the key to the Civil War as far as the Confederacy; they have a right to this display and to recognize their heritage; there is nothing illegal; and when the ugly head of censorship rears itself because another group does not like what they are displaying, then the door is opening up for a lot of problems.  He pointed out no one from their group has attacked a display from the other side.  He stated hopefully the Board will find no merit in this complaint, and make no changes in its Policies which have worked for a long time.

Commissioner Infantini stated she asked the County Manager for a picture of the display since she did not know what the specific issue was.

Commissioner Anderson inquired what the Confederate Sons Association does.  Mr. Morgan replied they go all over the County to schools, museums, and other places; they do living history; and they focus on the Confederate side of the Civil War.

Commissioner Smith stated it seems to him they have gotten to the point of their history that people wants to focus on what divides people instead of focusing on the many issues that unite everyone; and people do not agree on everything.  He noted Confederate history is a part of American history; and he does not think people should be offended because of the display.

Ron Doyka stated he agrees with what Mr. Morgan said.  He stated libraries are a place he can go to find information he needs; he goes in knowing and is confident that the content of the library is vast and varied; they are not corrupted or censored in any way; and they are wonderful places of learning.  He asked the Board to never let anything or anyone control or inhibit free access to all of the information at the libraries.

Tom Mills stated they begin their meetings with the Lord's Prayer and end it with that, they salute the American flag, and it is never excluded.  He advised the Board they have done displays in the Cocoa Library for 10 years or more; and the Library has been great.  He stated they are upset about this complaint as they have never had a complaint; they do a lot for the County; and they invite people to speak on history in general.  He noted they are disappointed they had to find out about this by a reporter calling them.

Mary Morgan stated their displays are historically correct; the Library has over 4,000 books on the Civil War subject; and because they have that many, they let them have the display cases.  She went on to say they assumed the display was perceived well; there are two sides to all of this; their biggest fear is people want to change the verbiage; and they want to let the librarians choose the display.  She stated that is censorship by exclusion, which is a threat to her First Amendment Rights.

William Gary, President of the North Brevard Branch of NAACP, stated he would like to invite Mr. Morgan and his group to give a presentation at the Moore Culture Center where they can talk about the role of the Confederacy during the Civil War; and that could bring about some understanding of what they are trying to do and why other people may have some objections to displaying the Confederate flag and materials in a public library.  He stated the Confederacy was established because if opposed slavery; whenever he sees any images that evoke that, he is concerned and it bothers him; there is a discourse going on about race relations; and many people who take certain images think it means they can act out certain behaviors.  He noted the NAACP is opposed to that behavior because it is destructive to this nation as a whole; to African Americans whenever they see images that remind them of that point in history they have concerns with it; they do not believe in censorship; and any part of history should be available to everybody, but the whole part of that history should be told.  He went on to say the Board should instruct County staff to revisit its Policy on this; and people who come by to see the display should see it is an educational exhibit to show it is part of history.  He reiterated he

March 31, 2015

would like Mr. Morgan and his group to present some of the history so they can hear the other side of it.

Commissioner Infantini inquired if Mr. Gary would consider the month following the Confederate history putting together his own display so they can see the side they would like to share; and the last thing she wants to do is have the librarians tell people what is permissible and what is not.  She pointed out the last thing she wants to do is tamper with someone's rights.  She stated just because she does not like something, she has a right to look at it or not look at it; the libraries have a lot of materials that are unrated available to the children; but for an adult she has the chance of looking at something or not looking at something.

Commissioner Anderson stated he gets nervous when government gets involved in dictating free expression; and as Americans people are charged under the Constitution that even though he or she may hate something or not accept it, they much be tolerant of it.

Commissioner Barfield stated all of the parties need to sit down and talk about this, because history is history and it cannot be changed; and he would appreciate it if they would get together.

Philip Stasik, President of the Space Coast Progressive Alliance, stated they stand to support the NAACP in its position; it is important that people understand that a flag is a symbol; the Confederate Battle Flag was a symbol during the Civil War of people who were attempting to destroy the United States; it was a symbol of people who were attempting to defend the institution of slavery; and there were four million human beings held as slaves in this country.  He went on to say nearly three-quarters of a million people died in this country in that dark period of the history; and the Confederate Flag is a symbol of that black period.  He stated Space Coast Progressive Alliance does not endorse reducing freedom of speech; they support freedom of speech; they also strongly remember the country's history; and the Sons of the Confederacy do a great job.  He advised the Board there were two flags used in the Confederacy; this is actually a Confederate Flag that represents the Confederate States; and it is not the Confederate Battle Flag.  He talked to the Board about racism and it being associated with the Confederate Battle Flag.  He noted the Confederate Battle Flag has no place on public property in the United States; and it is a symbol of hate.

Amy Tidd stated this is an important issue to her as she is a huge library supporter; and the Brevard County libraries are the best in America.  She noted the Central Brevard Library is the County's flagship library; when she entered the Library, the picture she showed the Board was to her right; and at the Citizens Academy classes she did bring this up, because she sees racism when she sees that flag.  She stated when she brought the issue up to the Reference Library, they told her people come up every day and say something about it.  She read aloud a letter to the Board she had written previously.

Doug Drinnon stated he keeps hearing efforts to support freedom of speech and censorship at the same time; and it cannot be done.  He stated he sees displays at this particular library all of the time that is not particularly pleasing to him, but he is not trying to influence anyone's freedom of expression.  He stated this subject is time wasting and tax wasting.

Chairman Fisher asked staff and the County Attorney to give the Board their thoughts.

Scott Knox, County Attorney, stated the issue is the display is placed in the public library; it is open for anyone who wants to use it on a first come first serve basis; and if a person is on the list, he or she gets to use the display whenever their designated time comes up.  He stated it is a public forum for purposes of the Constitution and First Amendment; under those circumstances, this Board cannot censor what goes into that display; it can prevent things like

March 31, 2015

obscenity; and it has not been declared as hate by the courts at this point.  He went on to say the Board is in the position that if it leaves this display as an open forum, it will have to allow people to express themselves in whatever way they choose as long as it does not violate the Constitutional principles.  He pointed out if the Board wants to change that Policy, it can pick themes and letting displays be displayed that relate to those themes; and the Board can pick out what it thinks an appropriate display is.

Commissioner Anderson stated the Board can get into situations where it chips away at a person's Constitutional rights, especially when it is in public areas.  He noted there are a lot of books in the libraries that deal with history; and he bets there are many books that display the Confederate Flag.

Chairman Fisher inquired if there is an annual list of what the displays are within the libraries.

Jeff Thompson, Library Services Director, replied each library has a display case typically in the lobby reserved for public use; typically the Reference Department will have a list of the months, and people will sign up; and there is not really a list necessarily as some months no one reserves it.  Chairman Fisher inquired as a County we are not encouraging or discouraging people to advertise during a particular month.  Mr. Thompson responded there are a wide variety of materials that have a wide variety of opinions on various historical matters.  Chairman Fisher inquired how it would be handled if someone wanted to put in a Klu Klux Klan (KKK) Display.  Mr. Thompson replied he has not had that kind of a request.  Attorney Knox replied staff would research and determine whether or not that was being displayed by the KKK was hate speech; and if it was, the answer would be no.

Chairman Fisher stated this whole Board would oppose a KKK display; it appears the County's Policy would allow that to happen; the Board has to be respectful to people's right for freedom of speech; and he gets calls on Black History Month asking why they always do it.  He advised he usually says if people do not celebrate the differences and bring them out again, people may forget what it is like.  He stated from a Policy standpoint, the Board needs to tighten up what can be displayed in the libraries as it can be seen as the Board endorses those.

The Board approved keeping the Policy the same relating to history displays in the Brevard County Public Libraries.

| | |
|---|---|
| **RESULT:** | **ADOPTED [4 TO 1]** |
| **MOVER:** | Trudie Infantini, Commissioner District 3 |
| **SECONDER:** | Jim Barfield, Vice Chairman/Commissioner District 2 |
| **AYES:** | Jim Barfield, Trudie Infantini, Curt Smith, Andy Anderson |
| **NAYS:** | Robin Fisher |

## ITEM VI.F.3.,   CITIZEN REQUEST BY GEOFF SMITH AND JASON STEELE, SMITH AND ASSOCIATES, RE:  SPECIAL EVENTS PERMIT - COCOA EXPO

Jason Steele, Smith and Associates, stated the request was put in because it is the death of common sense not to allow a special events permit for baseball at a baseball field that has been in existence since the 1960's; Geoff Smith and he has recently gotten involved in this particular case, which has been volatile; and there is still a lot of controversy in regards to what is happening between staff and the Cocoa Expo.  He went on to say that Jeff Unnerstall is a very intense person; Assistant County Manager Mel Scott, is an intense person as well; they are

pretty much like oil and water; and they disagree about everything imaginable.  He stated it is their job to come in as a professional staff and try to unfold and clean up a mess; Mr. Unnerstall violated a permit that was not granted and played baseball; that was wrong; Mr. Smith came in and entered into a stipulation with the County that said Mr. Unnerstall will not do that again; and since that point in time, they have set forth a professional state of scenarios with managers, and they are determining how to make sure that they do not have a volatile situation anymore.  He stated baseball cannot be played until the dormitories are complete; perhaps that is correct if speaking of the Certificate of Occupancy (CO); they are not talking about the CO; those issues are being addressed separately; and they want them set aside.  He pointed out they gave no option to appeal this to anyone; they said Mr. Unnerstall cannot appeal; and they feel anything can be appealed to the Board.  He stated the Board has the authority to approve this particular special events permit.  He noted there is before the Board some gray areas today; and he would suggest to the Board that if this did not have all of the politics of the Cocoa Expo involved in it, and it was put before the Board that a person wanted to do a special events permit on a church and play baseball where there was a field, there would be no controversy regarding this and it would be granted.  He stated they are attempting to move forward and complete the Cocoa Expo in a professional manner; they are asking the Board to simply help them by allowing the children that are in the area to play baseball at a stadium where baseball has been played since the 1960's; he believes staff is doing the best they can to get things done; and he believes Mr. Unnerstall has contributed millions of dollars.  He stated the Board should have common sense and to logically say to let the kids play baseball it would go a long way in getting things done.

Geoff Smith, Smith and Associates, stated he considers himself not just a lawyer but a problem solver; he has come a little late to this game; but he is hoping he can help solve a problem.  He noted sometimes people lose site of how to just look at an issue, apply common sense, and get to a Resolution that makes sense and protects everyone.  He advised the Board he is here today to allow baseball to be played on baseball fields that will allow tourists to come to the County and spend their money; common sense tells people dormitories are not necessary to be opened to play baseball; he used to play ball on vacant lots with he was a child; and they are not talking about opening up to the general public to watch ball games.  He went on to say these are youth sports events; the number of participants are limited to less than 100 people in attendance at any given time; and there is a way to make it happen.  He pointed out the dormitory provision was adopted by Resolution of the Board and what the Board gives it can take away; and the Board can vote to lift the requirement that the dormitories be open in order to play baseball.  He stated he understands the County has a process it needs to go through; in order to lift the Board's imposed Resolution, it does not need to go through two months of public hearings; and that is one way to get to a yes to allow children to play ball.  He suggested to the Board that an avenue to resolve this is a stipulation within the context of that litigation that says for the next 60 days special events will be allowed under these specific circumstances; there are avenues available; he thinks the special event permit can be approved; and if the Board feels the impediment is the Conditional Use Permit (CUP), it can lift that condition for the dormitories.  He stated there is a notion that this is inconsistent under other rules and regulations to allow special events, but special events by their nature are not going to be in compliance.  He advised the Board the Code allows for up to six months; and he asked that the Board to approve it and allow ball games to be played under reasonable conditions.

Commissioner Infantini stated the applicant agrees the Board has a conditional use Resolution that the Board signed, and it said the dormitories much have a CO prior to them being able to play on the ball field; what the applicant may not be aware of is prior to him taking on this and the two new Commissioners, this Resolution was stacked against Mr. Unnerstall; she encouraged him to agree to it just to get it through so the zoning could be changed; but it was stacked in such a way that they have to have a dorm open to be able to play baseball on a ball field.  She inquired what the two have in common.  She stated the Board can modify the stipulation if the Board agreed to so they can have special events.

March 31, 2015

Jim Garrison stated he is a general contractor and has been for 44 years in the County; he was hired by the bank that is financing this project to help and assist Mr. Unnerstall in the completion of it; and recently he has been hired by Mr. Unnerstall directly as a consultant.  He stated he can tell the Board this project is safe; the parking lot has been paved, stripped, and signage is being installed; the storm drainage on Friday Road has been replaced and put in according to Code; there is no heavy equipment moving around the site whatsoever other than standard mowing equipment for the lawn; and Mr. Unnerstall has a punch list of things that need to be completed in order to call for a final inspection and get a CO on these buildings.  He went on to say Mr. Unnerstall is working on each one of these items and he is helping him; he does not see the correlation that there needs to be a dorm to play ball; these commitments to these teams have been made a long time ago; it was done by Mr. Unnerstall hoping that everything would be done; and now because of faults on his part and slow movement on the County's part, these things have not been completed, but they are close.  He asked the Board to consider a special events permit; Mr. Unnerstall is not looking to use the whole facility, he is looking to use four ball fields in the north end, the ball field associated with the stadium, he would like to be able to use the bathrooms on the north end that are completed, and the bathrooms in the stadium; and he will use tape and barriers to other areas to not allow patrons to go there.  He pointed out he just wants a bus load of kids who are looking forward to playing ball on the fields.  He noted there have been $20 million invested on this property to renovate the existing stadium to make it what it is today; everyone recognizes it is a tremendous boom for the County; it will bring people, families, and reap good return in tax dollars for the County; and he asked the Board to consider, as a special event, playing ball on the ball fields and perhaps using the restrooms.  He stated if that is a problem, Portapottys can be used in lieu of that.  He explained to the Board there is water and fire suppression on the project; there are a few issues with particular buildings with fire suppression they are working to resolve mostly in the dorms and stadium; and everything else he thinks has been passed.  He asked the Board for its consideration in allowing Mr. Unnerstall to meet his obligations with these teams he scheduled six months ago.  He pointed out the site work, paving, stripping, parking bumpers being resolved, and stop signs and direction signage is being installed.

Stockton Whitten, County Manager, stated the County Attorney's Office can go first or staff can go first; he would like to ask Mr. Garrison on specifics on slow movement on the County because that was a pretty generalized statement; the fire inspector can talk about issues about fire suppression in the dorm; and the Board may want the County Attorney to speak to the legal position.

Morris Richardson, Assistant County Attorney, stated the key problem that no one has addressed, and sort of the elephant in the room, is this is not a special event, this is the core business for which they applied for and received a CUP, which has been subject of some discussion; he wants to make clear the CUP standing alone is not the only reason this cannot be permitted as a special event; he worked well with Mr. Smith, and he is glad he is assisting with this; and before getting to the legal issue and CUP, what they failed to mention is there are a whole bunch of deficiencies that the departments noted that resulted in staff rejecting this on other grounds last week.  He went on to say it does not mention the Building Officials deficiency notes, the Traffic Engineering notes, the Fire Prevention comments, and all of those things that would have to be cleared before any real special event before a special event permit can be issued.  He stated it does not mention the special event application requested use of the stadium fields; on their site plan it seems to indicate the whole stadium; and his understanding is they only want to use the stadium field.  He noted he asked them to only ask for the four ball fields in the northeast part of the stadium, because what they are asking for when asking to use the stadium field is to also use the stadium facility, which does not have CO; the Board knows from recent experience back in March when putting people on those fields there will be spectators in the stadium stands; but there are a number of deficiencies before getting to the

March 31, 2015

issue of the CUP.  He explained to the Board the legal issues with the CUP, as the Board knows and as Commissioner Infantini referenced, that was part of them going through and getting their zoning approval; the Resolution was part and parcel of their zoning; the zoning goes to land use under Florida Statutes, not a County Code, Resolution of the Board, or county policies, but under Chapter 163 Florida Statutes when doing anything to the zoning of the property, including putting CUP on it, it requires going through the public hearing process; and some of the limitations the Board sees in the Binding Development Plan (BDP) and Resolution on the CUP sounds strange when talking about them out of context, but there were reasons those were put in there.  He noted people pointed out concerns about the way dorms were being occupied; all of those things in the plan are there for a reason; and that is why they went through that whole process.  He stated that limitation that ties the CO of the dorm and use of the ball fields can be asked to be lifted through the public hearing process; to do that, the Board has to change the CUP that was issued; and the only way to do that under Florida Law is through that public hearing process.  He went on to say this is a core business function in which the CUP was issued to begin with; the County Code specifically says when it comes to conditional uses, because of the negative potential impacts that CUP's are designed to mitigate, no conditional use can be made on a property unless it is in strict compliance with all of the conditions and restrictions placed thereon by the Board; and staff cannot override all of the work that was done through the public hearing process.  He advised the Board of the Pandora's Box that would be opened up if they allowed all of this as a special event.  He noted they are asking the Board to be able to run their business on a special event permit, and the reason they are calling it a special event is because they know they cannot conduct it in compliance with the requirements to run their business the way they should run it.

Mel Scott, Assistant County Manager, stated Mr. Richardson has covered the issue well; he has nothing conceptionally to add to that except for specifics the Board may want as it relates to some of the conditions on the property right now; every week they are provided with examples and updates in what is happening there; and there are some good steps forward and some steps back.  He stated as far as the issue before the Board as it relates to what the Code provisions are and the inability in a large regard for it to consider what it is being asked to consider as a result of this Citizen Request, staff has nothing further to add.

Commissioner Anderson stated under the conditions Mr. Richardson gave regarding the grocery store, those are interior places where there is a lot of liability with fire and electrical; when the Board did this in the past, there was a former Commissioner who really hammered the applicant; it seems to him that these are outside facilities with little danger and liability to the patrons; and he inquired how to get to the point to let them have teams play on ball fields that anyone can do anywhere else in any Brevard County parks without using the facilities that would jeopardized life and safety issue.

Mr. Richardson replied what staff had recommended months ago was peeling off some of the structures so it could be narrowed down to the fields; there is the tie to the dorm; there is nothing that can be done about that other than go through the public hearing process; and they suggested to get the smallest scope possible and open up.  He went on to say they may be getting close to where they are mitigating some of the problems and stumbling blocks that are keeping them from getting completion on Phase 1; there are certain roadway improvements associated with this they need to close their bond, there are buffering requirements, and there are complaints about the lights bothering the neighbors at night; but they seem to be getting closer.

Commissioner Infantini stated first about the Pandora's Box, she likes when the County brings up if it does something today it will open a Pandora's Box; if people remember, all of the CUP's after the Board allowed that one CUP for the semi-truck to park in Melbourne, it was afraid it would open a Pandora's Box; and she is not concerned that if the Board grants a CUP it will

March 31, 2015

have a Pandora's Box open and everyone will come running.  She noted Mr. Smith is an Attorney as is Mr. Richardson; Mr. Richardson stated for the record the Board would have to go back through the public hearing process; and it is her opinion it does not have to go back through the public hearing process if one of the conditions is removed in the Resolution which removes the dorm.

Mr. Smith agreed with Commissioner Infantini; he stated the reason is because the condition is not part of the CUP it is part of the Resolution adopting the CUP; and he believes the County created it and can take it away.  He added he thinks this can happen.

Commissioner Infantini inquired if Mr. Smith agrees that the Board can take the use of the special event permit, the exception under Section 10-27 definitions of a special event, can be used yet Mr. Richards says it does not.  She inquired when she has two legal opinions, and she agrees with Mr. Smith, what is the downside; and will the County sue for doing that.  Mr. Smith replied there does not seem to be a danger the County will be sued for allowing the special event permit.

Chairman Fisher stated it is great Commissioner Infantini has confidence in Mr. Smith's ability; and he is not sure he practices County law and studies the County's Ordinances as well as the County Attorney's do.  He asked Mr. Richardson to respond to that.

Mr. Richardson stated no one has to take his opinion; the Resolution is called a zoning Resolution and it arrives through the public hearing process; but remember the applicant lead in with everything being complete and perfect except this one little problem in the zoning Resolution.  He pointed out staff reported a bunch of deficiencies from the Building Official and Traffic Engineering that resulted in denial; there are other issues that would require at a minimum submission of a new event application that by the Code, even if a person could go through the special event permit Code, it requires written sign off from all of those departments; and it does not say the Board shall determine when the site is safe; it requires the Building Official to sign off; and they have not done so.

Commissioner Anderson inquired if there are life/safety issues with the four ball parks and main ball park without the interior bathrooms.  The staff responded the stadium is not completed and the fire alarm system has not been approved yet.  Commissioner Anderson stated he has been to the stadium several times; and he inquired if the fields have life/safety issues.  The staff responded the fields themselves are fine.  Commissioner Anderson inquired if there is anything else staff is worried about regarding life/safety issues on the fields.

Mr. Whitten responded it is difficult for staff to answer that; and he thinks what Commissioner Anderson is asking is if the buildings are locked off what the issues are with the fields.  He stated staff can tell the Board where it is regarding the buildings; and the hypothetical question is if there were no access on to the buildings and the use was just the fields and life/safety issues.

Mr. Scott stated staff provided the Board with a memorandum yesterday; as Mr. Richardson has said if the Code empowered the Board to approve a special event on this property, which staff does not believe it can, what would a complete and approvable special event permit look like; the memo outlines the deficiencies to hold a special event; and the challenge staff has is that they are traversing an active construction site to get to these baseball fields.  He noted from the Building Official and County Engineer's perspective the entire property is still considered an active construction site.

Commissioner Anderson inquired how many days, if the applicant is granted a wish to play on that ball field how many days do they need.  Mr. Smith responded approximately 90 days they

March 31, 2015

could get to completion.  Commissioner Anderson stated not completion, just to host the teams. Mr. Smith replied there are events over the next 90 days.  Commissioner Anderson stated the easiest way is for the Board to suspend enforcement of the CUP and Stipulated Agreement for 90 days to use those ball fields and the stadium, not to include the interior; and staff can move on the other stuff.  He pointed out part of that would to be make sure they have adequate barrier systems to ensure players and families do not go toward the dorm area; and it could be added to have a security guard.

Chairman Fisher asked Mr. Garrison to explain to the Board what has been done at the Cocoa Expo that was not completed the last time the Board considered this item.  Mr. Garrison replied all sidewalk work and curbing is in place, the pavement is in place, and there were failures on the electrical system that have been repaired and replaced, but they have not been inspected yet; he stated there is no Code that required an active alert system in a stadium; they are not trying to put anyone in the stadium; and they are simply trying to play baseball.  He stated as far as he is concerned, all of the life/safety issues have been met.  Chairman Fisher inquired how long does Mr. Garrison think it will be before they get a final CO.  Mr. Garrison responded he thinks within a months' time these issues will be cleared up.

Chairman Fisher inquired if Space Coast Stadium has the same requirements as Cocoa Expo. The staff responded as far as the fire alarm system, they are in the process of reviewing that now.  Chairman Fisher stated he is concerned the Board would be allowing them to operate their business in the next 90 days with no real pressure of getting things done; and if it is closer to being completed in 30 days, it may be included in the motion.

Mr. Whitten explained to the Board staff can explain to the Board where they are in regards to inspections and compliance.

Commissioner Anderson stated he just wants to hear about the life/safety issues.

A staff member of the Building Department stated none of the buildings have a CO so they cannot be occupied, including the stadium; that is Florida Law; they have concerns with the electrical systems to all of the buildings; and his inspector said he still has issues with the plans that were submitted.

Commissioner Anderson stated he wants to hear about the life/safety issues specific to the area being discussed; he does not want to hear about anything but this little area, the fields, and the open air area.  A staff member of the Building Department replied the stadium and the north concession stand building have the CO; both had issues with the electrical feed from the Florida Power & Light Company (FPL) transformer to the buildings where the wires were undersized; and that is being worked through.  He stated the lighting has not been finalized; it is unclear what electricity they are planning to use; and none of the electric has received final inspection or approval, which were asked to be reviewed in finalizing inspection in special event review, and how to segregate visitos from any part of the site that they should not be in.

Mr. Garrison advised the site is no longer a construction site; there is no construction going on in the areas being requested under the special event permit; the quad fields at the north are complete; the building, even the electrical service to that has been corrected; but they do not need that electrical service because the special event application is for daytime ball playing only.  He stated all of the other construction issues that have been exposed over the last month have been corrected; and now there are no adverse effects to a patron coming onto that parking lot and going to watch a ball game.  He pointed out the project is as near done as it can be made; there are sticky issues like the evacuation system in the stadium that is not in any of the County stadiums; and he inquired why the Cocoa Expo should have it.

March 31, 2015

Commissioner Barfield asked staff after what has been discussed thus far, how the Board gets to these people where they can play ball, and how fast can it happen.

Mr. Scott replied legally they would have to be able to have a conversation where a special event with four ball fields could be granted by the Board contrary to the construct of the Code right now because they are struggling with that hypothetical knowing there are issues on the site that they would never contemplate having the public there; teams are the public; they would have to have a plan that staff was assured the traveling public, in the forms of the teams, was entering the site safely; and there is no opportunity for them to get into aspects of this property where there is active construction still going on.  He went on to say he was at the Cocoa Expo yesterday and he saw open trench work occurring along Friday Road; they have talked about a CUP process where the public wanted to be assured there is a safe ingress/egress to this property; he will assume that with a special event occurring on this property, that there is going to be ingress/egress around this area; and they had contemplated a sidewalk being installed, which is not there.  He stated the ingress/egress apron has not been poured; there is compaction issues staff came upon last Friday; and the first green light from legal staff would need would be to have this event on just the ball fields.

Commissioner Infantini inquired if the open trenches could be included; she stated there are open trenches on John Rodes that are wide enough for a car to fall in; and if those are on the open roadways, should they not all open trenches be repaired.  Mr. Scott advised Commissioner Infantini this is open trench work, there is heavy equipment actually working on the piping, and that is the difference.

Mr. Whitten stated in terms of Commissioner Anderson's proposal, he would like to ask the applicant how they would propose preventing people from accessing the buildings, because he is not sure he has heard their conceptual on how they would prevent people from accessing the buildings or simply limiting people to the four fields and the stadium.

Mr. Garrison replied the plan would be to barricade off any area that is not associated with the bathrooms if the Board lets them use the bathrooms; if the bathrooms are not in the equation, they could use barrels; the BDP forced Mr. Unnerstall to remove the ditch and put in the piping; he did that and did not adhere to the requirements of the Code; and now he has taken that out, it has been replaced except for three joints in the southern end, and by now he is thinking that is done.  He went on to say the other area frontage of Friday Road has been covered and graded, so there is no issues there; and that will be done by today or the end of the week.  He stated if necessary they will post a fire watchman 24/7 for the public to enter the stadium and bathrooms.

Mr. Smith stated limiting access is through adding construction type fencing; and if the bathrooms are not going to be used, they will just lock the doors.

Chairman Fisher inquired if it rains how they will get players out of the weather conditions.  Mr. Smith replied there will be buses for the teams to get on; and if the outdoor stadium could be used, they could seek shelter underneath that.

Commissioner Anderson inquired if the Board did a 45-day suspension of enforcement would the applicants return in 45 days to give the Board a progress report.  Mr. Smith responded affirmatively; and stated it would get them to a good point.

The Board approved citizen request by Geoff Smith and Jason Steele pertaining to the use of four ball fields in the northeast portion of the Cocoa Expo property and the ball field at the stadium only, as follows:

March 31, 2015

1)    Suspended enforcement of the Conditional Use Permit (CUP) and Stipulated Settlement Agreement for 45 days as long as the life/safety conditions are met

2)    Baseball games to be played during daylight hours only

3)    Portapottys are required

4)    No use of restroom areas in buildings, including the stadium

5)    No construction equipment within the areas used by the players and spectators, with the exception of mowers and other baseball field maintenance equipment

6)    Security plan approved by the County for the segregation of visitors from the active construction area

7)    Ability for the players and visitors to seek shelters on buses in inclement weather

8)    Allow County staff to come in to do open inspections during the events

9)    Injunction to remain in place and if Cocoa Expo violates any of the conditions the Board has placed, particularly relating to life/safety, the Board can still enforce the Injunction through the courts

10)    Temporary Certificate of Occupancy (TCO) for the outside seating area and outdoor portion of the stadium for 45 days, pending inspection and approval by the Building and Fire for life/safety issues, such as addressing the deficiencies with the stadium railings prior to TCO issuance

11)    A Fire Watchman to be present at the stadium baseball games

12)    Limit the number of people on the property to 99 persons

13)    Require supporting documents to County staff within 24 hours to allow reasonable review/inspection time prior to the first event which is to occur on April 4th

14)    Staff to provide the Board with an update at the April 2, 2015, Zoning meeting in the event that issues arise that preclude use of the property

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Andy Anderson, Commissioner District 5 |
| **SECONDER:** | Trudie Infantini, Commissioner District 3 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM VIII.A.,  REPORT, RE:  STOCKTON WHITTEN, COUNTY MANAGER**

Venetta Valdengo, Assistant County Manager, stated April 9, 2015, from 10:00 a.m. to 2:00 p.m. at the Bill Posey Conference Center at the Health Department they are having an expo; invited participants include public service agencies, federal, state, and local elected officials, Housing and Urban Development (HUD), housing providers, and the general public; and Brevard County has received over $116 million under the Community Development Block Grant (CDBG) program.

Stockton Whitten, County Manager, stated the Board may see regular business items at workshops or zoning meetings due to not having a regular meeting the second week of April.

Robin Sobrino, Planning and Development Director, stated regarding Item IV.A., adoption of the Comprehensive Plan Amendment relating to Amendment 1.2, Ogles, she would like the record to reflect they did bring the application forward to the North Merritt Island Board for a courtesy review; and it was their recommendation unanimously that the application be denied.

March 31, 2015

**ITEM VIII.F.,   REPORT, RE:   JIM BARFIELD, DISTRICT 2 COMMISSIONER/VICE CHAIRMAN**

Commissioner Barfield stated he attended Space Day in Tallahassee; he visited about 12 House Representatives and Senators relating to space-related activities; all of them are major supporters; and it was a trip well worth it.


**ADJOURNMENT**

Upon consensus of the Board, the meeting adjourned at 12:20 p.m.


ATTEST:                                                      _____
ROBIN FISHER, CHAIRMAN
BOARD OF COUNTY COMMISSIONERS
BREVARD COUNTY, FLORIDA
_____
SCOTT ELLIS, CLERK

# Exhibit 38

Minutes of April 2, 2015 zoning meeting of Brevard County Board of County Commissioners, obtained from Brevard County's website (selected pages).

MINUTES OF THE MEETING OF THE BOARD OF COUNTY COMMISSIONERS
BREVARD COUNTY, FLORIDA

5:00 PM

The Board of County Commissioners of Brevard County, Florida, met in regular session on April 2, 2015 at   in the Government Center Commission Room, Building C, 2725 Judge Fran Jamieson Way, Viera, Florida.

**Call to Order**

| Attendee Name | Title | Status | Arrived |
|---|---|---|---|
| Robin Fisher | Chairman/Commissioner District 1 | Present | |
| Jim Barfield | Vice Chairman/Commissioner District 2 | Present | |
| Trudie Infantini | Commissioner District 3 | Present | |
| Curt Smith | Commissioner District 4 | Present | |
| Andy Anderson | Commissioner District 5 | Absent | |

**ZONING STATEMENT**

The Board of County Commissioners acts as a Quasi Judicial body when it hears requests for rezonings and Conditional Use Permits.   Applicants must provide competent substantial evidence establishing facts, or expert witness testimony showing that the request meets the Zoning Code and the Comprehensive Plan criteria.  Opponents must also testify as to facts, or provide expert testimony; whether they like, or dislike, a request is not competent evidence. The Board must then decide whether the evidence demonstrates consistency and compatibility with the Comprehensive Plan and the existing rules in the Zoning Ordinance, property adjacent to the property to be rezoned, and the actual development of the surrounding area.  The Board cannot consider speculation, non-expert opinion testimony, or poll the audience by asking those in favor or opposed to stand up or raise their hands.   If a Commissioner has had communications regarding a rezoning or Conditional Use Permit request before the Board, the Commissioner must disclose the subject of the communication and the identity of the person, group, or entity, with whom the communication took place before the Board takes action on the request.   Likewise, if a Commissioner has made a site visit, inspections, or investigation, the Commissioner must disclose that fact before the Board takes action on the request.  Each applicant is allowed a total of 15 minutes to present their request unless the time is extended by a majority vote of the Board.  The applicant may reserve any portion of the 15 minutes of rebuttal.  Other speakers are allowed five minutes to speak.  Speakers may not pass their time to someone else in order to give that person more time to speak.

**INVOCATION**

The invocation was given by Chaplin Patti Febro, Brevard Federated Republican Women.

**PLEDGE OF ALLEGIANCE**

Commissioner Fisher led the assembly in the Pledge of Allegiance.

**ITEM II.A.,  APPROVAL OF PURCHASE, RE:  REPLACEMENT 2,500 GALLON WATER TANKER**

April 2, 2015

The Board approved the purchase of one (1) replacement Tanker from Pierce through Ten-8 Fire Equipment, Inc., who is an approved vendor selected through a completitive bidding process (Florida Sheriffs Bid No. 15-11-0116 Specification #15 - 2500 Gallon Mobile Water Supply Apparatus) completed by the Florida Fire Chiefs Association, Florida Sheriffs Association, and Florida Association of Counties.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Robin Fisher, Jim Barfield, Trudie Infantini, Curt Smith |
| ABSENT: | Andy Anderson |

## PUBLIC HEARINGS

Chairman Fisher called for a public hearing to consider Planning and Zoning Board recommendations of March 9, 2015 and Port St. John recommendations of March 11, 2015.

**ITEM III.B.1., (14PZ-00122) - GLEN E. AND DAWN M. SPACE - (KRUPAL PATEL) - REQUESTS A CUP (CONDITIONAL USE PERMIT) FOR ALCOHOLIC BEVERAGES (BEER & WINE ONLY) FOR ON-PREMISES CONSUMPTION IN CONJUNCTION WITH A RESTAURANT, IN A BU-1-A (RESTRICTED NEIGHBORHOOD RETAIL COMMERCIAL ZONING CLASSIFICATION, ON 0.8 ACRES, LOCATED ON THE NORTHWEST CORNER OF FAY BLVD., AND ARABELLA LANE**

Cynthia Fox, Planning and Zoning Manager, stated this is a request for CUP (Conditional Use Permit) for alcoholic beverages, beer and wine, for on-premises consumption in conjunction with a restaurant.

There being no comments or objections, the Board approved request of Glen E. and Dawn M. Space for a CUP (Conditional Use Permit) for alcoholic beverages, beer and wine only, for on-premises consumption in conjunction with a restaurant,  in a BU-1-A (Restricted Neighborhood Retail Commercial) zoning classification, on 0.8 acres, located on the northwest corner of Fay Boulevard, and Arabella Lane.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Robin Fisher, Jim Barfield, Trudie Infantini, Curt Smith |
| ABSENT: | Andy Anderson |

**ITEM III.B.2., (15PZ-00004) - PRN INVESTMENTS - (THIDA CHAMPAGNE) - REQUESTS A CUP (CONDITIONAL USE PERMIT) FOR ALCOHOLIC BEVERAGES (BEER & WINE ONLY) FOR ON-PREMISES CONSUMPTION IN CONJUNCTION WITH A RESTAURANT IN A BU-2 RETAIL, WAREHOUSING, AND WHOLESALE COMMERCIAL) ZONING CLASSIFICATION,**

April 2, 2015

**ON 0.06 ACRE, LOCATED ON THE NORTH SIDE OF E. MERRITT ISLAND CAUSEWAY, APPROXIMATELY 0.18 MILE EAST OF PLUMOSE STREET**

Cynthia Fox, Planning and Zoning Manager, stated this is a request for Conditional Use Permit (CUP) for alcoholic beverages, beer and wine only, for the on-premises consupmtion in conjunction with a restaurant.

There being no comments or objections, the Board approved PRN Investments request for a Conditional Use Permit (CUP) for alcoholic beverages, beer and wine only, for on-premises consumption in conjunction with a restaurant in a BU-2 (Retail, Warehousing, and Wholesale Commercial) zoning classification, on 0.06 acre, located on the north side of E. Merritt Island Causeway, approximately 0.18 mile east of Plumose Street.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Curt Smith, Commissioner District 4 |
| SECONDER: | Trudie Infantini, Commissioner District 3 |
| AYES: | Robin Fisher, Jim Barfield, Trudie Infantini, Curt Smith |
| ABSENT: | Andy Anderson |

**ITEM III.B.3., (14PZ-00110) - SHIRLEY P. & CLARENCE E. WATKINS, AND GEORGE E. (JR.) & MELODY M. MORSE - (STEPHEN CERQUA) - REQUESTS A CHANGE OF CLASSIFICATION FROM GU (GENERAL USE) TO RE-1-11 (SINGLE-FAMILY RESIDENTIAL WITH A BDP (BINDIND DEVELOPMENT PLAN) LIMITED TO 14 STREET, APPROXIMATELY 0.12 MILE EAST OF THE BANANA RIVER**

Cynthia Fox, Planning and Zoning Manager, stated this is a request to change the classification to GU (General Use) to RE-1-11 (Single-Family Residential) and the applicant has submitted voluntarily a Binding Development Plan (BDP) limiting the total development to 14 single-family homes.

Steven Cevqua stated he is seeking approval of the Item.

Commissioner Barfield stated the roads are going to take an impact by the construction; and asked staff if it could do something to make sure there are some funds in place to repair any damaged road.

Mel Scott, Assistant County Manager, stated if it were the pleasure of the Board he will have some funds there for the repair of the road at such time as the construction activities had degraded the road to the point it would need to be re-milled and resurfaced; it runs about 600 feet in linear length; and it is estimated staff could re-mill and resurface the road for about $20,000.  He added that is a dollar amount he is giving to the Board, if it were the pleasure of the Board, to have this road fixed and repaired at such time as the construction activities had degraded that road, and that is a cost estimate that is realistic.

Commissioner Barfield stated staff could put the $20,000 in escrow, and then if any damage is done it can be used for that, if not it returned.

There being no further comments of objections, the Board approved Shirley P. And Clarence E. Watkins, and George E. (Jr.) and Melody M. Morse request a change of classification from GU (General Use) to RU-1-11 (Single-Family Residential) with a BDP (Binding Development Plan)

April 2, 2015

limited to 14 single-family residential homes, on 15.2 acres, located at the terminus of Yount Drive and Carmen Street,  approximately 0.12 mile east of the Banana River, with the stipulation that the applicant put $20,000 in escrow account to fix or repair the road if necessary.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Robin Fisher, Jim Barfield, Trudie Infantini, Curt Smith |
| ABSENT: | Andy Anderson |

**ITEM III.C.1.,  (15PZ-00012) SECTION 35, TOWNSHIP 24, RANGE 36, SUB. #30, LOTS C AND C.01, AND TAX PARCEL 269 ON 2.74 ACRES, OWNED BY BREVARD COUNTY AND STATE OF FLORIDA - 2.74 ACRES, LOCATED ON THE NORHTWEST CORNER OF S.R. 520 AND MYRTICE AVENUE**

Cynthia Fox, Planning and Zoning Manager, stated is a follow up rezoning to GML (Government Managed Lands - High Intensity), staff took this property to public facilities future land use designation and this just the follow up rezoning.

There be no comments or objections, the Board approved Section 35, Township 24, Range 36, Sub.#30, Lots C and C.01, and Tax Parcel 269 on 2.74 acres, owned by Brevard County and State of Florida on 2.74 acres, located on the norhtwest corner of S.R. 520 and Myrtice Avenue.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Curt Smith, Commissioner District 4 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Robin Fisher, Jim Barfield, Trudie Infantini, Curt Smith |
| ABSENT: | Andy Anderson |

**ITEM V.A.,  APPROVAL, RE:  AMENDMENT TO OPTION AND SALES AGREEMENT WITH TM-ECON MITIGATION BANK**

The Board executed the Amendment to Option and Sales Agreement with TM-Econ Mitigation Bank to extend the Option Period to October 23, 2105.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Robin Fisher, Jim Barfield, Trudie Infantini, Curt Smith |
| ABSENT: | Andy Anderson |

**ITEM VI.,  PUBLIC COMMENTS**

April 2, 2015

Susan Young stated she is before the Board to voice concerns regarding her properties; she is not here to bring up the past regarding Cocoa Expo, and she is here to address the present and future conditions that will affect her residential properties.  She went on to say she does understand Jeff Understall's dream and goal for his son to play in the stadium; it was her understanding that before a Certificate of Occupancy (CO) could be issued and before they could ball on the fields and certain conditions had to be met; and she would like to address what will affect her privacy, and has not been addressed as of today.  She added there is no eight foot pvc fence surrounding her property, and the 28-foot landscape buffer there are no scrubs and no trees on the north side; there is only a partial berm around the perimeter properties; and they have not installed the drainage pipe and grates on the frontage of the property to connect the stormwater pipe that was just installed to replace the ditch.  She expressed that she is worried the Board is waiving Cocoa Expo's requirements and that it will waive her rights as a residential property owner abutting a commercial property.  She noted this will affect her quality of life and her renters.  She asked the Board to please reassure her the above mentioned conditions will be met with no exceptions; this has been a long battle and they are coming close to the end; and please protect her as a private property owner.

Commissioner Fisher asked staff to take notes and he is sure before the final CEO (Certificate of Occupancy) the things will be addressed.


## ITEM VII.F., REPORT, RE:  JIM BARFIELD, DISTRICT 2 COMMISSIONER, VICE CHAIRMAN

Commissioner Barfield reminded everyone about the Homeless Stand Down on April 25th at the National Guard Armory in Cocoa.  He stated he went to Kennedy Space Center in which the Bob Cabana, Center Director, gave a update on what is going on at NASA, what is happening at space program, and what everyone can look forward to in the future, it was very informative; and he will also be at the Space Symposium in Colorado.


## ITEM VII.G., REPORT, RE:  ROBIN FISHER, DISTRICT 1 COMMISSIONER, CHAIRMAN

Commissioner Fisher wished everyone a Happy Easter.


Upon consensus of the Board, the meeting adjourned at 5:18 p.m.


ATTEST:                                      _____
                                             ROBIN FISHER, CHAIRMAN
                                             BOARD OF COUNTY COMMISSIONERS
                                             BREVARD COUNTY, FLORIDA
_____
SCOTT ELLIS, CLERK

# Exhibit 39

Minutes of May 12, 2015 meeting of Brevard County Board of County Commissioners, obtained from Brevard County's website (selected pages).

## MINUTES OF THE MEETING OF THE BOARD OF COUNTY COMMISSIONERS
### BREVARD COUNTY, FLORIDA

9:00 AM

The Board of County Commissioners of Brevard County, Florida, met in regular session on May 12, 2015 at 9:00 AM in the Government Center Commission Room, Building C, 2725 Judge Fran Jamieson Way, Viera, Florida.

**Call to Order**

| Attendee Name | Title | Status | Arrived |
|---|---|---|---|
| Robin Fisher | Chairman/Commissioner District 1 | Present | |
| Jim Barfield | Vice Chairman/Commissioner District 2 | Present | |
| Trudie Infantini | Commissioner District 3 | Present | |
| Curt Smith | Commissioner District 4 | Present | |
| Andy Anderson | Commissioner District 5 | Present | |

**INVOCATION**

Commissioner Infantini provided the invocation.

**PLEDGE OF ALLEGIANCE**

Commissioner Anderson led the assembly in the Pledge of Allegiance.

**APPROVAL OF MINUTES**

The Board approved the February 19, 2015 Special Meeting Minutes.

**ITEM I.A., RESOLUTION, RE:   PROCLAIMING MAY 17-23, 2015, AS EMERGENCY MEDICAL SERVICES WEEK**

Commissioner Barfield read aloud, and the Board adopted Resolution No. 15-058, proclaiming the week of May 17-23, 2015, as Emergency Medical Services Week.

Chief Mark Schollmeyer, Fire Rescue Director, expressed thanks to the Board on behalf of the men and women of the Brevard County Fire Rescue.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Jim Barfield, Vice Chairman/Commissioner District 2 |
| **SECONDER:** | Curt Smith, Commissioner District 4 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM I.B., RESOLUTION, RE:   PROCLAIMING MAY 17-23, 2015, AS NATIONAL PUBLIC WORKS WEEK**

May 12, 2015

Commissioner Smith read aloud, and the Board adopted Resolution No. 15-059, proclaiming the week of May 17-23, 2015, as National Public Works Week.

John Denninghoff, Public Works Director, expressed his thanks to the Board for the Resolution.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Curt Smith, Commissioner District 4 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

### ITEM I.D., RESOLUTION, RE:  PROCLAIMING MAY 15TH AS PEACE OFFICER'S MEMORIAL DAY AND THE WEEK OF MAY 10-16, 2015, AS NATIONAL POLICE WEEK IN BREVARD COUNTY

Commissioner Infantini read aloud, and the Board adopted Resolution No. 15-060, proclaiming May 15, 2015 as Peace Officers Memorial Day and the week of May 10-16, 2015, as National Police Week.

Sheriff Wayne Ivey expressed thanks to the Board for the Resolution.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

### ITEM I.E., RESOLUTION, RE:  CELEBRATING THE 50TH AND GOLDEN ANNIVERSARY OF MERRITT ISLAND HIGH SCHOOL

Commissioner Barfield read aloud, and the Board adopted Resolution No. 15-061, celebrating The 50th and Golden Anniversary of Merritt Island High School.

Denise Walter, Merritt Island High School Representative, expressed thanks to the Board for the Resolution.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

### ITEM I.F., RESOLUTION, RE:  RECOGNIZING AND CONGRATULATING HEALTH FIRST'S VIERA HOSPITAL FOR EARNING A FIVE-STAR DESIGNATION

# Exhibit 40

Minutes of May 26, 2015 meeting of Brevard County Board of County Commissioners, obtained from Brevard County's website (selected pages).

MINUTES OF THE MEETING OF THE BOARD OF COUNTY COMMISSIONERS
BREVARD COUNTY, FLORIDA

9:00 AM

The Board of County Commissioners of Brevard County, Florida, met in regular session on May 26, 2015 at 9:00 AM in the Government Center Commission Room, Building C, 2725 Judge Fran Jamieson Way, Viera, Florida.

## CALL TO ORDER

| Attendee Name | Title | Status | Arrived |
|---|---|---|---|
| Robin Fisher | Chairman/Commissioner District 1 | Present | |
| Jim Barfield | Vice Chairman/Commissioner District 2 | Present | |
| Trudie Infantini | Commissioner District 3 | Present | |
| Curt Smith | Commissioner District 4 | Present | |
| Andy Anderson | Commissioner District 5 | Present | |

## INVOCATION

Pastor Ron Meyr, Faith Viera Lutheran Church, Viera, provided the invocation.

## PLEDGE OF ALLEGIANCE

Commissioner Robin Fisher led the assembly in the Pledge of Allegiance.

## APPROVAL OF MINUTES

The Board approved the May 7, 2015, Zoning Meeting Minutes.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Curt Smith, Commissioner District 4 |
| **SECONDER:** | Trudie Infantini, Commissioner District 3 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.A., RESOLUTION, RE:  RECOGNIZING THE RETIREMENT OF ESTELLA EDWARDS, DIRECTOR OF DR. MARTIN LUTHER KING, JR. PUBLIC LIBRARY, AFTER 45 YEARS OF SERVICE

The Board adopted Resolution No. 15-070, recognizing the retirement of Estella Edwards, Director of Dr. Martin Luther King, Jr. Public Library, after 45 years of service.

Estella Edwards expressed her appreciation to the Board for the Resolution.

May 26, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Robin Fisher, Chairman/Commissioner District 1 |
| SECONDER: | Trudie Infantini, Commissioner District 3 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM I.A., APPROVAL, RE:  NAMING THE COMMUNITY ROOM AT THE DR. MARTIN LUTHER KING, JR. PUBLIC LIBRARY AS THE ESTELLA EDWARDS COMMUNITY ROOM**

Chairman Fisher stated due to Estella Edwards' 45 years of devoted service, she deserves special recognition;  and the Library Services Department, in accordance with Board Policy BCC-58, had requested that the unnamed Community Room at the Dr. Martin Luther King, Jr. Public Library be named in honor of Estella Edwards, named The Estella Edwards Community Room.

The Board approved naming the Community Room at the Dr. Martin Luther King, Jr. Public Library, the Estella Edwards Community Room.

Jeff Thompson, Library Services Director, expressed his appreciation to Ms. Edwards for her dedicated service to Brevard County.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM I.B., RESOLUTION, RE:  PROCLAIMING THE WEEK OF JUNE 7-13, 2015, AS NATIONAL BEACH SAFETY WEEK AND RIP CURRENT AWARENESS WEEK**

The Board adopted Resolution No. 15-071, proclaiming the week of June 7-13, 2015, as National Beach Safety Week and Rip Current Awareness Week.

Chief Mark Schollmeyer, Fire Rescue Director, expressed his appreciation to the Board for the Resolution; and he stated there were 18 rescues and life guards went in the water over 200 times to assist the public.

Commissioner Infantini stated in the South Beaches there was no parking over the weekend.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

May 26, 2015

**ITEM I.C., PRESENTATION, RE:  UF/BREVARD COUNTY EXTENSION 2015 TROPICANA SPEECH CONTEST WINNERS**

The Board acknowledge the presentation of the winners of the 2015 Tropicana Speech Contest, Tatiana Costanza, Palm Bay Elementary 4th grade, and Miguel Cook Sherwood Elementary 6th grade, for their speeches on Pets and Food Allergies.

**ITEM I.D., RESOLUTION, RE:  RECOGNIZING SPACE COAST GEOCACHING ASSOCIATION**

The Board adopted Resolution No. 15-072, recognizing the Space Coast Geocaching Association for their outstanding community involvement.

Dale Swinehart, Space Coast Geocaching Store, introduced his wife Barbara to the Board; and he expressed his appreciation to the Board for the Resolution.  He stated the Parks and Recreation Department allows them to hide containers in the County Parks, and in turn they clean up the Parks.

Jack Masson, Parks and Recreation Director, stated one day there will be no trash in the Parks, but until that day, thank goodness for the Geocachers.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Andy Anderson, Commissioner District 5 |
| **SECONDER:** | Curt Smith, Commissioner District 4 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM I.E., RESOLUTION, RE:  PROCLAIMING THE WEEK OF MAY 24-30, 2015, AS HURRICANE PREPAREDNESS WEEK**

Kimberly Prosser, Emergency Services Director, expressed her appreciation to the Board for the Resolution; she provided a PowerPoint presentation to the Board; and she introduced Dave Sharp, Science and Operations Officer, with the National Weather Service in Melbourne.

Mr. Sharp stated there has significant advancements in recent years related to the forecast and warning of related hurricane hazards, in particular is the deadly storm surge hazard.  He showed the Board a manifestation of significant advancements on the screen; he stated there is the experimental storm surge watch/warning graphic out there this year; they are moving that towards official, which will help them determine exactly the length of coastline that is being threatened; and they can work with the County if the situation ever happens. He pointed out the map the Board sees is a high resolution innovation map; what they have done is subtract out the topography so they can look at the water and the flood potential there relative to water above ground; and that will help support those that have to make the decision relative to the evacuation of particular flood zones.  He went on to say they can look at the map and basically give a depiction of the extent which plans and preparations should be invoked according to the situation at hand as opposed as just the pharmacological or statistical approach of the subject; and there is also a complementary aspect that goes along with that as well, and that is the description of potential impacts.  He noted there will be the fiscal science information there on the map, but if a person wants to relate that to information that is relatable and actionable for the citizenry, they will try to put that in those terms.

# Exhibit 41

Minutes of July 7, 2015 meeting of Brevard County Board of County Commissioners, obtained from Brevard County's website (selected pages).

MINUTES OF THE MEETING OF THE BOARD OF COUNTY COMMISSIONERS
BREVARD COUNTY, FLORIDA

9:00 AM

The Board of County Commissioners of Brevard County, Florida, met in regular session on July 7, 2015 at 9:00 AM in the Government Center Commission Room, Building C, 2725 Judge Fran Jamieson Way, Viera, Florida.

## CALL TO ORDER

9:00 AM Meeting called to order on July 7, 2015 at Board Room, Board Room, Viera, FL.

| Attendee Name | Title | Status | Arrived |
|---|---|---|---|
| Robin Fisher | Chairman/Commissioner District 1 | Present | |
| Jim Barfield | Vice Chairman/Commissioner District 2 | Present | |
| Trudie Infantini | Commissioner District 3 | Present | |
| Curt Smith | Commissioner District 4 | Present | |
| Andy Anderson | Commissioner District 5 | Present | |

## INVOCATION

The invocation was provided by Chaplain Roger Alexander, Brevard County Sheriff's Office.

## PLEDGE OF ALLEGIANCE

Commissioner Infantini led the assembly in the Pledge of Allegiance.

## APPROVAL OF MINUTES

The Board approved the March 31, 2015 and May 12, 2015 Regular Meeting Minutes, April 9, 2015 Special Meeting Minutes, and the May 28, 2015 Zoning Meeting Minutes.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Trudie Infantini, Commissioner District 3 |
| **SECONDER:** | Jim Barfield, Vice Chairman/Commissioner District 2 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.A., RESOLUTION, RE:  PROCLAIMING THE MONTH OF JULY 2015 AS PARKS AND RECREATION MONTH

Commissioner Smith read aloud, and the Board adopted Resolution  No. 15-088, proclaiming the Month of July 2015 as Parks and Recreation Month.

Jack Masson, Parks and Recreation Director, expressed his appreciation for the Board's continued support; he stated they are honored to be celebrating the 30th Anniversary of the July Parks and Recreation Month by the professional organization, the National Recreation Parks Association; and they have over 20 recreation camps throughout the County, serving almost 3,200 children this year.  He advised the Board the summer camp children have letters of appreciation to provide to the Board.

July 7, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Curt Smith, Commissioner District 4 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.B., PRESENTATION, RE:  VOLUNTEER RECOGNITION INITIATIVE:  VOLUNTEER STARS LIGHT UP BREVARD

The Board acknowledged presentation by Anita Hazard, Lead Technician, Brevard County Medical Examiner's Office, who recognized Jenna Mousseau, a volunteer with the Brevard County Medical Examiner's Office.

## ITEM I.C., RESOLUTION, RE:  RECOGNIZING OFFICER ZACK NATIONS

Chairman Fisher read aloud, and the Board adopted Resolution No. 15-089, recognizing and congratulating Officer Zack Nations acknowledging his bravery and quick action on the night of November 20, 2014, and proudly honoring him as one of Brevard County's own.

Officer Zack Nations expressed his appreciation to the Board on behalf of his department at Florida State University and Chief David Perry who wanted to be present but was unable to make it; and he stated it is an honor.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.D., RESOLUTION, RE:  PROCLAIMING THE WEEK OF JULY 12-18, 2015, AS PRETRIAL PROBATION, AND PAROLE SUPERVISION WEEK

Commissioner Anderson read aloud, and the Board adopted Resolution No. 15-090, proclaiming the week of July 12-18, 2015, as Pretrial, Probation, and Parole Supervision Week; and he encouraged all citizens to honor these community corrections professionals and recognize their achievements.

Samantha Eastman, representing the Department of Corrections, stated currently there are 67 officers working in Brevard County; safety is their number one goal; and most importantly, the Brevard County citizens.  She noted one of the most important things they do is reentry, which is an important public safety goal; they offer many reentry programs through the Department of Corrections; and this all occurs based on the great work and effort of the correction officers.

July 7, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---------|---------------------|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.E., RESOLUTION, RE:  RECOGNIZING MELANIE TIBBALS FOR HER 40 YEARS OF DEDICATED PUBLIC SERVICE TO BREVARD COUNTY

Commissioner Anderson read aloud, and the Board adopted Resolution No. 15-091, recognizing Melanie Tibbals for her 40 years of dedicated public service to Brevard County.

Melanie Tibbals expressed her appreciation to the Board for the Resolution; she stated it has been a pleasure to work for the County; as a disabled person she was able to prove herself; and she enjoyed every moment she has worked with the County.

| RESULT: | ADOPTED [UNANIMOUS] |
|---------|---------------------|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM I.F., RESOLUTION, RE:  COMMENDING WILLIAM LUNDELL FOR DONATING OVER 100 GALLONS OF BLOOD

Commissioner Infantini read aloud, and the Board adopted Resolution No. 15-092, recognizing and commending William Lundell for being a dedicated blood donor and reaching is 100-gallon donation milestone.

William Lundell stated only one-third of the eligible population donates blood; there is always a need for blood; and blood is the only thing that can be given that cannot be duplicated.

| RESULT: | ADOPTED [UNANIMOUS] |
|---------|---------------------|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM II.A.1., APPROVAL, RE:  MOSQUITO CONTROL TENTATIVE DETAILED WORK PLAN BUDGET FOR FY 2015-2016

The Board approved the Florida Department of Agriculture and Consumer Services, Division of Agriculture Environmental Services, Detailed Work Plan Budget-Arthropod Control, for the Fiscal Year beginning October 1, 2015, and ending September 30, 2016, to qualify the Brevard County Mosquito Control District as a State Certified Program.

July 7, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.A.2., AMENDMENT 1 TO PARTICIPATION AGREEMENT WITH CITY OF ROCKLEDGE, RE: RESERVE CERTAIN AREAS OF THE PROPERTY TO EACH ENTITY FOR DRAINAGE STORMWATER TREATMENT, AND MITIGATION PURPOSES**

The Board execute Amendment 1 to the Participation Agreement with the City of Rockledge to reserve certain areas of the property to each entity for drainage, stormwater treatment, and mitigation purposes; and authorized the Chairman to sign future Joint Conservation Easements required for mitigation, subject to approval of the County Manager and the County Attorney's Office.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.A.3., FINAL PLAT APPROVAL, RE: HALEY SUBDIVISION - JOHN D. HALEY**

The Board granted final plat approval for Haley Subdivision, subject to minor changes, if necessary, and developer responsible for obtaining all other necessary jurisdictional permits.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.A.4., RESOLUTION AND EASEMENT IN FAVOR OF FLORIDA POWER & LIGHT COMPANY, RE: RELAYING POWER TO A PROPOSED SCALE HOUSE AT THE CENTRAL BREVARD DISPOSAL FACILITY IN CONJUNCTION WITH BREVARD COUNTY SITE PLAN #15ER00006**

The Board adopted Resolution No. 15-093, and executed an Easement in favor of Florida Power and Light Company for a proposed Scale House at the Central Brevard Disposal Facility in conjunction with Brevard County

July 7, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.A.8., CONTRACT FOR SALE AND PURCHASE WITH MICHAEL B. AND REBECCA B. CREWS, RE: ACQUISITION OF PARCELS 106 A, B, AND C AS PART OF THE ST. JOHNS HERITAGE PARKWAY PROJECT**

The Board executed the Contract for Sale and Purchase with Michael B. And Rebecca B. Crews for the acquisition of Parcels 106 A, B, and C as part of the St. Johns Heritage Parkway Project.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.A.9., EASEMENT FROM THE DEVEREUX FOUNDATION, RE: EXISTING GRAVITY SEWER, FORCE MAIN, AND LIFT STATION**

The Board accepted the Easement from Devereux Foundation for an existing gravity sewer, force main, and lift station.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM II.A.10., SOVEREIGNTY SUBMERGED LANDS FEE WAIVED LEASE RENEWAL BOT FILE NO. 050017474 WITH BOARD OF TRUSTEES OF THE INTERNAL IMPROVEMENT TRUST FUND OF THE STATE OF FLORIDA, RE: PROPERTY LOCATED NORTH/WEST OF MATHERS BRIDGE**

The Board executed the Sovereignty Submerged Lands Fee Waived Lease Renewal BOT File No. 050017474 between the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida and Brevard County relating to the County property located north/west of Mathers Bridge.

July 7, 2015

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Andy Anderson, Commissioner District 5 |
| **SECONDER:** | Jim Barfield, Vice Chairman/Commissioner District 2 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM II.D.13., APPOINTMENTS/REAPPOINTMENTS, RE: BREVARD WORKFORCE DEVELOPMENT BOARD

The Board appointed/reappointed Michael Bean, Teresa Compton, and Amar Patel to the **Brevard Workforce Development Board**, with terms expiring June 30, 2016; and Venetta Valdengo, Debra Greco, Mike Menyhart, and Wayne Olson to the **Brevard Workforce Development Board**, with terms expiring June 30, 2018.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Andy Anderson, Commissioner District 5 |
| **SECONDER:** | Jim Barfield, Vice Chairman/Commissioner District 2 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM II.D.14., APPOINTMENTS/REAPPOINTMENTS, RE: CITIZEN ADVOSORY BOARDS

The Board appointed/reappointed Dawn Johnson and Donna Watkins to the **Onsite Disposal Variance Board**, with terms expiring December 31, 2015; and Nancy Mitts to the **Art in Public Places Advisory Committee**, with term expiring December 31, 2015.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Andy Anderson, Commissioner District 5 |
| **SECONDER:** | Jim Barfield, Vice Chairman/Commissioner District 2 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM III., PUBLIC COMMENTS

Susan Young provided the Board with some pictures; she stated she is present today to get some better understanding of when her issues will be addressed; the last Board meeting, May 12, 2015, it was not fully addressed; and it was confusing and left with the County Attorney regarding what needs to be addressed.  She went on to say the landscaping buffer was included in a 45-day time frame; her property has no way for the stormwater runoff to drain anywhere except back into the ground; the drainage grates are above ground level, and even the sidewalks retain water before they can get to the level to drain into the grates; and the pictures show how her property retains water.  She inquired how long they have to wait to get these issues resolved.  She advised the Board the fence that was installed fell down on June 19, 2015, in a couple of different sections; in her opinion, the fence needs to be reinforced with

July 7, 2015

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM VI.E.1., RESOLUTION, RE:  AMENDING TAX ABATEMENT PROGRAM GUIDELINES

Stockton Whitten, County Manager, stated this Item is a request for the Board to amend the Tax Abatement Program Guidelines; as the Board is aware, there are three categories which it uses to consider Tax Abatements; the number of employees, the payroll, and the capital investments; the Program has been using the 2013 average annual wage of $41,375; and the Statewide average has been updated to $42,904.

The Board adopted Resolution No. 15-100, amending Tax Abatement Program Guidelines, as recommended by the Economic Development Commission of Florida's Space Coast.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Jim Barfield, Vice Chairman/Commissioner District 2 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

## ITEM VI.F.1., RESOLUTION, RE:  AMENDING RESOLUTION NO. 05-332, PRE-MEETING INVOCATION POLICY

George Lebovitz stated he is wondering why there needs to be an invocation at all; and it seems business should just be conducted.

Lisa Warren stated her religious and philosophical beliefs are no one's business, her sexual orientation is not anyone's business, her ethnicity is no one's business, her voting history is no one's business, and she is a citizen of the County, which is the Board's business; the Board's business is to effect the local government in a manner compliant with the Constitution of the United States and subordinate State legislation in serve to all citizens of the County; and the Board has not been doing that.  She noted promoting one religious belief system over all others is not appropriate while conducting the business of government.  She added the Board works for the populous as a whole; the government is prohibited from prioritizing one belief system over another; and she proposed that all invocations, prayers, and blessings simply be eliminated from the Agenda.

Scott Knox, County Attorney, clarified by saying the motion should include all of the recommended actions and recommendations.  Commissioner Smith responded affirmatively.

The Board approved Option 1, to adopt Resolution No. 15-101, formalizing the Board's Pre-Meeting Invocation Policy; and authorized the County Attorney to seek a Declaratory Judgment.

# Exhibit 42

Minutes of September 3, 2015 zoning meeting of Brevard County Board of County Commissioners, obtained from Brevard County's website (selected pages).

MINUTES OF THE MEETING OF THE BOARD OF COUNTY COMMISSIONERS
BREVARD COUNTY, FLORIDA

5:00 PM

The Board of County Commissioners of Brevard County, Florida, met in regular session on September 3, 2015 at 5:00 PM in the Government Center Commission Room, Building C, 2725 Judge Fran Jamieson Way, Viera, Florida.


## CALL TO ORDER

| Attendee Name | Title | Status | Arrived |
|---|---|---|---|
| Robin Fisher | Vice Chairman/Commissioner District 1 | Present | |
| Jim Barfield | Vice Chairman/Commissioner District 2 | Present | |
| Trudie Infantini | Commissioner District 3 | Present | |
| Curt Smith | Commissioner District 4 | Present | |
| Andy Anderson | Commissioner District 5 | Present | |


## ZONING STATEMENT

The Board of County Commissioners acts as a Quasi Judicial body when it hears requests for rezonings and Conditional Use Permits.  Applicants must provide competent substantial evidence establishing facts, or expert witness testimony showing that the request meets the Zoning Code and the Comprehensive Plan criteria.  Opponents must also testify as to facts, or provide expert testimony; whether they like, or dislike, a request is not competent evidence.  The Board must then decide whether the evidence demonstrates consistency and compatibility with the Comprehensive Plan and the existing rules in the Zoning Ordinance, property adjacent to the property to be rezoned, and the actual development of the surrounding area.  The Board cannot consider speculation, non-expert opinion testimony, or poll the audience by asking those in favor or opposed to stand up or raise their hands.  If a Commissioner has had communications regarding a rezoning or Conditional Use Permit request before the Board, the Commissioner must disclose the subject of the communication and the identity of the person, group, or entity, with whom the communication took place before the Board takes action on the request.  Likewise, if a Commissioner has made a site visit, inspections, or investigation, the Commissioner must disclose that fact before the Board takes action on the request.  Each applicant is allowed a total of 15 minutes to present their request unless the time is extended by a majority vote of the Board.  The applicant may reserve any portion of the 15 minutes of rebuttal.  Other speakers are allowed five minutes to speak.  Speakers may not pass their time to someone else in order to give that person more time to speak.


## INVOCATION

Pastor Curt Peterson, Peach Lutheran Church, Palm Bay, led the assembly in the invocation; he stated Peach Lutheran Church is trying to eliminate homelessness in Brevard County; and he invited the Board and any who would like to attend the event on Saturday, September 19 called Helping People and Giving Hope.


## PLEDGE OF ALLEGIANCE

September 3, 2015

Commissioner Andy Anderson led the assembly in the Pledge of Allegiance.

## ITEM I.A., RESOLUTIONS, RE:  RECOGNIZING EAGLE SCOUTS KALEB, MALEK, AND ZALEN BELIZAIRE

Commissioner Infantini stated she is hopeful all is well, but has not heard from the Belizaire's; and she asked to Board to proceed with business as usual because they may just be running a little late.

## ADMINISTRATIVE ORDER, RE:  ADD-ONS

Stockton Whitten, County Manager, advised the Board of an Administrative Order for Add-On Items distributed less than seven days before the scheduled meeting; they cannot be listed under Consent Agenda and the Items need to be moved to New Business; he noticed Louis Sanders in the audience; and he asked the Board to allow Mr. Sanders' Item II.A., Final Plat Approval, Re:  Sanders Acres Subdivision, to move forward as is so he does not have to sit through the entire meeting.

Commissioner Infantini stated she thinks Item II.A. Final Plat Approval, Re:  Sanders Acres Subdivision, is allowed to be under Consent Agenda; but the rest of the Items were submitted outside of the allowed time frame.

## ITEM II.A., FINAL PLAT APPROVAL, RE:  SANDERS ACRES SUBDIVISION - LOUIS E. SANDERS AND TERESA SANDERS

The Board granted final plat approval, subject to minor changes, if necessary, receipt of all documents required for recording, and developer responsible for obtaining all other necessary jurisdictional permits; and authorized the Chairman to sign the final plat for the project.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Trudie Infantini, Commissioner District 3 |
| **SECONDER:** | Andy Anderson, Commissioner District 5 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

## PUBLIC HEARINGS

Chairman Fisher called for a public hearing to consider Planning and Zoning recommendations of August 10, 2015.

## ITEM III.B.1., (15PZ00035) - BEAU J. AND CHRISTIE D. ANASTASIO, AND CECIL J. AND SANDRA L. ANASTASIO - REQUESTS A CHANGE OF CLASSIFICATION FROM GU TO AU ON 30.4 ACRES, LOCATED ON THE SOUTH SIDE OF CENTERLANE ROAD, APPROXIMATELY 2.1 MILES WEST OF BABCOCK ROAD (NO ASSIGNED ADDRESS.  IN THE PALM BAY AREA)

Cynthia Fox, Planning and Zoning Manager, stated this is a request to change the zoning classification from General Use (GU) to Agricultural Residential (AU) on 30.4 acres, located on the south side of Centerlane Road, approximately 2.1 miles west of Babcock Road.

September 3, 2015

There being no comments or objections, the Board approved Beau J. and Christie D. Anastasio, and Cecil J. and Sandra L. Anastasio, request of changing the zoning classification from GU to AU on 30.4 acres, located on the south side of Centerlane Road, approximately 2.1 miles west of Babcock Road.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Andy Anderson, Commissioner District 5 |
| **SECONDER:** | Trudie Infantini, Commissioner District 3 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM III.B.2., (15PZ00036) - HARRY MAY - (NANCY M. STEPHENSON) - REQUESTS A CHANGE OF CLASSIFICATION FROM BU-1 TO BU-2 ON 0.66 ACRE, LOCATED ON THE EASE SIDE OF N. U.S. HIGHWAY 1, APPROXIMATELY 0.11 MILE NORTH OF JAY JAY ROAD (1885 N. U.S. 1, TITUSVILLE)**

Cynthia Fox, Planning and Zoning Manager, stated this is a request to change classification from General Retail Commercial (BU-1) to Retail, Warehousing and Wholesale Commercial (BU-2) on 0.66 acre, located on the east side of N. U.S. Highway 1, approximately 0.11 mile north of Jay Jay Road; and is for the purpose of having a feed store on the property, as feed stores are not permitted in the existing BU-1 zoning classification; and will be for bulk sales of hay or livestock and need BU-2 zoning classification.

Chairman Fisher disclosed to the Board that he had conversations with the application about his property.

There being no further comments, the Board approved Harry May's request to change zoning classification from BU-1 to BU-2 on 0.66 acres, located on the east side of N. U.S. Highway 1, approximately 0.11 mile north of Jay Jay Road.

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Curt Smith, Commissioner District 4 |
| **SECONDER:** | Andy Anderson, Commissioner District 5 |
| **AYES:** | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM III.B.3., (15PZ00037) - CAMILLE E. KIECHLE - REQUESTS A CHANGE OF CLASSIFICATION FROM RR-1 TO AU ON 3.93 ACRES, LOCATED ON THE SOUTH SIDE OF SORREL DRIVE, APPROXIMATELY 400 FEET EAST OF ADAMSON ROAD (NO ASSIGNED ADDRESS.  IN THE COCOA AREA)**

Cynthia Fox, Planning and Zoning Manager, stated this request is to change zoning classification from Rural Residential (RR-1) to Agricultural Residential  (AU) for the purposes of having horses prior to having a principal residence on the property; the existing RR-1 permits limited agricultural pursuits and the keeping of horses, but it precludes the construction of a barn without a principal residence; and the rezoning to AU is necessary to allow them to do that.

September 3, 2015

There being no comments or objections, the Board approved Camille E. Kiechle's request of changing zoning classification from RR-1 to AU on 3.93 acres, located on the south side of Sorrel Drive, approximately 400 feet east of Adamson Road, in the Cocoa area.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Curt Smith, Commissioner District 4 |
| SECONDER: | Andy Anderson, Commissioner District 5 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM III.B.4., (15PZ00033) - GARY K. AND CAROL LYNN BARTLETT, TRUSTEES - (ANGELA ABBOTT) - REQUESTS A SMALL SCALE PLAN AMENDMENT (15S.08) TO CHANGE THE FUTURE LAND USE FROM RESIDENTIAL 1 TO NC, AND A CHANGE OF CLASSIFICATION FROM RU-1-9 TO BU-1-A, ON 0.27 ACRES, LOCATED ON THE NORTHEAST CORNER OF FAY BOULEVARD AND SEVERNDALE STREET (3930 FAY BOULEVARD, COCOA)**

Cynthia Fox, Planning and Zoning Manager, stated this Item needs to be tabled due to the lack of a quorum at the Port St. John recommendation meeting to the October 1, 2015, meeting.

There being no comments or objections, the Board tabled Gary K. and Carol Lynn Bartlett, Trustees request of a Small Scale Plan Amendment (15S.08) to change the Future Land Use from Residential 1 to Neighborhood Commercial (NC), and a change of classification from Single-family Residential (RU-1-9) to Restricted Neighborhood Retail Commercial (BU-1-A), on 0.27 acres, located on the northeast corner of Fay Boulevard and Severndale Street (3930 Fay Boulevard, Cocoa).

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM III.C. ORDINANCE, RE:   REVISING CHAPTER 62, ARTICLE X, DIVISION 5 (FLOODPLAIN PROTECTION) CODIFYING ORDINANCE NO. 10-26, COMPREHENSIVE PLAN AMENDMENTS (CONSERVATION ELEMENT)**

Chairman Fisher called for a public hearing to consider an ordinance revising Chapter 62, Article X, Division 5 (Floodplain Protection) codifying Ordinance No. 10-26, Comprehensive Plan Amendments (Conservation Element).

Darcie McGee, Special Projects Coordinator IV, stated this Item is the final codification of the Floodplain Comprehensive Plan Policy changes made in 2011; it is almost verbatim from the Comprehensive Plan Policy; and additional flexibility was added to some of the older managed basins in the County for Riverine Floodplain.

There being no comments or objections, the Board adopted Ordinance No. 15-17, amending Chapter 62, Article X, Division 5, Code of Ordinances of Brevard County, Florida, relating to

September 3, 2015

Floodplain Protection, specifically amending Sections 62-3721 Definitions; 62-3723, General Provisions; 62-3724, Development Regulations; and 62-3725, Prohibitions; providing for the interpretation of conflicting provisions; providing for severability; providing for area encompassed; providing for inclusion in Code; and providing an effective date.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Trudie Infantini, Commissioner District 3 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM I.A., RESOLUTIONS, RE:  RECOGNIZING EAGLE SCOUTS KALEB, MALEK, AND ZALEN BELIZAIRE CONTINUED**

Commissioner Infantini read aloud, and the Board adopted, Resolutions No. 15-151, 15-152, and 15-153, recognizing Kaleb, Malek, and Zalen Belizaire for achieving the rank of Eagle Scout.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Trudie Infantini, Commissioner District 3 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM IV.A., RESOLUTION, RE:  AUTHORIZING RELEASE AND TERMINATION OF A DEDICATION OF PUBLIC RECREATION USE ON SURPLUS LAND UNDER CONTRACT TO SELL TO DR HORTON, INC.**

Eden Bentley, Deputy County Attorney, stated in July 2015 the Board approved a Contract to sell a parcel of surplus land to DR Horton, Inc.; a titled defect has been discovered, specifically a dedication for Park purposes; and in order to convey clear title to DR Horton, Inc., the Board needs to authorize a release of that dedication in the deed.

The Board adopted Resolution No. 15-154, authorizing the release and termination of a dedication of public recreation use on surplus land under contract to sell to DR Horton, Inc.

| RESULT: | ADOPTED [UNANIMOUS] |
|---|---|
| MOVER: | Andy Anderson, Commissioner District 5 |
| SECONDER: | Curt Smith, Commissioner District 4 |
| AYES: | Fisher, Barfield, Infantini, Smith, Anderson |

**ITEM IV.B., REQUEST FOR PROPOSAL, RE:  LEASING OF BREVARD COUNTY GOLF COURSES**

*Communications Between
Plaintiffs/Supporters and County
Concerning Nontheistic Invocations*

# Exhibit 43

May 5, 2014 letter from plaintiff David Williamson to Brevard County Board of County Commissioners. (Exhibit 1 to First Amended Complaint and depositions taken by plaintiffs.)



9 May 2014

SENT VIA MAIL & EMAIL
D4.Commissioner@brevardcounty.us

The Honorable Mary Bolin Lewis
Chairwoman, Brevard County Board of County Commissioners
2725 Judge Fran Jamieson Way
Building C, Suite 214
Viera, FL 32940

Re: Invocation Request

Dear Chairwoman Lewis:

The Central Florida Freethought Community is a local educational organization of more than two hundred members, many of whom reside in Brevard County. We are a chapter of the Freedom From Religion Foundation and an affiliate of the American Humanist Association.

One of the organization's objectives is to educate the public on the need for equal treatment of non-believers and the value of Humanism; a world view which relies on reason and science as the best decision-making tools humankind has at its disposal. To this end, we have recently participated with members of the Interfaith Council of Central Florida in a discussion series, *Religion 201*, at the Holocaust Memorial and Resource Education Center in Maitland. Alongside clergy and religious leaders of many faiths our members represented Humanism.

In the recent Supreme Court decision, *Town of Greece v. Galloway,* the Court emphasized that a government's prayer practice must be "nondiscriminatory" and it must make reasonable efforts to include invocations from all members of the community, regardless of their faith. Note that Humanism is recognized as a religion under the First Amendment in numerous cases[1] and excluding a particular faith group from consideration is unconstitutional.[2]

In light of these facts, it is clear that local government meetings should include Humanist invocations as well as those from any other religious minorities. Therefore, **we respectfully request the opportunity to offer invocations at your meetings**.

With one-fifth of the U.S. population and one-third of all adults under the age of 30 identifying themselves as "*none*" (i.e. *none of the above*) according to the Pew Research Center in 2012, our request presents an opportunity for the Brevard County Commission to demonstrate that it seeks to celebrate diversity with its actions and does not discriminate on the basis of religion. Additionally, you will be providing your Humanist and other non-religious



**CENTRAL FLORIDA FREETHOUGHT COMMUNITY**

constituents with a voice and an equal opportunity to be included in the ceremonial portion of business meetings on a regular basis.

We request that you notify us in writing at your earliest convenience about the next opportunity for us to offer the invocation at an upcoming meeting. If you require, we can identify persons in Brevard County to offer this invocation, however, we have several members of our organization who are endorsed by The Humanist Society, a religious organization, or who are otherwise ordained and accorded the same rights and privileges granted by law to traditional clergy.

Please contact me if you have any questions.

Sincerely,

David Williamson
Founder and Chair

---

[1] See, e.g., *Gillette v. U.S.*, 401 U.S. 437, 439, 461-62 (1971) (entertaining free exercise claim "based on a humanist approach to religion"); *U.S. v. Seeger*, 380 U.S. 163, 176 (1965); *Torasco v. Watkins*, 367 U.S. 488, 495 n.11 (1961) ("Buddhism, Taoism, Ethical Culture, [and] Secular Humanism" are "religions"); *Newdow v. United States Cong.*, 313 F.3d 500, 504 n.2 (9th Cir. 2002) ("recognized religions exist that do not teach a belief in God, e.g., secular humanism."); *U.S. v. Ward*, 989 F.2d 1015, 1017-18 (9th Cir. 1993) (many "'believe in a purely personal God, some in a supernatural deity; others think of religion as a way of life envisioning as its ultimate goal the day when all men can live together in perfect understanding and peace.'") (citations omitted); *Grove v. Mead School Dist.*, 753 F.2d 1528, 1534 (9th Cir. 1985); *Smith v. Board of Sch. Comm'rs*, 827 F.2d 684, 689 (11th Cir. 1987); *Chess v. Widmar*, 635 F.2d 1310, 1318 n.10 (8th Cir. 1980) ("Secular Humanism" is a "religion"); *In re Weitzman*, 426 F.2d 439, 457 & n.5 (8th Cir. 1970); *U.S. v. Meyers*, 906 F. Supp. 1494, 1499-1500 (D. Wyo. 1995); *Crockett v. Sorenson*, 568 F. Supp. 1422, 1425 (W.D. Va. 1983); *ACLU v. Eckels*, 589 F. Supp. 222, 227 (S.D. Tex. 1984); *In re "E"*, 59 N.J. 36, 55 n.4 (N.J. 1971); *Welker v. Welker*, 24 Wis. 2d 570, 575-76 (Wis. 1964); *Fellowship of Humanity v. County of Alameda*, 153 Cal. App. 2d 673 (1st Dist. 1957).

[2] See, *Pelphrey v. Cobb County*, 547 F.3d 1263, 1276 (11th Cir. 2008).

# Exhibit 44

June 22, 2014 letter from plaintiff Williamson to Brevard County Board of County Commissioners. (Exhibit 2 to First Amended Complaint and depositions taken by plaintiffs.)



July 22, 2014

SENT VIA MAIL & EMAIL
D4.Commissioner@brevardcounty.us

The Honorable Mary Bolin Lewis
Chairwoman, Brevard County Board of County Commissioners
2725 Judge Fran Jamieson Way
Building C, Suite 214
Viera, FL 32940

Re:     Discrimination against a religious minority

Dear Chairwoman Lewis:

You may recall our correspondence via email and certified mail requesting permission to offer an invocation at an upcoming Brevard County Board of County Commissioners meeting. In our letter, we requested that you notify us in writing about the next opportunity for us to offer the invocation at an upcoming meeting. The original letter and email were sent on May 9, 2014, yet over 60 days have passed and we have received no response.

The Central Florida Freethought Community is a local educational organization of more than two hundred members, many of whom reside in Brevard County. We are a chapter of the Freedom From Religion Foundation and an affiliate of the American Humanist Association.

If the Brevard County Board of County Commissioners continues to open its meetings with invocations by invited guests and clergy, it must not categorically exclude certain faiths from inclusion in the practice. In this case, the Board is excluding members of our organization, that of a minority religion, from the same opportunity as members of majority religions.

In the recent Supreme Court decision, *Town of Greece v. Galloway*, 134 S. Ct. 1811, 1823-25 (2014), the Court emphasized that the government must maintain "a policy of nondiscrimination" and it must make reasonable efforts to include invocations from all members of the community, regardless of their faith. In fact, the completely open and non-discriminatory selection process was crucial to the prayer practice being upheld: "The town at no point excluded or denied an opportunity to a would-be prayer giver. Its leaders maintained that a minister or layperson of any persuasion, including an atheist, could give the invocation. *Id.* at 1816 & 1824. Indeed, "any member of the public [was] welcome in turn to offer an

Plaintiffs' Deposition Exhibit #2 Page 1

Exhibit 2 - Page 1

A663



invocation." *Id.* at 1826. The Court reasoned: "Congress . . . acknowledges our growing diversity not by proscribing sectarian content *but by welcoming ministers of many creeds.*" *Id.* at 1820-21 (emphasis added). Therefore, excluding a particular faith group such as Humanists and Atheists from the invocation practice is unconstitutional. *See Pelphrey v. Cobb County*, 547 F.3d 1263, 1277-79, 1281 (11th Cir. 2008) (holding county's invocation selection process unconstitutional because "certain faiths were categorically excluded" and rejecting argument that "the selection process is immaterial when the content of the prayer is constitutional[.]"). *See also Atheists of Fla., Inc. v. City of Lakeland*, 713 F.3d 577, 592 (11th Cir. 2013); *Simpson v. Chesterfield County Bd. of Supervisors*, 404 F.3d 276, 284-85 (4th Cir. 2005) (selection of invocation-givers must "not 'stem from an impermissible motive'"); *Snyder v. Murray City Corp.*, 159 F.3d 1227, 1234 (10th Cir. 1998) (same); *Jones v. Hamilton County*, 891 F. Supp. 2d 870, 886 (E.D. Tenn. 2012) ("Even when operating under a facially neutral policy, a legislature may not select invocational speakers based on impermissible motives or sectarian preferences."); *Cf. Galloway*, 134 S. Ct. at 1824 (selection process upheld because it did not reflect "an aversion or bias on the part of town leaders against minority faiths").

Justice Alito's concurrence in *Galloway* further supports the majority's ruling, noting: "the mistake [of excluding the Rochester area] was at worst careless, and it was not done with a ***discriminatory intent***. (I would view this case ***very differently*** if the omission of these synagogues were intentional.)" 134 S. Ct. at 1830-31 (emphasis added). The Ninth Circuit employed the same reasoning in upholding a practice identical to Greece: "Here, as in *Joyner*, 'there is no evidence to suggest that the [City] attempted to . . . ensure that only Christian prayer would be offered.'" *Rubin v. City of Lancaster*, 710 F.3d 1087, 1099 n.12 (9th Cir. 2013) (citations omitted).

This Board's exclusion of our members from the invocation selection process seems premised solely on religion since every invocation offered at the Board meetings in the previous twelve months has been a prayer performed by Christian clergy.

Unlike the governments in *Marsh v. Chambers*, 463 U.S. 783 (1983) and *Galloway*, Brevard County has not "made reasonable efforts" to be inclusive. *Galloway*, 134 S. Ct. at 1824. In *Galloway*, the Court could not fault the town for the fact that the majority of the prayers were Christian because this was a product of *availability*. In Greece, "all the houses of worship listed in the local Community Guide were Christian churches" and there were "no synagogues[.]" *Id.* at 1828 (Alito, J., concurring). In contrast, non-Christian invocation-givers are available in the county here, yet the county refuses to include these members in the selection process.

Plaintiffs' Deposition Exhibit #2 Page 2

Exhibit 2 - Page 2

A664



CENTRAL FLORIDA
FREETHOUGHT
COMMUNITY

As such, this letter demands that Brevard County permit a member of our organization to deliver an invocation and to ensure its selection procedures for invocations comport with the Constitutions of Florida and of the United States. Given the serious nature of the County's actions, we request a response by July 31, 2014.

Sincerely,

David Williamson
Founder and Chair

Plaintiffs' Deposition Exhibit #2 Page 3

Exhibit 2 - Page 3
A665

# Exhibit 45

August 11, 2014 email from County Attorney Scott Knox to Commissioner Mary
Bolin Lewis and attachments, produced by Defendant in discovery. (Plaintiffs'
deposition exhibit 16.)

| | |
|---|---|
| **From:** | Tice, Molly |
| **To:** | Woodard, Patrick |
| **Subject:** | FW: D4 atheist request |
| **Date:** | Monday, August 11, 2014 3:57:01 PM |
| **Attachments:** | D4.msg |
| | Pre meeting prayer response.docx |

**From:** Knox, Scott L
**Sent:** Monday, August 11, 2014 3:52 PM
**To:** Lewis, Mary Bolin
**Cc:** Tice, Molly
**Subject:** FW: D4 atheist request

Mary:

In response to the attached request from the Central Florida Free Thought Community, I would propose that, at the next regular meeting, you seek Board approval to sign the attached response on County Commission letterhead.

Scott L. Knox, Brevard County Attorney

2725 Judge Fran Jamieson Way

Melbourne, FL 32940

(321) 633-2090

**The State of Florida has a broad public records law and a request made under the authority of that Public Records law may require the disclosure and copying of any email sent to this office unless exempt, privileged or confidential under state law .**

**From:** Knox, Scott L
**Sent:** Friday, August 08, 2014 11:49 AM
**To:** Lewis, Mary Bolin
**Cc:** Tice, Molly
**Subject:** FW: D4 atheist request

Mary: I would hold off on a response until I have a chance to help you out. As chair, you will be responsible for speaking in behalf of the entire County Commission. A court might not look kindly on passing the response along to another commissioner who does not represent the entire Commission.

Scott L. Knox, Brevard County Attorney

2725 Judge Fran Jamieson Way

Melbourne, FL 32940

(321) 633-2090

**The State of Florida has a broad public records law and a request made under the authority of that Public Records law may require the disclosure and copying of any email sent to this office unless exempt, privileged or confidential under state law .**

Plaintiffs' Deposition Exhibit #16 Page 1

1.a.i -- 001834

Thank you for your request.

The Invocation portion of the agenda is an opening prayer presented by members of our faith community. The prayer is delivered during the ceremonial portion of the County's meeting and typically invokes guidance for the County Commission from the highest spiritual authority, a higher authority which a substantial body of Brevard constituents believe to exist.  The invocation is also meant to lend gravity to the occasion, to reflect values long part of the County's heritage and to acknowledge the place religion holds in the lives of many private citizens in Brevard County.

Your website leads us to understand your organization and its members do not share those beliefs or values which, of course, is your choice under the laws of the United States.  However, this Commission chooses to stand by the tradition of opening its meetings in a manner acknowledging the beliefs of a large segment of its constituents.  Your claims to the contrary notwithstanding, over the years this Commission has heard invocations from a variety of religious faiths in our community, including Catholic, Protestant, Jewish, Muslim, Mormon and Adventist.  "Even those who disagree as to religious doctrine may find common ground in the desire to show respect for the divine in all aspects of their lives and being." (Justice Anthony Kennedy, writing for the Court in *Galloway v. Town of Greece*)

This Commission respectfully takes issue with the claim that members of your organization are being excluded from presenting their viewpoint at County Commission meetings.  You or your Brevard members have the opportunity to speak for three minutes on any subject involving County business during the Public Comment portion of our meeting.  County business clearly includes the subject of pre-meeting prayers at County Commission meetings. As a practical matter, there are no restrictions on what is said during those three minutes.  During Public Comment presentations, this Board has politely listened to Bible readings; political points of view of all varieties; and some of our citizens' sharpest critiques and criticisms of County staff and the County Commission, among other things.

During that segment, members of your organization are free to speak their views and beliefs, or even a closing supplication.  You or your members are also free to invoke whatever authorities they choose, including but not limited to, those you have quoted on your website.  To paraphrase Justice Kennedy: the Establishment Clause in the United States Constitution "requires an inquiry into the opportunity as a whole" and a violation of the Establishment Clause is not "made out any time a person experiences a sense of affront from the expression of contrary religious views in a legislative forum, especially where any member of the public is permitted to offer views reflecting his or her own convictions.

Sincerely,


_____

Mary Bolin Lewis, Chair
(as approved by the Board on _____, 2014)

Plaintiffs' Deposition Exhibit #16 Page 2

**From:**        Byrum, Diane
**Sent:**        Thursday, August 07, 2014 11:48 AM
**To:**          sknox4@cfl.rr.com
**Subject:**     D4
**Attachments:** Central FL Freethought Community.pdf

Please advise. Thank you.

---

**Under Florida Law, email addresses are Public Records. If you do not want your e-mail address released in response to public record requests, do not send electronic mail to this entity. Instead, contact this office by phone or in writing.**

Plaintiffs' Deposition Exhibit #16 Page 3

David Wiliamson
Central Florida Freethought Community
PO Box 621123
Oviedo, FL 32762

Dear Mr. Williamson:

Thank you for your interest in giving the invocation at a Brevard County Board of
County Commissioners Meeting. Each Commissioner is assigned specific meetings at the
beginning of the year in which they are responsible for providing someone from their
district to give the invocation. Unfortunately the meeting invocations in which District 4
is responsible for are already filled for the remaining of the year. Nevertheless you are
welcome to check with any of the other Commissioners to see if they have any available
meeting invocations to schedule.

Sincerely,

Mary Bolin Lewis
Chairman
Board of County Commission
District 4

Plaintiffs' Deposition Exhibit #16 Page 4



**CENTRAL FLORIDA FREETHOUGHT COMMUNITY**

July 22, 2014

SENT VIA MAIL & EMAIL
D4.Commissioner@brevardcounty.us

The Honorable Mary Bolin Lewis
Chairwoman, Brevard County Board of County Commissioners
2725 Judge Fran Jamieson Way
Building C, Suite 214
Viera, FL 32940

Re:     Discrimination against a religious minority

Dear Chairwoman Lewis:

You may recall our correspondence via email and certified mail requesting permission to offer an invocation at an upcoming Brevard County Board of County Commissioners meeting. In our letter, we requested that you notify us in writing about the next opportunity for us to offer the invocation at an upcoming meeting. The original letter and email were sent on May 9, 2014, yet over 60 days have passed and we have received no response.

The Central Florida Freethought Community is a local educational organization of more than two hundred members, many of whom reside in Brevard County. We are a chapter of the Freedom From Religion Foundation and an affiliate of the American Humanist Association.

If the Brevard County Board of County Commissioners continues to open its meetings with invocations by invited guests and clergy, it must not categorically exclude certain faiths from inclusion in the practice. In this case, the Board is excluding members of our organization, that of a minority religion, from the same opportunity as members of majority religions.

In the recent Supreme Court decision, *Town of Greece v. Galloway*, 134 S. Ct. 1811, 1823-25 (2014), the Court emphasized that the government must maintain "a policy of nondiscrimination" and it must make reasonable efforts to include invocations from all members of the community, regardless of their faith. In fact, the completely open and non-discriminatory selection process was crucial to the prayer practice being upheld: "The town at no point excluded or denied an opportunity to a would-be prayer giver. Its leaders maintained that a minister or layperson of any persuasion, including an atheist, could give the invocation. *Id.* at 1816 & 1824. Indeed, "any member of the public [was] welcome in turn to offer an

Plaintiffs' Deposition Exhibit #16 Page 5



**CENTRAL FLORIDA FREETHOUGHT COMMUNITY**

invocation." *Id.* at 1826. The Court reasoned: "Congress . . . acknowledges our growing diversity not by proscribing sectarian content *but by welcoming ministers of many creeds*." *Id.* at 1820-21 (emphasis added). Therefore, excluding a particular faith group such as Humanists and Atheists from the invocation practice is unconstitutional. *See Pelphrey v. Cobb County*, 547 F.3d 1263, 1277-79, 1281 (11th Cir. 2008) (holding county's invocation selection process unconstitutional because "certain faiths were categorically excluded" and rejecting argument that "the selection process is immaterial when the content of the prayer is constitutional[.]"). *See also Atheists of Fla., Inc. v. City of Lakeland*, 713 F.3d 577, 592 (11th Cir. 2013); *Simpson v. Chesterfield County Bd. of Supervisors*, 404 F.3d 276, 284-85 (4th Cir. 2005) (selection of invocation-givers must "not 'stem from an impermissible motive'"); *Snyder v. Murray City Corp.*, 159 F.3d 1227, 1234 (10th Cir. 1998) (same); *Jones v. Hamilton County*, 891 F. Supp. 2d 870, 886 (E.D. Tenn. 2012) ("Even when operating under a facially neutral policy, a legislature may not select invocational speakers based on impermissible motives or sectarian preferences."); *Cf. Galloway*, 134 S. Ct. at 1824 (selection process upheld because it did not reflect "an aversion or bias on the part of town leaders against minority faiths").

Justice Alito's concurrence in *Galloway* further supports the majority's ruling, noting: "the mistake [of excluding the Rochester area] was at worst careless, and it was not done with a *discriminatory intent*. (I would view this case *very differently* if the omission of these synagogues were intentional.)" 134 S. Ct. at 1830-31 (emphasis added). The Ninth Circuit employed the same reasoning in upholding a practice identical to Greece: "Here, as in *Joyner*, 'there is no evidence to suggest that the [City] attempted to . . . ensure that only Christian prayer would be offered.'" *Rubin v. City of Lancaster*, 710 F.3d 1087, 1099 n.12 (9th Cir. 2013) (citations omitted).

This Board's exclusion of our members from the invocation selection process seems premised solely on religion since every invocation offered at the Board meetings in the previous twelve months has been a prayer performed by Christian clergy.

Unlike the governments in *Marsh v. Chambers*, 463 U.S. 783 (1983) and *Galloway*, Brevard County has not "made reasonable efforts" to be inclusive. *Galloway*, 134 S. Ct. at 1824. In *Galloway*, the Court could not fault the town for the fact that the majority of the prayers were Christian because this was a product of *availability*. In Greece, "all the houses of worship listed in the local Community Guide were Christian churches" and there were "no synagogues[.]" *Id.* at 1828 (Alito, J., concurring). In contrast, non-Christian invocation-givers are available in the county here, yet the county refuses to include these members in the selection process.

PO Box 621123, Oviedo, FL 32762 Tel: 321/804-3373 Email: david@cflfreethought.org

Plaintiffs' Deposition Exhibit #16 Page 6



**CENTRAL FLORIDA FREETHOUGHT COMMUNITY**

As such, this letter demands that Brevard County permit a member of our organization to deliver an invocation and to ensure its selection procedures for invocations comport with the Constitutions of Florida and of the United States. Given the serious nature of the County's actions, we request a response by July 31, 2014.

Sincerely,

David Williamson
Founder and Chair

PO Box 621123, Oviedo, FL 32762 Tel: 321/804-3373 Email: david@cflfreethought.org

Plaintiffs' Deposition Exhibit #16 Page 7



**CENTRAL FLORIDA
FREETHOUGHT
COMMUNITY**



RECEIVED

MAY 1 2 2014

DISTRICT 4
COMMISSION OFFICE

9 May 2014

SENT VIA MAIL & EMAIL
D4.Commissioner@brevardcounty.us

The Honorable Mary Bolin Lewis
Chairwoman, Brevard County Board of County Commissioners
2725 Judge Fran Jamieson Way
Building C, Suite 214
Viera, FL 32940

Re: Invocation Request

Dear Chairwoman Lewis:

The Central Florida Freethought Community is a local educational organization of more than two hundred members, many of whom reside in Brevard County. We are a chapter of the Freedom From Religion Foundation and an affiliate of the American Humanist Association.

One of the organization's objectives is to educate the public on the need for equal treatment of non-believers and the value of Humanism; a world view which relies on reason and science as the best decision-making tools humankind has at its disposal. To this end, we have recently participated with members of the Interfaith Council of Central Florida in a discussion series, *Religion 201*, at the Holocaust Memorial and Resource Education Center in Maitland. Alongside clergy and religious leaders of many faiths our members represented Humanism.

In the recent Supreme Court decision, *Town of Greece v. Galloway*, the Court emphasized that a government's prayer practice must be "nondiscriminatory" and it must make reasonable efforts to include invocations from all members of the community, regardless of their faith. Note that Humanism is recognized as a religion under the First Amendment in numerous cases[1] and excluding a particular faith group from consideration is unconstitutional.[2]

In light of these facts, it is clear that local government meetings should include Humanist invocations as well as those from any other religious minorities. Therefore, **we respectfully request the opportunity to offer invocations at your meetings.**

With one-fifth of the U.S. population and one-third of all adults under the age of 30 identifying themselves as "*none*" (i.e. *none of the above*) according to the Pew Research Center in 2012, our request presents an opportunity for the Brevard County Commission to demonstrate that it seeks to celebrate diversity with its actions and does not discriminate on the basis of religion. Additionally, you will be providing your Humanist and other non-religious

PO Box 621123, Oviedo, FL 32732    Tel: 321/804-3373    Email: info@cflfreethought.org

Plaintiffs' Deposition Exhibit #16 Page 8



**CENTRAL FLORIDA
FREETHOUGHT
COMMUNITY**

constituents with a voice and an equal opportunity to be included in the ceremonial portion of business meetings on a regular basis.

We request that you notify us in writing at your earliest convenience about the next opportunity for us to offer the invocation at an upcoming meeting. If you require, we can identify persons in Brevard County to offer this invocation, however, we have several members of our organization who are endorsed by The Humanist Society, a religious organization, or who are otherwise ordained and accorded the same rights and privileges granted by law to traditional clergy.

Please contact me if you have any questions.

Sincerely,

David Williamson
Founder and Chair

---

¹ See, e.g., *Gillette v. U.S.*, 401 U.S. 437, 439, 461-62 (1971) (entertaining free exercise claim "based on a humanist approach to religion"); *U.S. v. Seeger*, 380 U.S. 163, 176 (1965); *Torasco v. Watkins*, 367 U.S. 488, 495 n.11 (1961) ("Buddhism, Taoism, Ethical Culture, [and] Secular Humanism" are "religions"); *Newdow v. United States Cong.*, 313 F.3d 500, 504 n.2 (9th Cir. 2002) ("recognized religions exist that do not teach a belief in God, e.g., secular humanism."); *U.S. v. Ward*, 989 F.2d 1015, 1017-18 (9th Cir. 1993) (many "'believe in a purely personal God, some in a supernatural deity; others think of religion as a way of life envisioning as its ultimate goal the day when all men can live together in perfect understanding and peace.'") (citations omitted); *Grove v. Mead School Dist.*, 753 F.2d 1528, 1534 (9th Cir. 1985); *Smith v. Board of Sch. Comm'rs*, 827 F.2d 684, 689 (11th Cir. 1987); *Chess v. Widmar*, 635 F.2d 1310, 1318 n.10 (8th Cir. 1980) ("Secular Humanism" is a "religion"); *In re Weitzman*, 426 F.2d 439, 457 & n.5 (8th Cir. 1970); *U.S. v. Meyers*, 906 F. Supp. 1494, 1499-1500 (D. Wyo. 1995); *Crockett v. Sorenson*, 568 F. Supp. 1422, 1425 (W.D. Va. 1983); *ACLU v. Eckels*, 589 F. Supp. 222, 227 (S.D. Tex. 1984); *In re "E"*, 59 N.J. 36, 55 n.4 (N.J. 1971); *Welker v. Welker*, 24 Wis. 2d 570, 575-76 (Wis. 1964); *Fellowship of Humanity v. County of Alameda*, 153 Cal. App. 2d 673 (1st Dist. 1957).

² See, *Pelphrey v. Cobb County*, 547 F.3d 1263, 1276 (11th Cir. 2008).

Plaintiffs' Deposition Exhibit #16 Page 9

**Tice, Molly**

| | |
|---|---|
| **From:** | David Williamson <david@cflfreethought.org> |
| **Sent:** | Friday, May 09, 2014 7:00 PM |
| **To:** | Commissioner, D4 |
| **Subject:** | Invocation Request - Brevard County Commission |
| **Attachments:** | CFFC Invocation Letter to Brevard County.pdf |

SENT VIA MAIL & EMAIL

Dear Chairwoman Lewis:

The Central Florida Freethought Community is a local educational organization of more than two hundred members, many of whom reside in Brevard County. We are a chapter of the Freedom From Religion Foundation and an affiliate of the American Humanist Association.

One of the organization's objectives is to educate the public on the need for equal treatment of non-believers and the value of Humanism; a world view which relies on reason and science as the best decision-making tools humankind has at its disposal. To this end, we have recently participated with members of the Interfaith Council of Central Florida in a discussion series, *Religion 201*, at the Holocaust Memorial and Resource Education Center in Maitland. Alongside clergy and religious leaders of many faiths our members represented Humanism.

In the recent Supreme Court decision, *Town of Greece v. Galloway*, the Court emphasized that a government's prayer practice must be "nondiscriminatory" and it must make reasonable efforts to include invocations from all members of the community, regardless of their faith. Note that Humanism is recognized as a religion under the First Amendment in numerous cases[1] and excluding a particular faith group from consideration is unconstitutional.[2]

In light of these facts, it is clear that local government meetings should include Humanist invocations as well as those from any other religious minorities. Therefore, **we respectfully request the opportunity to offer invocations at your meetings**.

With one-fifth of the U.S. population and one-third of all adults under the age of 30 identifying themselves as "*none*" (i.e. *none of the above*) according to the Pew Research Center in 2012, our request presents an opportunity for the Brevard County Commission to demonstrate that it seeks to celebrate diversity with its actions and does not discriminate on the basis of religion. Additionally, you will be providing your Humanist and other non-religious constituents with a voice and an equal opportunity to be included in the ceremonial portion of business meetings on a regular basis.

We request that you notify us in writing at your earliest convenience about the next opportunity for us to offer the invocation at an upcoming meeting. If you require, we can identify persons in Brevard County to offer this invocation, however, we have several members of our organization who are endorsed by The Humanist Society, a religious organization, or who are otherwise ordained and accorded the same rights and privileges granted by law to traditional clergy.

Please contact me if you have any questions.

Sincerely,

David Williamson



**CENTRAL FLORIDA FREETHOUGHT COMMUNITY**

PO Box 621123
Oviedo, FL 32762

---

[1] See, e.g., *Gillette v. U.S.*, 401 U.S. 437, 439, 461-62 (1971) (entertaining free exercise claim "based on a humanist approach to religion"); *U.S. v. Seeger*, 380 U.S. 163, 176 (1965); *Torasco v. Watkins*, 367 U.S. 488, 495 n.11 (1961) ("Buddhism, Taoism, Ethical Culture, [and] Secular Humanism" are "religions"); *Newdow v. United States Cong.*, 313 F.3d 500, 504 n.2 (9th Cir. 2002) ("recognized religions exist that do not teach a belief in God, e.g., secular humanism."); *U.S. v. Ward*, 989 F.2d 1015, 1017-18 (9th Cir. 1993) (many "'believe in a purely personal God, some in a supernatural deity; others think of religion as a way of life envisioning as its ultimate goal the day when all men can live together in perfect understanding and peace.'") (citations omitted); *Grove v. Mead School Dist.*, 753 F.2d 1528, 1534 (9th Cir. 1985); *Smith v. Board of Sch. Comm'rs*, 827 F.2d 684, 689 (11th Cir. 1987); *Chess v. Widmar*, 635 F.2d 1310, 1318 n.10 (8th Cir. 1980) ("Secular Humanism" is a "religion"); *In re Weitzman*, 426 F.2d 439, 457 & n.5 (8th Cir. 1970); *U.S. v. Meyers*, 906 F. Supp. 1494, 1499-1500 (D. Wyo. 1995); *Crockett v. Sorenson*, 568 F. Supp. 1422, 1425 (W.D. Va. 1983); *ACLU v. Eckels*, 589 F. Supp. 222, 227 (S.D. Tex. 1984); *In re "E"*, 59 N.J. 36, 55 n.4 (N.J. 1971); *Welker v. Welker*, 24 Wis. 2d 570, 575-76 (Wis. 1964); *Fellowship of Humanity v. County of Alameda*, 153 Cal. App. 2d 673 (1st Dist. 1957).

[2] See, *Pelphrey v. Cobb County*, 547 F.3d 1263, 1276 (11th Cir. 2008).

# Exhibit 46

August 19, 2014 letter from Brevard County Board of County Commissioners to plaintiff Williamson. (Exhibit 3 to First Amended Complaint and depositions taken by plaintiffs.)



| | | ADD ON |
|---|---|---|
| | | AGENDA |

| Meeting Date | | Section | New Business |
|---|---|---|---|
| **August 19, 2014** | | Item No. | *V.F.1* |

**AGENDA REPORT**
*BREVARD COUNTY BOARD OF COUNTY COMMISSIONERS*

| SUBJECT: | Approval of the Board of County Commissioners for the Chair to send a letter of response to David Williamson, Central Florida Freethought Community. |
|---|---|
| DEPT/OFFICE: | District 4 Commission Office |

Requested Action:

It is requested that the Board of County Commissioners grant permission for the Chair to sign and send on behalf board the attached letter of response to David Williamson, Central Florida Freethought Community.

Summary Explanation & Background:

The District 4 Commission Office received a letter (attached) requesting permission to offer an invocation at an upcoming Brevard County Board of County Commissioners meeting. Because of the referenced to recent Supreme Court decisions, our office sought advice from the County Attorney on this issue.

Contact: Pat Woodard
Phone/e-mail: 633-2044 / Patrick.woodard@brevardcounty.us

Clerk to the Board Instructions:

Exhibits Attached: Letter from Mr. Williamson; Letter to Mr. Williamson

| Contract /Agreement (If attached): Reviewed by County Attorney | Yes ☐ | No ☐ | PR ☐ |
|---|---|---|---|
| County Manager | Assistant County Manager, Mel Scott | Department Director / Extension | |
| Stockton Whitten | Assistant County Manager, Venetta Valdengo | | |

BCC-149 (Rev.4-30-14) / Electronic Form

Plaintiffs' Deposition Exhibit #3 Page 1

Exhibit 3 - Page 1

A679



**BREVARD** *County*

BOARD OF COUNTY COMMISSIONERS

**FLORIDA'S SPACE COAST**



COMMISSIONER DISTRICT IV,  2725 Judge Fran Jamieson Way, Melbourne, FL 32940-6698

Telephone:  (321) 633-2044
Fax:  (321) 633-2121

David Wiliamson
Central Florida Freethought Community
PO Box 621123
Oviedo, FL 32762

Dear Mr. Williamson:

Thank you for your request.

The Invocation portion of the agenda is an opening prayer presented by members of our faith community.  The prayer is delivered during the ceremonial portion of the County's meeting and typically invokes guidance for the County Commission from the highest spiritual authority, a higher authority which a substantial body of Brevard constituents believe to exist.   The invocation is also meant to lend gravity to the occasion, to reflect values long part of the County's heritage and to acknowledge the place religion holds in the lives of many private citizens in Brevard County.

Your website leads us to understand your organization and its members do not share those beliefs or values which, of course, is your choice under the laws of the United States.  However, this Commission chooses to stand by the tradition of opening its meetings in a manner acknowledging the beliefs of a large segment of its constituents.  Your claims to the contrary notwithstanding, over the years this Commission has heard invocations from a variety of religious faiths in our community, including Catholic, Protestant, Jewish, Muslim, Mormon and Adventist.  "Even those who disagree as to religious doctrine may find common ground in the desire to show respect for the divine in all aspects of their lives and being."  (Justice Anthony Kennedy, writing for the Court in *Galloway v. Town of Greece*)

This Commission respectfully takes issue with the claim that members of your organization are being excluded from presenting their viewpoint at County Commission meetings.  You or your Brevard members have the opportunity to speak for three minutes on any subject involving County business during the Public Comment portion of our meeting.  County business clearly includes the subject of pre-meeting prayers at County Commission meetings. As a practical matter, there are no restrictions on what is said during those three minutes.  During Public Comment presentations, this Board has politely listened to Bible readings; political points of view of all varieties; and some of our citizens' sharpest critiques and criticisms of County staff and the County Commission, among other things.

Plaintiffs' Deposition Exhibit #3 Page 2   *PRINTED ON RECYCLED PAPER*

Exhibit 3 - Page 2

A680

During that segment, members of your organization are free to speak their views and beliefs, or even a closing supplication.  You or your members are also free to invoke whatever authorities they choose, including but not limited to, those you have quoted on your website.  To paraphrase Justice Kennedy: the Establishment Clause in the United States Constitution "requires an inquiry into the opportunity as a whole" and a violation of the Establishment Clause is not "made out any time a person experiences a sense of affront from the expression of contrary religious views in a legislative forum, especially where any member of the public is permitted to offer views reflecting his or her own convictions.

Sincerely,

Mary Bolin Lewis, Chair
(as approved by the Board on ___August 19___, 2014)

Plaintiffs' Deposition Exhibit #3 Page 3

Exhibit 3 - Page 3

A681

# Exhibit 47

August/September 2014 email correspondence between plaintiff Ronald Gordon and Commissioner Trudie Infantini. (Exhibit 4 to First Amended Complaint and depositions taken by plaintiffs.)

| | |
|---|---|
| **From:** | ronald gordon |
| **To:** | Commissioner, D3 |
| **Subject:** | Re: Yes to Freethought Invocation |
| **Date:** | Wednesday, August 27, 2014 8:21:30 PM |

Commissioner Infantini,

I sent you the below email last week, but I have not received a response.  I am an Atheist living in Brevard County and I would like to give an invocation.

Respectfully,

Ron

Ronald Gordon
2572 Diane Ave SE
Palm Bay, FL 32909

On Wed, Aug 20, 2014 at 6:48 PM, ronald gordon <run.gordon@gmail.com> wrote:
> Commissioner Infantini,
>
> I am an Atheist in Brevard County and I am willing to give an invocation.
>
> Respectfully,
>
> Ron
>
> Ronald Gordon
> 2572 Diane Ave SE
> Palm Bay, FL 32909
>
> On Tue, Aug 19, 2014 at 4:11 PM, Commissioner, D3 <d3.commissioner@brevardcounty.us> wrote:
>> Ron,
>>
>> Would you like to give the invocation?
>>
>>
>> **Trudie Infantini, CPA**
>>
>> **District 3 County Commissioner**
>>
>> **1311 E. New Haven Avenue**
>>
>> **Melbourne, FL 32901**

Plaintiffs' Deposition Exhibit #4 Page 1

Exhibit 4 - Page 1

A683

**321-952-6300**

**From:** run.gordon@gmail.com [mailto:run.gordon@gmail.com]
**Sent:** Monday, August 18, 2014 9:00 PM
**To:** Commissioner, D3
**Subject:** Yes to Freethought Invocation

Commissioner Infantini, please allow a member of the Freethought Community to deliver an Invocation.

Respectfully,

Ron

Ronald Gordon BSN, RN

CPT / FLARNG / Retired

2572 Diane Ave SE

Palm Bay, FL 32909

321-537-0298

Sent from Windows Mail

**Under Florida Law, email addresses are Public Records. If you do not want your e-mail address released in response to public record requests, do not send electronic mail to this entity. Instead, contact this office by phone or in writing.**

Plaintiffs' Deposition Exhibit #4 Page 2

Exhibit 4 - Page 2
A684

From:   **ronald gordon**  run gordon@gma   com
Subject:  Re: Yes to Freethought Invocat on
Date:   September 12  2014 at 2:40 PM
To:   Comm ss oner  D3  d3 comm ss oner@brevardcounty us

Comm ss oner Infant n

On August 19 you asked  f I wou d  ke to g ve an  nvocat on at a Brevard County Comm ss on meet ng   I responded on August 20 and aga n on August 27 that I am an Athe st  v ng n Brevard County and I wou d  ke to g ve an  nvocat on

I tru y apprec ate the opportu ty and wou d apprec ate a response to my acceptance of your offer

Respectfu y

Ron

Rona d Gordon
2572 D ane Ave SE
Pa m Bay  FL 32909

On Tue  Aug 19  2014 at 4:11 PM  Comm ss oner  D3 <d3 comm ss oner@brevardcounty us> wrote:

> Ron,
>
> Would you like to give the invocation?
>
> **Trudie Infantini, CPA**
>
> **District 3 County Commissioner**
>
> **1311 E. New Haven Avenue**
>
> **Melbourne, FL 32901**
>
> **321-952-6300**
>
> ---
>
> **From:** run.gordon@gmail.com [mailto:run.gordon@gmail.com]
> **Sent:** Monday, August 18, 2014 9:00 PM
> **To:** Commissioner, D3
> **Subject:** Yes to Freethought Invocation
>
> Commissioner Infantini, please allow a member of the Freethought Community to deliver an Invocation.
>
> Respectfully,
>
> Ron
>
> Ronald Gordon BSN, RN
>
> CPT / FLARNG / Retired
>
> 2572 Diane Ave SE
>
> Palm Bay  FL 32909

Plaintiffs' Deposition Exhibit #4 Page 3

Exhibit 4 - Page 3

A685

# Exhibit 48

August 28, 2014 letter from Anti-Defamation League to Brevard County Board of County Commissioners. (Exhibit 5 to First Amended Complaint and depositions taken by plaintiffs.)



**Florida**

**RECEIVED**

AUG 2 9 2014

DISTRICT 4
COMMISSION OFFICE

**BY FACSIMILE & REGULAR U.S. MAIL**

Commissioner Mary Bolin Lewis
Chairman
Brevard County Commission
2725 Judge Fran Jamieson Way
Building C Suite 214
Viera, Florida 32940

**REGIONAL CHAIR**
SCOTT NOTOWITZ

**REGIONAL STAFF**
HAVA LEIPZIG HOLZHAUER
*REGIONAL DIRECTOR*

YAEL K. HERSHFIELD
*SENIOR ASSOCIATE REGIONAL DIRECTOR*

DEBBIE HAMMER
*DIRECTOR OF PLANNED GIVING,
LEGACY AND ENDOWMENTS*

LAURENCE R. MILSTEIN
*DIRECTOR OF CORPORATE DEVELOPMENT*

LONNY WILK
*ASSOCIATE REGIONAL DIRECTOR*

ROBERT TANEN
*ASSOCIATE REGIONAL DIRECTOR*

LILY MEDINA
*EDUCATION PROJECT DIRECTOR*

CLAUDIA RODRIGUEZ
*EDUCATION ASSOCIATE PROJECT
DIRECTOR*

MICHELE SHEPPARD
*ASSISTANT DIRECTOR OF DEVELOPMENT*

CARON SHUTAN
*ASSOCIATE DIRECTOR OF DEVELOPMENT*

CANDY YEUNG
*ASSOCIATE DIRECTOR OF DEVELOPMENT*

**NATIONAL STAFF**
DAVID L. BARKEY
*SOUTHEASTERN AREA COUNSEL &
RELIGIOUS FREEDOM COUNSEL*

**NATIONAL OFFICERS**

BARRY CURTISS-LUSHER
*NATIONAL CHAIR*

ABRAHAM H. FOXMAN
*NATIONAL DIRECTOR*

Dear Commissioner Lewis,

On behalf of the Anti-Defamation League ("ADL"), we write to express our concern about the Brevard County Commission's recent unanimous decision to bar a local atheist from delivering an opening prayer or invocation before public Commission meetings.

For over a century, the Anti-Defamation League (ADL) has been an ardent advocate for religious freedom of all Americans – whether in the majority or minority. ADL firmly believes that our nation's religious diversity has flourished because of the separation of church and state mandated by both the Establishment and Free Exercises Clauses of the First Amendment. As such, government should neither promote nor be hostile to religion.

The Commission's decision to prohibit an atheist from delivering an invocation would most likely violate the standards set forth in the U.S. Supreme Court's recent decision in *Greece v. Galloway*, 134 S. Ct. 1811 (U.S. May 5, 2014).

Although this decision significantly broadens the types of opening prayers at meetings of local legislative bodies, invocation practices are not without limitation. Indeed, the Court required that a legislative body must implement a non-discrimination policy with respect to prayer givers. This means that the person who gives an invocation or prayer - whether a public official, member of the clergy, or an ordinary citizen - cannot be denied the prayer opportunity based on his or her faith, including a minority religion or atheism.

Indeed, the U.S. Supreme Court and lower courts have ruled that under the First Amendment to the U.S. Constitution atheism or humanism are sincerely held religious beliefs. See *Wallace v. Jaffree*, 472 U.S. 38 (1985); *Torcaso v. Watkins*, 367. U.S. 488 (1961); *Kaufman v. McCaughtry* 419 F.3d 678 (7th Cir. 2005). Therefore, barring an atheist or humanist from the invocation opportunity at public Commission meetings would likely run afoul of the *Galloway* decision's requirements and violate the Constitution. We therefore, urge the Commission to reconsider its vote on this matter.

Plaintiffs' Deposition Exhibit #5 Page 1

We also stress that the *Galloway* decision in no way requires legislative bodies to open meetings with prayers, whether sectarian or non-sectarian. If the Commission continues its practice of opening meetings with prayer, we firmly believe that invocations or prayers should respect the community's diversity by being inclusive of all faith traditions. Inclusivity and respect for diversity also will help ensure compliance with constitutional requirements. We, therefore, urge you to adhere to the following guidelines:

- A prayer or invocation should contain no reference to a particular deity, sect or denomination, or to any of the central religious figures associated with any particular religious belief.

- The words chosen for the invocation or prayer should consist of a general appeal to divine, spiritual or moral guidance, which would be in harmony with the tenets of some or all religions. The prayer should not be expressed in terms specifically associated with any particular faith, denomination, sect or creed.

- If clergy from the community are asked to offer the invocation or prayer, they should be advised and asked to abide by these principles. Furthermore, in order to promote community harmony and diversity, any invitation to clergy should be extended to clergy of all faiths represented in the community on a non-discriminatory, rotating basis.

Please know that we provide this letter and these guidelines based on our century-old perspective of religious freedom for all Americans. Thank you for your attention to this matter. We look forward to your response.

Sincerely,

Hava Holzhauer
Florida Regional Director

Plaintiffs' Deposition Exhibit #5 Page 2

Exhibit 5 - Page 2

A688

# Exhibit 49

November 6, 2014 letter from Brevard County Board of County Commissioners to
Anti-Defamation League. (Exhibit 6 to First Amended Complaint and depositions
taken by plaintiffs.)



| | ADD ON |
|---|---|
| | AGENDA |
| Section | New Business |
| Item No. | **V B** |

| Meeting Date |
|---|
| **November 6, 2014** |

## AGENDA REPORT
*BREVARD COUNTY BOARD OF COUNTY COMMISSIONERS*

| SUBJECT: | Response to Anti-Defamation League recommendation that the Commission reconsider its prior action deferring atheist supplications to public comment portion of the agenda and to implement the ADL's suggested pre-meeting prayer protocols. |
|---|---|
| DEPT/OFFICE: | Commissioner Mary Bolin Lewis, District 4 Commissioner |

Requested Action:

Board approval of proposed response to the Anti-Defamation League.

Summary Explanation & Background:

Attached is a letter from the Anti-Defamation League recommending that the Commission reconsider its prior action deferring atheist supplications to public comment portion of the agenda and, alternatively, implement the ADL's suggested pre-meeting prayer protocols.

As Chair, I would request the Board to respond to the ADL letter in the manner set forth in the attached proposal, which sets forth a point by point rebuttal consistent with and amplifying the prior letter expressing the Board's position and policy for addressing the pre-meeting prayer request by the Central Florida Free Thought Community.

Option 1:  Approve letter for Chair signature

Option 2:  Decline to approve letter

Fiscal Impact:  NONE

Clerk to the Board instruction:

Exhibits Attached:

| Contract /Agreement (If attached):  Reviewed by County Attorney | Yes | ☐ | No | ☐ | |
|---|---|---|---|---|---|
| County Manager's Office | Department | | | | PR ☐ |
| Stockton Whitten, County Manager | | | | | |

BCC-149 (Rev.6-13-11) / Electronic Form

**Plaintiffs' Deposition Exhibit #6 Page 1**

Exhibit 6 - Page 1

A690



**BREVARD** *County*
BOARD OF COUNTY COMMISSIONERS

**FLORIDA'S SPACE COAST**



COMMISSIONER DISTRICT IV, 2725 Judge Fran Jamieson Way, Melbourne, FL 32940-6698

Telephone: (321) 633-2044
Fax: (321) 633-2121

Hava Holzhauer
Anti-Defamation League
One Park Place
621 NW 53rd Street, Suite 450
Boca Raton, FL 33487-8283

Dear Mr. Holzhauer,

We are in receipt of your recent letter (attached) requesting the Brevard County Board of County Commissioners to reconsider its decision to respectfully deny the opportunity to provide a pre-meeting invocation but, rather, afford atheists the opportunity to speak or provide a supplication during the public comment section of the Board's agenda.

Essentially, you have recommended that the Board of County Commissioners violate the decision of the United States Supreme Court in *Town of Greece v. Galloway*.

1. Although your letter clearly recognizes the first amendment principle that a governmental body like the County Commission cannot show hostility toward religion, your suggestion to allow atheists to provide the invocation would, in fact, show hostility toward the faith-based community—as evidenced by the content on social media webpages maintained by Central Florida Free Thought Community and the Freedom from Religion Foundation, an organization identifying CFFTC as an active chapter. Therefore, this Board has no desire to follow your suggested action since that action could be easily construed, either overtly or by implication, as evidencing vicarious disdain, scorn or disrespect for the beliefs of our faith-based community.

2. It follows that the Board's decision to avoid hostility toward the faith-based community precludes any claim of discrimination. Indeed, if your characterization of secular humanism as a religion is valid, modifying the county's time-honored pre-meeting tradition by affording a secular humanist the opportunity to recite a secular "prayer" during the faith-based invocation portion of the Board's agenda could be perceived as an endorsing a specific religion—*secular humanism*—in violation of the Establishment Clause because all Board actions at the meeting held following such a *secular "prayer"* invariably involve an underlying *secular purpose*. Atheists or secular humanists are still afforded an opportunity to speak their thoughts or supplications during the secular business portion of the agenda under "public comment". Contrary to your assertions of discrimination, the separation between faith and secular

*PRINTED ON RECYCLED PAPER*

Plaintiffs' Deposition Exhibit #6 Page 2

Exhibit 6 - Page 2

presentations on different parts of the agenda recognizes both elements of the community and is entirely consistent with, and symbolic of, the very the stated goal of both the Anti-Defamation League and CFFTC—the literal separation of church and a secular state.

3.  You have suggested that clergy from the community should be advised to abide by your recommended principles that a prayer or invocation should a] contain no reference to a particular deity, sect or denomination, or to any of the central religious figures associated with any particular religious belief; and b] the words chosen for the invocation or prayer should consist of a general appeal to divine, spiritual or moral guidance, which would be in  harmony with the tenets of some or all religions; and c] the prayer should not be expressed in terms specifically associated with any particular faith, denomination, sect or creed.  In short, you recommend censorship of prayer content in express violation of the law laid out by the U.S. Supreme Court opinion in *Town of Greece v. Galloway* [Government must permit a prayer giver to address his or her own God or gods as conscience dictates]

This Board has no intention of violating the U.S. Supreme Court by following your flawed interpretation of the Court's ruling in the *Town of Greece* case.

Respectfully,


The Brevard County Board of County Commissioners

By:  _____
        Mary Bolin Lewis, Chair
        (as approved by the Board on November 6, 2014)

Plaintiffs' Deposition Exhibit #6 Page 3

Exhibit 6 - Page 3

A692

# Exhibit 50

January 26, 2015 letter from plaintiffs' counsel to Brevard County Board of County Commissioners. (Exhibit 7 to First Amended Complaint and depositions taken by plaintiffs.)



**AMERICANS UNITED**
FOR SEPARATION OF CHURCH AND STATE

(202) 466-3234
(202) 898-0955 (fax)
www.au.org

1301 K Street, NW
Suite 850, East Tower
Washington, DC 20005

January 26, 2015

**By U.S. Mail and Email**

Commissioner Robin Fisher
Chair
Board of County Commissioners
400 South Street
Suite 1-A
Titusville, FL 32780
D1.Commissioner@brevardcounty.us

Commissioner Jim Barfield
Vice Chair
Board of County Commissioners
Merritt Island Service Complex
2575 North Courtenay Parkway
Suite 200
Merritt Island, FL 32953
D2.Commissioner@brevardcounty.us

Commissioner Trudie Infantini
1311 E. New Haven Avenue
Melbourne, FL 32901
D3.Commissioner@brevardcounty.us

Commissioner Curt Smith
2725 Judge Fran Jamieson Way
Building C Suite 214
Viera, FL 32940
D4.Commissioner@brevardcounty.us

Commissioner Andy Anderson
1515 Sarno Road
Building B
Melbourne, FL 32935
D5.Commissioner@brevardcounty.us

Re:    *Nontheists' Delivery of Opening Invocations*

Dear Brevard County Board of County Commissioners:

As you know, the Board of County Commissioners of Brevard County has long maintained a policy of having its meetings opened with an invocation by a religious leader from the community. To date, all of the invited individuals have been theists, i.e., believers in a deity; requests from nontheists have been denied on the ground that belief in a higher power is a precondition to offering the invocation. In light of the recent change in the Board's leadership, we write on behalf of several national legal organizations to ask that you reconsider this limitation. In particular, we ask that the following individuals—each of whom is a leader in the nontheist community—be added to the roster of invocation-givers:

- *David Williamson*: Mr. Williamson is Founder and Chair of the Central Florida Freethought Community. In August 2014, the Board denied Mr. Williamson's request to deliver an invocation to the Board on the grounds that "allow[ing] atheists to provide the invocation would, in fact, show hostility to the faith-based community" and that permitting a secular humanist invocation would constitute an establishment of religion and would therefore be unconstitutional under the Establishment Clause of the First Amendment. *See* Ex. A.

Plaintiffs' Deposition Exhibit #7 Page 1

- *Rev. Ann Fuller*: Rev. Fuller is an ordained clergyperson who has served Brevard County humanists as a minister since 2006. She has been affiliated with the Unitarian Universalist Church of Brevard in West Melbourne and the Unitarian Universalist Congregation of Cocoa. On August 21, 2014, District 3 Commissioner Trudie Infantini declined Rev. Fuller's request to be allowed to give an invocation, stating that an invocation is, by definition, "seeking guidance from a higher power." *See* Ex. B.

- *Chase Hansel*: Mr. Hansel is President of the Space Coast Freethought Association and is a leader of Brevard Atheists. This is the first time that he has requested to deliver an invocation to the Board.

The exclusion of nontheists from the prayer opportunity runs contrary to the United States Constitution. In *Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014), the U.S. Supreme Court held that a prayer practice does not violate the Establishment Clause "so long as the town maintains a policy for nondiscrimination" and does not demonstrate a bias against minority viewpoints. *Id.* at 1824. In that case, the town "made it clear that it would permit any interested residents, *including nonbelievers*, to provide an invocation, and the town ha[d] never refused a request to offer an invocation." *Id.* at 1829 (Alito, J., concurring) (emphasis added). In light of *Greece*, a federal district judge in the Middle District of North Carolina recently warned a county board that "it may not discriminate for or against any religion in drafting or implementing its [new] prayer policy." Ex. C, at 30. The judge explained that the board must strive to prevent the denigration of religious minorities and nonbelievers, and must ensure a policy of nondiscrimination to avoid the appearance of aversion or bias. *Id.* at 31. That is in keeping with the general Establishment Clause principle that "the government may not favor one religion over another, *or religion over irreligion*." *McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 875-76 (2005) (emphasis added).

In a similar vein, religious discrimination is "inherently suspect" under the Equal Protection Clause. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam). The government can justify drawing distinctions along religious lines only when it does so with a compelling reason and in the least restrictive fashion. "Absent the most unusual circumstances, one's religion ought not affect one's legal rights or duties or benefits." *Bd. of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687, 715 (1994) (O'Connor, J., concurring).

No such unusual circumstances exist here; governmental bodies around the country have seen fit to allow nontheistic individuals to deliver opening invocations without consequence. For example, the following invocation was delivered before the Seminole County, Florida Commission on September 9, 2014:

2

Plaintiffs' Deposition Exhibit #7 Page 2

Exhibit 7 - Page 2

A695

Thank you Mr. Chairman, board members, fellow citizens of Seminole county.

I would ask that you survey the room and regard our community gathered here.

This moment of reflection is to remind us that we are here to work in harmony even when there may be honest disagreement. We gather together this morning to share our collective wisdom to face the needs of our county. We are here to consider many issues and find the optimum solutions.

As you work through the agenda today, be confident that what you are doing serves to build a better Seminole County. In the words of Albert Einstein, "Nothing truly valuable can be achieved except by the unselfish cooperation of many individuals."

THAT is what is happening here today.

The success of our government stems from commitment of you, your staff to serving the people. It isn't in strength in numbers, but strength in our actions. May we learn from how we faced our past challenges, and in this meeting this morning, may each of us here give and receive the supportive communication we need to develop and grow our county, together.

I would like to close with a quote from Henry Ford.
"Coming together is a beginning.
Keeping together is progress.
Working together is success."
May today's meeting be nothing but successful.
Thank you.

David Williamson delivered the following invocation before the Osceola, Florida Board of County Commissioners on June 16, 2014:

Through the millennia, we as a society have learned the best way to govern the people is for the people to govern themselves. Today, in this tradition, we travel from our homes and businesses across the county; citizens, staff, and those elected converge on this chamber to work as one community united and indivisible by nearly every measure. Each of us arrives as individuals with unique ideas and experiences but all with a need, in a spirit of goodwill, rather, to fulfill the needs of others.

Citizens request assistance and offer their concerns and we are ever grateful for their interest and for their trust in the process. Staff provides invaluable expertise in their particular field and we truly appreciate their continued service. Elected officials listen, debate, and choose the path forward for us all

3

Plaintiffs' Deposition Exhibit #7 Page 3

Exhibit 7 - Page 3

A696

out of a sincere desire to serve and honor the people of Osceola County while shaping its future. We all offer our thanks in that often thankless task.

When we leave this chamber this evening let us carry with us this same spirit of service and goodwill tomorrow and every day that follows.

This is how we assemble to serve and to govern, ourselves.

These and other nontheistic invocations that have been delivered before governmental bodies around the country can be found at *Secular Reflections*, Central Florida Freethought Community, http://cflfreethought.org/secular-reflections/ (last visited Jan. 21, 2015).

The invocations that would be delivered by the individuals described above, like the invocations that have been delivered by other nontheists around the country, would be contemplative in tone and respectful of other faith traditions. Refusing to allow them this opportunity, on the basis of their religious viewpoint, cannot be reconciled with core principles of the U.S. Constitution.

Accordingly, we ask that you add the above individuals to the list from which invocation-givers are drawn, and modify your policy going forward to allow nontheists to participate to the same extent as theists. We further ask that you inform us of your intentions on or before February 6, 2015. Meanwhile, if you have any questions or concerns, please feel free to contact Murat Kayali at kayali@au.org.

Sincerely,

*[signature: Ayesha N. Khan]*

Ayesha Khan, Legal Director
Murat Kayali, Legal Fellow
Americans United
for Separation of Church and State
1301 K Street NW, Suite 850, East Tower
Washington, DC 20005
(202) 466-3234

Nancy Abudu
ACLU of Florida
4500 Biscayne Blvd. Suite 340
Miami, FL 33137
(786) 363-2700

Andrew L. Seidel
Attorney
Freedom From Religion Foundation, Inc.
PO Box 750
Madison, WI 53701
(608) 256-8900

Daniel Mach
Director
ACLU Program on Freedom of Religion and Belief
915 15th Street NW
Washington, DC 20005
(202) 548-6604

4

Plaintiffs' Deposition Exhibit #7 Page 4

Exhibit 7 - Page 4

A697

# Exhibit 51

May 26, 2015 letter from plaintiffs' counsel to Brevard County Board of County
Commissioners. (Exhibit 8 to First Amended Complaint and depositions taken by
plaintiffs.)



**AMERICANS UNITED**
FOR SEPARATION OF
CHURCH AND STATE

(202) 466-3234
(202) 898-0955 (fax)
www.au.org

1901 L Street, NW
Suite 400
Washington, DC 20036

May 26, 2015

**By U.S. Mail and Email**

Commissioner Robin Fisher
Chair
Board of County Commissioners
400 South Street
Suite 1-A
Titusville, Florida 32780
D1.Commissioner@brevardcounty.us

Commissioner Jim Barfield
Vice Chair
Board of County Commissioners
Merritt Island Service Complex
2575 North Courtenay Parkway
Suite 200
Merritt Island, Florida 32953
D2.Commissioner@brevardcounty.us

Commissioner Trudie Infantini
1311 E. New Haven Avenue
Melbourne, Florida 32901
D3.Commissioner@brevardcounty.us

Commissioner Curt Smith
2725 Judge Fran Jamieson Way
Building C Suite 214
Viera, Florida 32940
D4.Commissioner@brevardcounty.us

Commissioner Andy Anderson
1515 Sarno Road
Building B
Melbourne, Florida 32935
D5.Commissioner@brevardcounty.us

Re:  *Nontheists' Requests to Deliver Opening Invocations*

Dear Commissioners Fisher, Barfield, Infantini, Smith, and Anderson:

On January 26, 2015, we sent you a letter requesting that certain nontheists, including David Williamson and Chase Hansel, be permitted to deliver invocations at the opening of Board of County Commissioners meetings.  We did not receive a response to this letter.  You previously denied, through a resolution enacted on August 19, 2014, a request made to you directly by Mr. Williamson that he, or other members of his organization Central Florida Freethought Community, be permitted to deliver invocations.

We now supplement our January 26, 2015 letter by requesting that the nontheist individuals listed below, or other representatives or members of the nontheist organizations listed below, be permitted to deliver nontheistic invocations at the opening of Board of County Commissioners meetings:

• Keith Becher, a resident of Satellite Beach and District 4 of Brevard County. Mr. Becher is an atheist and a Secular Humanist.  He is an ordained Humanist Celebrant.  He is the President and Organizer of Humanist Community of the Space Coast (described below), and a member of the boards of directors of Central Florida

Plaintiffs' Deposition Exhibit #8 Page 1

Freethought Community and Space Coast Freethought Association (described below).

     • Ronald Gordon, a resident of Palm Bay and District 3 of Brevard County. Mr. Gordon is an atheist/agnostic.  He e-mailed Commissioner Infantini requests to be permitted to deliver an invocation, on August 20, August 27, and September 12, 2014, but he did not receive a response to those e-mails.

     • Jeffery Koeberl, a resident of West Melbourne and District 5 of Brevard County.   Mr. Koeberl is a Secular Humanist and an atheist.  He is an ordained Humanist Celebrant and Humanist Chaplain.  He is the Co-Organizer of Humanist Community of the Space Coast, and a member of Central Florida Freethought Community and Space Coast Freethought Association.

     • Space Coast Freethought Association ("SCFA"), a non-profit organization headquartered in Palm Bay and District 3 of Brevard County.  SCFA describes itself as a

> community of reason-based individuals organized to facilitate social interaction, promote the non-theistic, rationalist viewpoint as a valid contribution to public discourse, reinforce the First Amendment guarantee of separation between government and religion through education and activism, and work in coalition with like-minded organizations where joint action is needed to achieve these goals.

Most of SCFA's members reside in Brevard County and characterize themselves as atheists, though SCFA's membership also includes people who additionally or instead characterize themselves as Humanists, agnostics, and/or freethinkers.

     • Humanist Community of the Space Coast ("HCSC"), an association headquartered in Satellite Beach and District 4 of Brevard County.  HCSC's mission statement and organizational description is:

> We would like to build a supportive and safe community for adults and families who acknowledge that ethical living does not require belief in supernatural, scriptural, or religious dogma.  We welcome all who strive to better our communities through kindness, compassion, empathy, reason, science and rationality.  Through volunteer efforts, community outreach and positive activism we look to advance secular values, government, and secular humanism as a whole.  "Give to every human being every right that you claim for yourself." ~ R. G. Ingersoll

Most of HCSC's members reside in Brevard County.  HCSC welcomes as members people who identify themselves as Humanists, agnostics, freethinkers, church–state separation advocates, and other nontheists.

2

We further reiterate the prior requests you have received that the nontheist individuals listed below, or other representatives or members of the nontheist organizations listed below, be permitted to deliver nontheistic invocations at the opening of Board of County Commissioners meetings:

• David Williamson, a resident of Oviedo, Florida.  Mr. Williamson is an atheist and a Secular Humanist.  He is an ordained Humanist Celebrant.  He is the founder and Chair of Central Florida Freethought Community and a member of Space Coast Freethought Association and Humanist Community of the Space Coast.

• Chase Hansel, a resident of Melbourne and District 3 of Brevard County. Mr. Hansel is an atheist and a Secular Humanist.  He is the President of Space Coast Freethought Association.

• Central Florida Freethought Community ("CFFC"), a non-profit organization that is headquartered in Winter Park.  CFFC has many members in Brevard County. Its members include people who characterize themselves as atheists, agnostics, Humanists, and freethinkers.  More details about CFFC are set forth in its letters to you of May 9 and July 22, 2014.

Please let us know by June 16, 2015 whether you will permit the nontheist individuals listed above, or other representatives or members of the nontheist organizations listed above, to deliver nontheistic opening invocations at your meetings.  We will treat a failure to respond to this letter as a denial of our requests, in accordance with the resolutions you passed on the issue of nontheistic invocations at your August 19 and November 6, 2014 meetings.  Thank you for your attention to this matter.

Sincerely,

Alex J. Luchenitser
Associate Legal Director
Americans United for Separation of
   Church and State
1901 L Street NW, Suite 400
Washington, DC 20036

Daniel Mach
Director
ACLU Program on Freedom of Religion
   and Belief
915 15th Street NW
Washington, DC  20005

Rebecca S. Markert
Andrew L. Seidel
Attorneys
Freedom From Religion Foundation
PO Box 750
Madison, WI 53701

Nancy Abudu
Legal Director
ACLU of Florida
4500 Biscayne Blvd. Suite 340
Miami, FL 33137

3

Plaintiffs' Deposition Exhibit #8 Page 3

Exhibit 8 - Page 3

A701

# Exhibit 52

May 28, 2015 letter from Brevard County Board of County Commissioners to plaintiffs' counsel. (Exhibit 9 to First Amended Complaint.)



**BOARD OF COUNTY COMMISSIONERS**

**County Attorney's Office**
2725 Judge Fran Jamieson Way
Building C, Room 308
Viera, Florida 32940

May 28, 2015

Alex J. Luchenitser
Associate Legal Director
Americans United for Separation of
Church and State
1901 L Street NW, Suite 400
Washington, DC 20036

      RE:    Your letter dated May 26, 2015

Dear Mr. Luchenitser:

We are in receipt of your letter dated May 26, 2015, wherein you requested a response from the Board of County Commissioners by June 16, 2015. Unfortunately, the Brevard County Board of County Commissioners does not have a regular meeting again until July 7, 2015, at 9:00 a.m. At that time, I will be bringing your letter to the Board seeking a response.

We appreciate your patience in this matter.

Sincerely,

Scott L. Knox
County Attorney

cc:    Commissioner Robin Fisher, *via email*
       Commissioner Jim Barfield, *via email*
       Commissioner Trudie Infantini, *via email*
       Commissioner Curt Smith, *via email*
       Commissioner Andy Anderson, *via email*