UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID WILLIAMSON, et al,
    Plaintiff,                                 Case No.: 06:15-CV-01098-ORL-28 DAB

v.

BREVARD COUNTY,
    Defendant.
_____/

## REPLY TO PLAINTIFFS OPPOSITION TO BREVARD COUNTY'S MOTION FOR SUMMARY JUDGMENT

## ARGUMENT

**I.    The County's non-discriminatory policy complies with the Establishment Clause**

In *Marsh v. Chambers* the U.S. Supreme Court upheld legislative pre-meeting invocations by relying on a 200 year unambiguous, unbroken history of such prayer, as well as the enactment of a 1789 Congressional statute providing for the payment of the chaplains giving those prayers to the First Congress. The *Marsh* Court held: "To invoke Divine guidance on a public body entrusted with making the laws is not, in these circumstances, an 'establishment' of religion or a step toward establishment; it is simply a tolerable acknowledgment of beliefs widely held among the people of this country."[1] In *Town of Greece v. Galloway,*[2] the Court expanded *Marsh* to include local government governing bodies with rules providing an "opportunity as a whole" to present invocations. The *Town of*

---

[1] *Marsh v. Chambers*, 103 S. Ct. 3330 (U.S. 1983)
[2] *Town of Greece,* 134 S. Ct. 1811 (2013)

1

*Greece* Court deemed such rules to be nondiscriminatory and in compliance with the Establishment Clause.[3]

Brevard County's policy expressly provides the Plaintiffs' with ample opportunity to present secular invocations and conforms to the Establishment Clause under those cases.

### A. There is No Coercion

*Town of Greece* makes it clear that Establishment Clause violation cases are fact-intensive.[4] The overriding fact in this case is a County policy allowing Plaintiffs to deliver secular invocations immediately prior to the *most* prominent portion of a Commission meeting—the secular and deliberative business agenda. The facts also show that Plaintiffs: refused to take advantage of the opportunity to deliver a secular invocation and/or information about their organizations during Public Comment; chose to enter and remain in the Commission chambers during the religious invocation; chose not to stand during the invocation; chose to fill out speaker cards during the invocation;[5] watched invocations on television or the internet;[6] then claimed this self-created "emotional harm" and "economic injury" are a basis for a coercion claim against the County. On those facts, a coercion claim under the Establishment Clause is utterly unfounded.

## II. The County's Limited Public Forum does not deny Free Speech or Free Exercise

The County invocation policy meets every legal test relating to limited public forums—which the Eleventh Circuit has held to include meetings of local governing bodies

---

[3] *Town of Greece* at 1824
[4] Id. at 1825
[5] Pl. MSJ p.17-19
[6] Pl. Opposition p. 20

in *Jones v. Heyman*,[7] *Rowe v. City of Cocoa*,[8] and again in *Cleveland v. City of Cocoa Beach*.[9] Those cases also hold that "the government may restrict access to limited public fora by content-neutral conditions for the time, place, and manner of access, all of which must be narrowly tailored to serve a significant government interest"[10] and that "speech may be restricted to specified subject matter."[11]

Added to those standards, is this rule from the Second Circuit Court of Appeals in *Children First Found., Inc. v. Fiala*:[12] "In a limited public forum, strict scrutiny is accorded only to restrictions on speech that falls within the designated category for which the forum has been opened," a rule explained by the Second Circuit in *Hotel Employees & Restaurant Employees Union v. City of N.Y. Dep't of Parks and Rec.*: "Thus, in a limited public forum, government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively *deny access for other activities of that genre*."[13] [Emphasis supplied]

Brevard County's invocation policy does not "selectively deny" Plaintiffs access to the portion of its limited public forum set aside for religious invocations because the Plaintiffs cannot provide religious invocations. The policy *does* expressly *grant* the Plaintiffs' an alternative and comparable opportunity to present secular invocations during its limited public forum meetings, notwithstanding the Plaintiffs' continuing false claims that such access has been denied. The County therefore meets the strict scrutiny test as interpreted

---

[7] *Jones v. Heyman*, 888 F.2d 1328 (11th Cir. Fla. 1989); *Rowe*
[8] *Rowe v. City of Cocoa*,[8] 358 F.3d 800 (11th Cir. Fla. 2004)
[9] *Cleveland v. City of Cocoa Beach*, 221 Fed. Appx. 875, 2007 U.S. App. LEXIS 6879 (11th Cir. Fla. 2007)
[10] *Rowe* at 802
[11] Id. at 802-803
[12] *Children First Found., Inc. v. Fiala,* 790 F.3d 328 (2d Cir. N.Y. 2015)
[13] *Hotel Emples. & Rest. Emples. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 546 (2d Cir. N.Y. 2002)

3

by the Second Circuit, at a minimum.  At a maximum, the County policy is also narrowly tailored to meet a compelling county interest, as explained below.

### A. Compelling County Interest Satisfies Strict Scrutiny

In *Good News Club v. Milford Cent. Sch* [14] Justice Souter noted that: "This Court has accepted the independent obligation to obey the Establishment Clause as sufficiently compelling to satisfy strict scrutiny under the First Amendment."  From the outset, Plaintiffs requests to perform secular invocations have raised the Commission's concern that displacing religious invocators representing a minority of faith-based religious adherents with atheist and humanist secular invocators would, as characterized by the Third Circuit Court of Appeals in *ACLU v. Schundler,* [15] "convey a message of hostility" toward religion. The Commission's instincts were born out by the goal of FFRF's "Nothing "Fails Like Prayer Award" campaign to end invocations and FFRF's "Out of the Closet" cyberboard campaign.[16] Though Plaintiffs complain that this is guilt by association, the facts demonstrate the Plaintiffs' membership, affiliation, agency and active engagement with FFRF, an organization whose hostility toward religion is well documented in this case.[17]

The Commission's instincts were further validated by constituent email supporting its invocation policy by a margin of 2:1.[18] Those constituents variously characterized the request to perform secular invocations during the religious invocation forum as an "onslaught"; being "bullied into submission"; "naysayers" trying to "shut down a tradition"; an  agenda "to end

---

[14] *Good News Club v. Milford Cent. Sch.*, 121 S. Ct. 2093, 2113 (U.S. 2001) [Souter dissenting, citing to *Widmar v. Vincent*, 102 S. Ct. 269 (1981)]
[15] A*CLU v. Schundler*, 168 F.3d 92, 102 (3d Cir. N.J. 1999)[crèche and menorah  displayed as part of a holiday display that includes secular symbols does not violate Establishment Clause]
[16] Def. MSJ p. 7-8; Def. MSJ, A-2: Williamson, Ex. DW-77, ¶¶19-20
[17] Def. MSJ pp.5-10;
[18] A1065-A1113; A1116-1138

the invocation at meetings;" a "destruction of principles"; a "brazen attack"; "forced correctness"; an attempt to "change what has been a tradition for 44 years"; "slipping away of values and beliefs"; and an attempt to "hijack the invocation" and "remove all references to the Almighty from our government". [19] The constituent perception of hostility is palpable.

In *Lynch v. Donnelly* the U.S. Supreme Court stated that the Constitution "forbids hostility" toward religion."[20] The Court had previously noted, in *Walz v. Tax Com. of New York*,[21] that "Governments have not always been tolerant of religious activity, and hostility toward religion has taken many shapes and forms—economic, political, and sometimes harshly oppressive." Justice Kennedy's concurring opinion in *County of Allegheny v. ACLU*, citing to both *Lynch* and *Walz*, noted that to avoid hostility toward religion government must be given some latitude in acknowledging this country's religious heritage:

> "Rather than requiring government to avoid any action that acknowledges or aids religion, the Establishment Clause permits government some latitude in recognizing and accommodating the central role religion plays in our society. (Internal cites omitted) Any approach less sensitive to our heritage would border on latent hostility toward religion, as it would require government in all its multifaceted roles to acknowledge only the secular, to the exclusion and so to the detriment of the religious."[22]

In this case, the County Commission stood on the balance beam between neutrality and hostility by retaining the traditional and only agenda item acknowledging the County's faith-based religious invocation heritage, while providing Plaintiffs with a comparable alternative secular invocation forum during Public Comment just prior to the Commission's deliberations over secular business items on its agenda. In so doing, the Commission avoided a perceived message of hostility toward religion, neutralized the proselytization endemic in

---

[19] A1065, A1067, A1071, A1087; A1077; A1089; A:1097; A1111; A1093; A1077; A1091; A1097
[20] *County of Allegheny v. ACLU*, 109 S. Ct. 3086 (U.S. 1989)
[21] *Walz v. Tax Com. of New York*, 90 S. Ct. 1409,1413 (U.S. 1970)
[22] *County of Allegheny* at 3135 (Justice Kennedy concurring)

secular invocations preaching humanist beliefs, and conveyed, what Justice O'Connor labeled, "a message of pluralism" that avoids an Establishment Clause violation.[23]

### III. The County policy does not deny Equal Protection even under "strict scrutiny"

In *Rowe v. City of Cocoa,*[24] the Eleventh Circuit held that "the Equal Protection Clause does not forbid classifications. It simply keeps governmental decision-makers from treating differently persons who are in all relevant aspects alike."[25] Applying that principle the Eleventh Circuit upheld a Cocoa City Council meeting restriction preventing non-residents from speaking during public comment. The Eleventh Circuit held, that the restriction on speech "did not restrict speech based on a speaker's *viewpoint* but instead restricted speech on the basis of residency."[26]

The Eleventh Circuit's reasoning in *Rowe* is applicable in this case as well. As atheists and humanists, Plaintiffs are not "in all relevant aspects alike" to clerics and persons from the faith-based community because, by their own admission, Plaintiffs cannot deliver an opening religious invocation in the segment of the Commission limited public forum set aside to recognize the role religion plays in the county—the very purpose upheld in *Town of Greece*. Put another way, secular invocations are not in the category of religious invocations allowed in the invocation portion of the limited public forum featuring prayer to a divine higher authority.[27]

---

[23] *County of Allegheny* at 3123 (Justice O'Connor concurring))
[24] *Rowe v. City of Cocoa,* 358 F.3d 800 (11th Cir. Fla. 2004) citing *Nordlinger v.Hahn,* 112 S. Ct. 2326 (US 1992)
[25] *Rowe* at 803
[26] Id. at 804
[27] This point is amplified by Plaintiff Williamson's secular view of prayer which includes his prayer for relief to this Court and his request to the Commission to conduct an invocation because he sees both as higher authorities. DW Tr. 35:1—36 :1-25

Likewise, there is no viewpoint discrimination because Plaintiffs are afforded a comparable and ample alternative channel of communication under Public Comment where they can present their secular invocations and humanist beliefs prior to the deliberative and secular business meeting in the Commission's limited public forum.[28]  Even if "strict scrutiny" applies, the compelling county interest outlined in section II on pages 2-5 above is a complete defense to the Equal Protection, Free Speech and Free Exercise claims because the County's compelling interest in avoiding an Establishment Clause violation by not sending a message of hostility, by mitigating proselytization and by allowing Plaintiffs' ample opportunity to present secular invocations "satisfies strict scrutiny." [29]

### IV.     Standing

Plaintiffs self-created injuries—described on page 2 above— and their inability to give a religious prayer during the traditional time set aside for religions invocations do not give them standing for any claim in this case.  Plaintiffs also lack taxpayer standing to claim revenues were used to support a discriminatory invocation practice since they have never been denied an opportunity to give secular invocations.

### V.      Article I, Section 3, Florida Constitution

Since there is no discriminatory invocation practice and, as in *Atheists of Florida v. City of Lakeland*,[30] no benefit to religion even though paid county employees seek out invocators,  there is no violation of Art. I, sec. 3 of the Florida Constitution. [31]

---

[28] *Cornelius v. NAACP Legal Def. & Educ. Fund*, 105 S. Ct. 3439, 3457 (U.S. 1985);

[29] *Good News Club v. Milford Cent. Sch.*, 121 S. Ct. 2093, 2113 (U.S. 2001) (Souter dissenting)

[30] *Atheists of Fla., Inc. v. Lakeland,* 713 F. 3d 577, 583 (CA11 2013)(City mailing costs for cleric invitations are not benefits to religion and do not violate Art. I, Sec. 3, Fla. Constit.)

[31] Id. at 595-596; *Town of Greece* at 1826 (invocation purpose is to accommodate the spiritual needs of lawmakers)

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 23, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and served on all parties using the CM/ECF system.

*s/Scott L. Knox*
Scott L. Knox, Trial Counsel
Florida Bar No. 211291
OFFICE OF THE COUNTY ATTORNEY
2725 Judge Fran Jamieson Way
Viera, FL 32940
Phone: 321.633.2090
Facsimile: 321.633.2096
scott.knox@brevardcounty
