UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID WILLIAMSON, CHASE HANSEL, KEITH BECHER, RONALD GORDON, JEFFERY KOEBERL, CENTRAL FLORIDA FREETHOUGHT COMMUNITY, SPACE COAST FREETHOUGHT ASSOCIATION, and HUMANIST COMMUNITY OF THE SPACE COAST,

    Plaintiffs,

v.

BREVARD COUNTY,

    Defendant.

Case No. 6:15-cv-1098-Orl-28DAB

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## CONTENTS

I. The County's conduct violates the Establishment Clause ..............................................2

    A. The County is discriminating based on religion ................................................2

    B. The County coerces participation in religious exercises....................................5

II. The County's conduct violates the Free Exercise, Free Speech, and Equal Protection Clauses ...............................................................................................................6

III. Plaintiffs have standing................................................................................7

IV. There is no genuine dispute of material fact...................................................7

> *Thank you Mayor, Commission Members, Staff, and community members for the opportunity to offer opening words for tonight's meeting.*
>
> *This is a room in which there are many challenging debates, moments of tension, of frustration, and ideological division. This is also a room where we come to work together and where we have much more in common than we realize or remember during our discourse. And we all share the same potential for care, for compassion, for fear, for joy, for love.*
>
> *On this eve of the Winter Solstice, the year's darkest day, let's take a moment to reflect on a few examples of what we have to be thankful for. We have a safe city thanks to our hardworking police, firefighters, and paramedics looking out for our health and our security. We have children who are learning and growing because of our wonderful teachers who dedicate themselves to a brighter future. And we have a city that thrives because this commission and the city staff are dedicated to working together with the community.*
>
> *Carl Sagan once wrote, "For small creatures such as we, the vastness is bearable only through love."*
>
> *There is, in the political process, much to bear. In this room tonight, let us cherish and celebrate our shared humanness, our common capacity for reason and compassion and our love for Longwood and its place in Central Florida.*
>
> *No matter why or how you celebrate the change of season may you, your family, and friends be filled with hope for a bright future, and love for your neighbor.*

Jocelyn Williamson, a director of plaintiff Central Florida Freethought Community, opened a recent meeting of a Florida city's commission with this secular invocation. A224-25. It is this kind of opening invocation — which would be moving and inspiring to many, and should not be offensive to any — that the County prohibits at its Board meetings and even contends that it has a compelling interest in excluding.

The County's policy of barring nontheists from delivering opening invocations is rank discrimination. And its practice of directing the audience to rise for opening invocations is quintessential religious coercion. The County has presented no legal argument or factual dispute that can enable it to avoid summary judgment.

1

## I. The County's conduct violates the Establishment Clause.

Like its summary-judgment motion, the County's response brief attempts to defend the Board's invocation practice by comparing (at, *e.g.*, 8-9, 12) aspects of it that the plaintiffs do not challenge with the practice upheld in *Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014). But acting constitutionally in some ways does not justify violating the Constitution in others. Both the County's policy of barring nontheists from giving opening invocations and its practice of instructing Board-meeting attendees to stand for prayers violate the Establishment Clause.

### A. The County is discriminating based on religion.

As explained in Plaintiffs' Summary Judgment Motion (at 14-18), the County's policy of banning atheists and Humanists from presenting opening invocations violates Establishment Clause prohibitions against religious discrimination in two ways: First, the Establishment Clause bars government from discriminating among religions, and courts have recognized that atheism and Humanism are religions protected by the Establishment Clause. Second, even if atheism and Humanism were not entitled to be treated as religions, the Establishment Clause prohibits government from favoring religion over non-religion.

The County does not dispute that atheism and Humanism are religions for Establishment Clause purposes. Instead, it cites (at 18-19) *Cavanaugh v. Bartelt*, No. 4:14-CV-3183, 2016 WL 1446447 (D. Neb. Apr. 12, 2016), *appeal docketed*, No. 16-2105 (8th Cir. May 5, 2016), a case holding that Pastafarianism — a parody of religion — is not a religion for constitutional purposes. But *Cavanaugh* cited with approval cases holding that atheism and Humanism are religions; the court explained that, unlike Pastafarianism, atheism

2

and Humanism take genuine, sincere positions on ultimate issues such as ethics and the existence of a supreme being.  *Id.* at *6.

The County also argues (at 3) that *Greece* renders *Estate of Thornton v. Caldor*, 472 U.S. 703 (1985) — one of the cases the plaintiffs cited for their point that the Establishment Clause prohibits favoring religion over non-religion — inapplicable in the context of opening invocations.  *Greece*, however, sought to harmonize opening-invocation law with other Establishment Clause law.  The Court emphasized that its cases on opening invocations "must not be understood as permitting a practice that would amount to a constitutional violation if not for its historical foundation."  134 S. Ct. at 1819.  Citing cases concerning other Establishment Clause issues, the Court held that it is unconstitutional for government to discriminate based on religion when selecting invocation-speakers, to become entangled in religious judgments when implementing an invocation practice, or to coerce citizens to participate in invocations.  *Id.* at 1822, 1824-26.  As explained in Plaintiffs' Summary Judgment Motion (at 14-21), the County does all three.

The County further contends (at 4-5) that *Greece* held that government is not required to engage in special outreach to ensure religious diversity among invocation-speakers, and the County argues (at 8-9) that the composition of the speaker roster cannot be challenged under a disparate-impact theory.  But the relevant discussion in *Greece*, which only relieved municipalities of the obligation "to search beyond [their] borders" to achieve diversity, left no doubt whatsoever that facial discrimination in the selection of invocation-speakers is unconstitutional.  *See* 134 S. Ct. at 1824.  The County has engaged in exactly that kind of

discrimination by adopting a policy barring nontheists from giving opening invocations. A715-16.  This is no disparate-impact case.

The demographic data that the County presents (at 12-13, 16-17) to justify its discrimination is irrelevant.  The County argues (at 12) that the religious affiliations of its invocation-speakers are proportionally consistent with the demographics of County residents affiliated with theistic congregations.  That does not matter, as this lawsuit does not challenge whether the County's invocation-speakers represent theistic faiths in a sufficiently diverse manner.  The County also contends (at 13, 16-17) that atheists are part of a majority of "secularists" in Brevard County.  That is neither relevant nor accurate.  The Establishment Clause prohibits government from favoring not just majority faiths but also minority ones. *See, e.g.*, *Kaplan v. City of Burlington*, 891 F.2d 1024, 1031 (2d Cir. 1989).  And the County's data reports only the percentages of people affiliated with congregations, not the percentages of people holding religious beliefs (Grammich Aff. ¶¶ 10-11); the County Commissioners agree that Christians, not atheists, are the majority in Brevard County (A787:1-22; A843:14-19; A869:9-13; A900:19-901:4; A920:23-921:3; *see also Religious Landscape Study: Adults in Florida*, Pew Research Center, http://pewrsr.ch/1YdLLEN (last visited June 20, 2016) (70 percent of Florida residents are Christians)).  If anything, the County's foray into religious demographics — which began with its letters and resolution on the invocation issue (A680; A707-08) — highlights how the County has drawn itself into impermissible religious judgments through its invocation policy (as explained in detail in Plaintiffs' Summary Judgment Motion (at 18-19)).

4

Finally, the County contends (at 1-3) that it can discriminate against nontheists in the opening-invocation segment of Board meetings because it allows nontheists to present "invocations" during Public Comment. As explained in Plaintiffs' Summary Judgment Opposition (at 6-8), this is not a valid defense; it only emphasizes to nontheists that the County views them as second-class citizens. Legally, such "separate but equal" arguments have long been condemned. *Id.* at 6-7. Factually, the speaking opportunities are not close to equal: Public Comment is a less prominent, less attended, and far from solemn part of the meetings; speakers receive less time; and theists are permitted to give prayers during Public Comment and thus have opportunities during two separate segments of the meetings, while nontheists do not. *Id.* at 7-8. The County misreads *Greece* in asserting (at 4) that its separate-but-equal (really separate-and-unequal) policy is supported by *Greece*'s call for an "inquiry into the prayer opportunity as a whole" (134 S. Ct. at 1824): that language in *Greece* concerns only how courts should analyze whether opening prayers are impermissibly proselytizing or disparaging (*see id.*); the next paragraph of the Court's opinion mandates that municipalities "maintain[] a policy of nondiscrimination" in selecting invocation-speakers (*id.*); and the opinion explains that the "place" of legislative invocations is "at the opening of legislative sessions" (*id.* at 1823).

**B. The County coerces participation in religious exercises.**

The plaintiffs have explained (Summ. J. Mot. 20-21) that the Board's directives to rise for opening invocations violate the Establishment Clause by coercing audience members to take part in religious exercises. The County attempts to distinguish (at 11) two of the plaintiffs' supporting cases on this issue — *Lund v. Rowan County*, 103 F. Supp. 3d 712

5

(M.D.N.C. 2015), *appeal docketed*, No. 15-1591 (4th Cir. June 3, 2015), and *Hudson v. Pittsylvania County*, 107 F. Supp. 3d 524 (W.D. Va. 2015) — by pointing out that, in those cases, county-board members gave the invocations.  Though that was one of the constitutional problems with those boards' practices, the courts' opinions treated the boards' directives to stand as an additional constitutional defect.  *See Lund*, 103 F. Supp. 3d at 728, 733; *Hudson*, 107 F. Supp. 3d at 535.  In any event, *Greece* itself prohibits members of municipal boards from "direct[ing] the public to participate in . . . prayers" delivered by private citizens.  134 S. Ct. at 1826.

That plaintiff Becher did not stand in response to the Board's directives to rise and that plaintiff Williamson was already standing because he was filling out a comment-card (Cty. Resp. at 11) does not excuse the County's religious coercion; these plaintiffs felt pressured to participate in prayer and excluded from the meetings by those directives (A120 ¶ 32; A155 ¶ 33).  That the invocation is followed by the Pledge of Allegiance, for which Americans often stand (Cty. Resp. at 11-12), also is not a valid defense, for the Board could avoid religious coercion by simply asking the audience to stand *after* the invocation.

## II. The County's conduct violates the Free Exercise, Free Speech, and Equal Protection Clauses.

The County contends (at 13-14) that its discriminatory invocation policy satisfies strict scrutiny under the Free Exercise, Free Speech, and Equal Protection Clauses because the County has a compelling interest in not violating the Establishment Clause by endorsing atheism or communicating hostility toward monotheism.  But as explained in Plaintiffs' Summary Judgment Opposition (at 18), a neutral policy that gives theists and nontheists equal rights to present opening invocations would not convey endorsement or hostility

toward anything; that is the point of a neutral, fair policy. The County also argues (at 2) that its relegation of nontheists to Public Comment is a defense to the plaintiffs' free-speech claim because Public Comment is a "reasonable alternative channel of communication." But the availability of "alternative channels" cannot justify restrictions on speech that — like the County's discrimination against nontheistic invocations — are based on viewpoint. *See Christian Legal Soc'y Chapter v. Martinez*, 561 U.S. 661, 690 (2010).

### III. Plaintiffs have standing.

The plaintiffs' Summary Judgment Opposition (at 19-20) explains that the plaintiffs have standing on multiple grounds. The County asserts (at 6-7) that the plaintiffs lack standing because there is no constitutional violation, but that argument conflates standing with the merits. *See, e.g.*, *ASARCO Inc. v. Kadish*, 490 U.S. 605, 624 (1989). And contrary to what the County contends (at 6), nothing in *Greece* changed the rules for standing in legislative-prayer cases; *Greece* did not even mention standing.

### IV. There is no genuine dispute of material fact.

The County does not actually dispute a single fact presented by the plaintiffs. It purports to identify (at 1-2) four "unsubstantiated misstatements of fact," but its only factual objection to the four statements is that they say that the plaintiffs are prohibited from giving invocations without including the modifier "opening" before the word "invocation." There is no dispute that the County bars nontheists from delivering opening invocations and allows them to deliver "invocations" during Public Comment. Whether this is a defense — it isn't, as explained above — is an issue of law, not fact. As there is no genuine dispute of material fact, the Court should grant summary judgment to the plaintiffs.

Respectfully submitted,

By: /s/ Alex J. Luchenitser                      Date: June 23, 2016
      Alex J. Luchenitser (Trial Counsel)

Alex J. Luchenitser (Trial Counsel)*
Bradley Girard**
Americans United for Separation of Church and State
1901 L Street NW, Suite 400
Washington, DC 20036
Tel.: 202-466-3234 x207 / Fax: 202-466-3353
luchenitser@au.org / girard@au.org

Nancy G. Abudu
Florida Bar #111881
Daniel B. Tilley
Florida Bar #102882
ACLU of Florida
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Tel.: 786-363-2707 / Fax: 786-363-1108
nabudu@aclufl.org / dtilley@aclufl.org

Rebecca S. Markert*
Andrew L. Seidel*
Freedom From Religion Foundation, Inc.
304 W. Washington Ave.
Madison, WI 53703
Tel.: 608-256-8900 / Fax: 608-204-0422
rmarkert@ffrf.org / aseidel@ffrg.org

Daniel Mach*
ACLU Program on Freedom of Religion and Belief
915 15th Street NW
Washington, DC 20005
Tel.: 202-548-6604 / Fax: 202-546-0738
dmach@aclu.org

*Appearing *pro hac vice*.
**Appearing *pro hac vice*; admitted in New York only; supervised by Alex Luchenitser, a member of the D.C. Bar.

## CERTIFICATE OF SERVICE

I certify that on June 23, 2016, I electronically filed this document by using CM/ECF, which automatically serves all counsel of record for the defendant.

By: /s/ Alex J. Luchenitser         Date: June 23, 2016
    Alex J. Luchenitser (Trial Counsel)

Alex J. Luchenitser (Trial Counsel)*
Americans United for Separation of Church and State
1901 L Street NW, Suite 400
Washington, DC 20036
Tel.: 202-466-3234 x207
Fax: 202-466-3353
luchenitser@au.org
*Appearing *pro hac vice*.