UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID WILLIAMSON, CHASE HANSEL, KEITH BECHER, RONALD GORDON, JEFFERY KOEBERL, CENTRAL FLORIDA FREETHOUGHT COMMUNITY, SPACE COAST FREETHOUGHT ASSOCIATION, and HUMANIST COMMUNITY OF THE SPACE COAST,

    Plaintiffs,

v.

BREVARD COUNTY,

    Defendant.

Case No. 6:15-cv-1098-Orl-28DCI

**PLAINTIFFS' SUPPLEMENTAL SUMMARY-JUDGMENT BRIEF
ON THEIR FREE-SPEECH CLAIM**

## CONTENTS

Introduction ..................................................................................................................... 1

I.   The County is violating the Free Speech Clause by prohibiting the plaintiffs from presenting opening invocations because of their nontheistic beliefs and affiliations ...... 1

II.  Free-speech principles supported *Greece*'s conclusion that government must not prohibit invocation-speakers from presenting messages that reflect their beliefs .......... 4

III. Legislative-invocation cases that treat the Free Speech Clause as inapplicable mistakenly assume that legislative invocations must always be government speech ...... 5

IV. The opening invocations are not a limited public forum ............................................... 8

Conclusion ..................................................................................................................... 10

# Introduction

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Thus the First Amendment's Free Speech Clause prohibits public officials from conditioning participation in governmental activities on a person's beliefs or affiliations. And the Supreme Court held in *Town of Greece v. Galloway*, 134 S. Ct. 1811, 1822 (2014), relying partly on free-speech principles, that government may not prohibit invocation-speakers from presenting opening messages that reflect their beliefs. Yet here, the Brevard County Board requires people to believe in God as a condition of presenting solemnizing messages to open its meetings and prohibits opening messages that reflect nontheistic beliefs. The County's discrimination against nontheists therefore violates the Free Speech Clause, in addition to the other federal and state constitutional provisions the plaintiffs have raised.

**I. The County is violating the Free Speech Clause by prohibiting the plaintiffs from presenting opening invocations because of their nontheistic beliefs and affiliations.**

The Free Speech Clause prohibits government from conditioning participation in governmental activities on a person's beliefs or affiliations. Governmental bodies cannot, for example, hire, fire, promote, or transfer civil-service employees based on their political beliefs or affiliations. *E.g.*, *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990); *Branti v. Finkel*, 445 U.S. 507 (1980); *Elrod v. Burns*, 427 U.S. 347 (1976). "None would deny" "that Congress may not 'enact a regulation providing that no Republican, Jew or [African American] shall be appointed to federal office.'" *United Pub. Workers of Am. v. Mitchell*,

1

330 U.S. 75, 100 (1947) (quoting party's brief). *See also, e.g.*, *Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967); *Elfbrandt v. Russell*, 384 U.S. 11 (1966).

The Free Speech Clause's proscription of belief-based discrimination in access to governmental programs is not limited to public employment. The State of Missouri violated the free-speech rights of the Ku Klux Klan by prohibiting it "based on the Klan's beliefs and advocacy" from taking part in an Adopt-A-Highway program. *Cuffley v. Mickes*, 208 F.3d 702, 707 (8th Cir. 2000). A federal HIV-prevention program violated the Free Speech Clause by barring participation by organizations that would not adopt a policy formally opposing sex work. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l*, 133 S. Ct. 2321 (2013). And a state law school's legal-services program could not constitutionally exclude a prospective client because of his publicly stated views concerning religious displays on public property. *Wishnatsky v. Rovner*, 433 F.3d 608 (8th Cir. 2006).

Here, the Board has prohibited the plaintiffs from presenting opening solemnizing messages at its meetings because they "do not share [the theistic] beliefs or values . . . of a large segment of its constituents." Am. Stipulation of Facts ¶ 117. This flies in the face of "fifty years of Supreme Court precedents [holding] that denial of participation in a state-sponsored program based on the party's beliefs or advocacy is unconstitutional." *See Wishnatsky*, 433 F.3d at 611. "[V]iewpoint-based exclusion of any individual or organization from a government program is not a constitutionally permitted means of expressing disapproval of ideas . . . that the government disfavors." *Cuffley*, 208 F.3d at 712. Such exclusion of "a person because of his constitutionally protected speech or associations"

"in effect . . . penalize[s] and inhibit[s]" "his exercise of those freedoms." *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972).

What is more, the doctrine that government must not deny participation in a governmental activity based on belief "is not limited to valuable government benefits or even benefits at all." *Cuffley*, 208 F.3d at 707 n.5. Governmental bodies are forbidden to terminate people from volunteer positions based on their exercise of protected speech rights. *See Mosely v. Bd. of Educ.*, 434 F.3d 527, 534–35 (7th Cir. 2006); *Hyland v. Wonder*, 972 F.2d 1129, 1135–36 (9th Cir. 1992). Missouri's decision to prohibit the KKK from taking part in its Adopt-A-Highway program because of the KKK's views was unconstitutional even though Missouri was merely refusing the KKK's offer to provide a free service to the state. *See Robb v. Hungerbeeler*, 370 F.3d 735, 738 (8th Cir. 2004).

In any event, here the Board's exclusion of the plaintiffs from the public function of opening its meetings does deny important benefits to them. The Board's invocation-speakers receive the honors and prestige of being selected and introduced by a County Commissioner, being thanked by a Commissioner, and being listed on the meeting agenda. Stipulation ¶¶ 45, 65–66, 79. And the invocation-speakers are permitted to use their appearances as promotional opportunities, spending up to several minutes providing information about their organization and its activities before commencing their invocations, at governmental meetings that are viewed not only by those physically present but also on television and on the internet. *Id.* ¶¶ 12, 77.

"The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with [people's] freedom to believe and

3

associate, or to not believe and not associate." *Rutan*, 497 U.S. at 76.  Linking participation in governmental activity to a person's beliefs or affiliations violates the Free Speech Clause unless the government demonstrates that its conduct is "narrowly tailored" to "a compelling interest." *Id.* at 71 n.5, 74.  The plaintiffs' summary-judgment opposition explains in detail (at 13–18) that the County's discrimination against nontheists reflects neither a compelling interest nor narrowly tailored means.

### II. Free-speech principles supported *Greece*'s conclusion that government must not prohibit invocation-speakers from presenting messages that reflect their beliefs.

*Greece* held that governmental bodies may not require opening invocations to be nonsectarian and must instead permit invited invocation-speakers to open public meetings in a manner that reflects their beliefs.  134 S. Ct. at 1822.  Although the Court relied significantly on the Establishment and Free Exercise Clauses to support this ruling (*see id.*), it also drew on free-speech principles.

The Court noted that the Town of Greece "neither reviewed the prayers in advance of the meetings nor provided guidance as to their tone or content, in the belief that exercising any degree of control over the prayers would infringe both the free exercise and speech rights of the ministers."  *Id.* at 1816.  The Court explained that "[t]o hold that invocations must be nonsectarian would force the legislatures that sponsor prayers and the courts that are asked to decide these cases to act as supervisors and censors of religious speech."  *Id.* at 1822.  The Court added, "[t]he First Amendment is not a majority rule, and government may not seek to define permissible categories of religious speech."  *Id.*

*Greece*'s conclusion that government may not require invocations to reflect favored beliefs also is consistent with *Barnette*'s oft-cited proclamation that "no official, high or

petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *See* 319 U.S. at 642.  And *Barnette* itself based its ruling that public schools cannot compel students to recite the Pledge of Allegiance (which then did not contain the words "under God") on the Free Speech Clause.  *See id.* at 628–29, 633–35, 639, 642.

Here, the Board has prohibited "[s]ecular invocations and supplications" (A715) at the opening of its meetings, allowing only "traditional faith-based invocation[s]" (A705). The Board's censorship of secular beliefs and official prescription of faith-based invocations offends free-speech principles in addition to Establishment Clause and other constitutional rules.

### III. Legislative-invocation cases that treat the Free Speech Clause as inapplicable mistakenly assume that legislative invocations must always be government speech.

*Coleman v. Hamilton County*, 104 F. Supp. 3d 877, 891 (E.D. Tenn. 2015), a case on which the County significantly relies, asserts "that legislative prayer cases . . . are subject to analysis only under the Establishment Clause."  For this proposition, *Coleman* cites pre-*Greece* cases that declined to apply the Free Speech Clause to legislative invocations, based on the view that such invocations invariably are government speech.  *See id.* (citing *Simpson v. Chesterfield Cty. Bd. of Supervisors*, 404 F.3d 276, 287–88 (4th Cir. 2005); *Atheists of Fla. v. City of Lakeland*, 779 F. Supp. 2d 1330, 1341–42 (M.D. Fla. 2011)).

But that reasoning does not survive *Greece*.  Although invocations delivered by government officials or government-employed chaplains remain classic government speech, *Greece* treats invocations given by invited private citizens as having some aspects of private speech.  For *Greece* tightly circumscribes the government's authority to control the content of such invocations: governmental officials cannot require the invocations to be

"nonsectarian or ecumenical," "prescribe a religious orthodoxy," "mandate a civic religion," "prescrib[e] prayers to be recited," "permit [only] those religious words . . . that are acceptable to the majority," "define permissible categories of religious speech," or otherwise "act as supervisors and censors of religious speech."  134 S. Ct. at 1820, 1822.

Rather, at least in the circumstances here, the invocations should be classified as "hybrid speech"—speech that "has aspects of both private speech and government speech." *See W. Va. Ass'n of Club Owners & Fraternal Servs. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009).  On the one hand, legislative invocations have historically been delivered by governmental chaplains (*see Greece*, 134 S. Ct. at 1818); the invocations here are sponsored by the County (*see* Stipulation ¶¶ 64–66); and the invocations are presented for a governmental purpose (*see Greece*, 134 S. Ct. at 1823, 1825).  On the other hand, the invocations are delivered by private citizens (*see* Stipulation ¶¶ 56–57); the citizens compose the invocations themselves (*see* Stipulation ¶ 52; A969–70 ¶¶ (g)-(h)); and the County does not review draft invocations in advance (Stipulation ¶ 52).  The "context specific inquiry" that the Eleventh Circuit and this Court use to distinguish government and private speech— which considers non-"exhaustive" factors such as the history of the speech, "how easily the government is identified as the speaker," and "how much control the government has over the message communicated" (*see Mech v. Sch. Bd.*, 806 F.3d 1070, 1074–75 (11th Cir. 2015), *cert. denied*, 137 S. Ct. 73 (2016); *Sons of Confederate Veterans v. Atwater*, No. 6:09-cv-134-Orl-28KRS, 2011 WL 1233091, at *5 (M.D. Fla. Mar. 30, 2011) (Antoon, J.))—thus shows that "the speech at issue does not fit neatly into either category" (*Musgrave*, 553 F.3d at 298).

6

As hybrid speech, the legislative invocations here have qualified free-speech protection. *See id.* at 301. Consistently with that principle, *Greece* permits governmental officials to regulate private citizens' invocations in some ways but not in others. Governmental officials can (and must) prohibit proselytizing and disparaging invocations and may ensure that the invocations "lend gravity to the occasion" and are "solemn and respectful in tone." 134 S. Ct. at 1823. But, within those parameters, government must not bar private invocation-speakers from presenting opening messages that reflect the personal beliefs that their "conscience dictates"; nor may it require messages "that are acceptable to the majority." *Id.* at 1822. The County does just that by prohibiting nontheistic invocations.

The rules set forth by *Greece* governing the extent to which government can regulate invocations delivered by private citizens may be unique to that context. These rules flow from the unusual character of the speech: it is a form of speech that government can sponsor or commission but cannot fully control. The Establishment Clause, as *Greece* makes clear, applies to invocations presented by private citizens and—among other restrictions—prohibits them from being proselytizing or disparaging. *See id.* at 1823–24. Yet free-speech, free-exercise, and countervailing Establishment Clause interests constrain how far government can reach to restrict what the invocation-speakers may say. *See id.* at 1822–23.

Any suggestion that the Court should consider only the Establishment Clause because legislative-invocation cases typically focus on the Establishment Clause also is contrary to the elementary principle that governmental actions—including those touching on religion—can violate more than one constitutional provision. *See, e.g.*, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC.*, 565 U.S. 171, 188–89 (2012) (Establishment and Free

Exercise Clauses barred application of employment-discrimination statutes to church's decision to terminate minister); *Torcaso v. Watkins*, 367 U.S. 488, 492–96 (1961) (religious test for public office violated Establishment and Free Exercise Clauses); *Niemotko v. Maryland*, 340 U.S. 268, 272–73 (1951) (prohibiting Jehovah's Witnesses from giving Bible talks in public park because of disdain for their views violated Free Speech, Free Exercise, and Equal Protection Clauses); *see also Police Dep't v. Mosley*, 408 U.S. 92, 96 (1972) ("[U]nder the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views."). As in these cases, the County's religious discrimination is offensive to fundamental values that are expressed in our Constitution through multiple clauses.

### IV. The opening invocations are not a limited public forum.

As explained in the plaintiffs' summary-judgment opposition (at 13), the invocation segment of the Board's meetings should not be treated as a limited public forum, for three reasons. First, "[a] limited public forum is created only where the government 'makes its property generally available to a certain class of speakers,' as opposed to reserving eligibility to select individuals who must first obtain permission to gain access." *Hotel Emps. & Rest. Emps. Union v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 545 (2d Cir. 2002) (quoting *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679 (1998)). Here, the Commissioners select the speakers by invitation. *See* Stipulation ¶¶ 43–45. Second, the speech permitted here—"traditional faith-based invocation[s]" (A705)—is "very circumscribed" (*see Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806, 820 (5th Cir. 1999),

*aff'd*, 530 U.S. 290 (2000)).  Third, if invocations were treated as a limited public forum, *Greece*'s conclusion that government may (and must) prevent proselytizing and disparaging invocations (134 S. Ct. at 1823) would be in tension with the principle that discrimination against religious viewpoints is not permitted in limited public forums (*see Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07, 112 & n.4 (2001)).

Nevertheless, in its summary-judgment reply (at 2–3), the County cites several Eleventh Circuit cases for the proposition that meetings of local governmental bodies are limited public forums in general.  But those cases do not hold that all segments of a local governmental meeting are limited public forums.  The decisions address only the public-comment segments of the meetings (*see Rowe v. City of Cocoa*, 358 F.3d 800, 802–03 (11th Cir. 2004); *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989)) and what audience members may display in the meeting room (*see Cleveland v. City of Cocoa Beach*, 221 F. App'x 875, 878–79 (11th Cir. 2007)).  The cases do not convert into limited public forums segments of the meetings that—like the invocation segment—have not been "opened . . . to the public [for] public discourse."  *See Jones*, 888 F.2d at 1331.

In any event, though legally incorrect, the County's assertion that the invocation segment is a limited public forum cannot help its case.  The prohibition against viewpoint discrimination in limited public forums bars excluding not only "theistic" views but also "atheistic perspective[s]."  *Rosenberger v. Rector & Visitors*, 515 U.S. 819, 831 (1995).  The County argues in its summary-judgment reply (at 3) that a limited public forum can be restricted to speech of a particular "genre," and that it created a limited public forum restricted to the "genre" of theistic invocations.  The Free Speech Clause, however, prohibits

9

government from defining the "boundaries" of a limited public forum in a manner that "'discriminate[s] against speech on the basis of . . . viewpoint.'" *Christian Legal Soc'y Chapter v. Martinez*, 561 U.S. 661, 685 (2010) (second alteration in original) (quoting *Rosenberger*, 515 U.S. at 829). Banning nontheistic invocations is textbook viewpoint discrimination.

## Conclusion

Governmental officials must not discriminate against people based on their beliefs, favor theistic views over nontheistic ones, or adopt official views on matters such as religion. These principles are protected by the U.S. and Florida Constitutions in multiple provisions, including the First Amendment's Free Speech Clause. The County's discrimination against nontheists and official favoritism of theistic beliefs egregiously violate these fundamental constitutional rules. The plaintiffs respectfully ask the Court to grant them summary judgment.

Respectfully submitted,

By: /s/ Alex J. Luchenitser                              Date: March 31, 2017
       Alex J. Luchenitser (Trial Counsel)

Alex J. Luchenitser (Trial Counsel)*
Bradley Girard*
Americans United for Separation of Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Tel.: 202-466-7306 / Fax: 202-466-3353
luchenitser@au.org / girard@au.org

Nancy G. Abudu (Florida Bar #111881)
Daniel B. Tilley (Florida Bar #102882)
ACLU of Florida
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Tel.: 786-363-2707 / Fax: 786-363-1108
nabudu@aclufl.org / dtilley@aclufl.org

Rebecca S. Markert*
Andrew L. Seidel*
Freedom From Religion Foundation, Inc.
304 W. Washington Ave.
Madison, WI 53703
Tel.: 608-256-8900 / Fax: 608-204-0422
rmarkert@ffrf.org / aseidel@ffrg.org

Daniel Mach*
ACLU Program on Freedom of Religion and Belief
915 15th Street NW
Washington, DC 20005
Tel.: 202-548-6604 / Fax: 202-546-0738
dmach@aclu.org

*Appearing *pro hac vice*.

## CERTIFICATE OF SERVICE

      I certify that on March 31, 2017, I electronically filed this document by using CM/ECF, which automatically serves all counsel of record for the defendant.

By: /s/ Alex J. Luchenitser                Date: March 31, 2017
     Alex J. Luchenitser (Trial Counsel)

Alex J. Luchenitser (Trial Counsel)*
Americans United for Separation of Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Tel.: 202-466-7306
Fax: 202-466-3353
luchenitser@au.org
*Appearing *pro hac vice*.